Janet I. Fischer
17954-A S. Euclid Ave.
~~Etes~~ Chino, CA 91710
(909) 393-3610

FILED
CLERK, U.S. DISTRICT COURT

AUG - 1 2002   358

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION      BY DEPUTY

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

Janet I. Fischer )

    Plaintiff )

vs. )

UNITED STATES OF AMERICA, JOHN ASHCROFT in his official and individual capacity, VIRGINIA A. PHILLIPS in her official and individual capacity, RACHEL INGRAM in her official and individual capacity, ADMINISTRATIVE OFFICE OF THE U.S. COURTS in its official capacity, LEONIDAS RALPH MECHAM in his official and individual capacity, DAVID J. MALAND in his official and individual capacity, WILLIAM G. PUTNICKI in his official and individual capacity, SHERYL L. LOESCH in her official and individual capacity, SHERRI R. CARTER in her official and individual capacity, JACK WAGNER in his official and individual capacity, MIKE BRADFORD in his official and individual capacity, WILLIAM BLAGG in his official and individual capacity, KIRSTEN SUDHOFF DOOR in her official and individual capacity, ANDREA HEDRICK PARKER in her official and individual capacity, HAROLD O. ATKINSON in his official and individual capacity, PAUL MICHAEL BROWN in his official and individual capacity, LEON W. WEIDMAN in his official and individual capacity, PATRICIA A. WILLING in her official and individual capacity, ROBERT D. McCALLUM in his official and individual capacity, MICHAEL F. HERTZ in his official and individual capacity, STEVE D. ALTMAN in his official and individual capacity, ANDREW SKOWRONEK in his official and individual capacity, JOHN S. GORDON in his official and individual capacity, LEON W. WEIDMAN in his official and individual capacity, GARY PLESSMAN in his official and individual capacity, KRISTINE BLACKWOOD in her official and individual capacity, BENNET & WESTON in its official capacity, MATTHEWS, CALTON, STEIN, SHIELS, PEARCE, DUNN & KNOTT in its official capacity, WOLFE, CLARK, HENDERSON & TIDELL in its official capacity, BRADY & COLE in its official capacity, GODWIN, WHITE & GRUBER in its official capacity, LEA & CHAMBERLAIN in its official capacity, BECKWORTH & CARRIGAN, LLP in its official capacity, SAYLES & LIDJI in its official capacity, WALD &

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No.: EDCV 02-691 RT SGLx
**FIRST AMENDED CIVIL RICO CLAIM**
**TRIAL BY JURY DEMANDED**

**COUNTS FOR EACH DEFENDANT, FOR EACH PREDICATE ACT, DECIDED BY THE JURY**

COUNTS for Violation of Title 18 U.S.C. § 1962(d) Prohibited activities.
COUNTS for Violation of Title 18 U.S.C. § 1506 Theft or alteration of record or process; false bail.
COUNTS for Violation of Title 28 § 955 Practice of law restricted and CLERKS MANUAL, CHAPTER 1 § 1.02 c.
COUNTS for Violation of Title 18 U.S.C. § 241 Conspiracy.
COUNTS for Violation of Title 18 U.S.C. § 242 Deprivation of rights under color.
COUNTS for Violation of Title 18 U.S.C. § 1341 Frauds and swindles as defined by Title 18 U.S.C. § 1346. Definition of "scheme or artifice to defraud."
COUNTS for Violation of Title 18 U.S.C. § 1341 Frauds and swindles.
COUNTS for Violation of Title 28 USC Rule 79 and CLERKS MANUAL, Chapter 15, § 15.03
COUNTS for Violation of District Court Clerks Manual, Chapter 20, § 20.01 Attorney Admissions Procedures.
COUNTS for Violation of Title 18 USC § 1920
COUNTS for Violation of Title 18 USC § 1001 CLERKS MANUAL, Chapter 1, Exh. 2, Title 18 USC § 1001
COUNTS for Violation of Title 28 USC F.R.C.P. Rule 26. General Provisions Governing Discovery; Duty of Disclosure as amended 2000
COUNTS for Violation of CLERKS MANUAL, Chapter 9, Exhibit 4



ENTER ON ICMS

AUG - 7 2002

ASSOCIATES in its official capacity, JACKSON & WALKER, LLP in its official capacity, JACKSON & WALKER, LLP in its official capacity, JENKINS & GILCHRIST in its official capacity, JENKINS & GILCHRIST in its official capacity, RHEA & RODMAN, LLP, in its official capacity, DECARLI & IRWIN in its official capacity, PAMELA MCGRAW in her individual and official capacity, CHARLES S. FRIGERIO in its official capacity, CHARLES S. FRIGERIO in his individual and official capacity, OFFICE OF THE ATTORNEY GENERAL FOR THE STATE OF TEXAS in its official capacity, CLEMENS & SPENCER, PC in its official capacity, CLEMENS & SPENCER in its official capacity, KEITH A. KENDALL in his individual and official capacity, JONES, KURTH & ANDREWS, PC in its official capacity, MATTHEWS & BRANSCOMB, PC in its official capacity, AKIN, GUMP, STRAUSS, HAUER & FELD in its official capacity, STRASBURGER & PRICE, LLP in its official capacity, PAUL ANDREW DRUMMOND, SOUTHWESTERN BELL TELEPHONE, in its official capacity, THOMAS & LIBOWITZ, PA in its official capacity, VICTORIA VALERGA in her individual and official capacity, SOUTHERN ANIMAL RESCUE ASSOCIATION, INC., in its official capacity, ANGELA DICKERSON NOBLE in her individual and official capacity, ALLEN, STEIN, POWERS, DURBIN & HUNNICUTT in its official capacity, CHARLES B. GORHAM in his individual and official capacity, BRIN & BRIN in its official capacity, LEMLER & ASSOCIATES, PC in its official capacity, LAW OFFICES OF FERNANDO RAMOS in its official capacity, PASCO COUNTY ATTORNEY'S OFFICE in its official capacity, OFFICE OF THE ATTORNEY GENERAL FOR THE STATE OF FLORIDA, CIVIL LITIGATION DIVISION in its official capacity, DEBOISE & POULTON, P.A. in its official capacity, HOLLAND & KNIGHT, LLP in its official capacity, LAW OFFICES OF JAMES RICHARD HOOPER, P.A. in its official capacity, FOWLER, WHITE, GILLEN, BOGGS, VILLAREAL & BANKER, PA in its official capacity, LAW OFFICE OF NANCY M. PARHAM in its official capacity, NIX, HOLTSFORD, GILLILAND, LYONS & HIGGINS, PC in its official capacity, LAW OFFICE OF JOSEPH M. DAVIS in its official capacity, CARRINGTON & CARRINGTON in its official capacity, HILLSBOROUGH COUNTY ATTORNEY'S OFFICE FOR THE STATE OF FLORIDA in its official capacity, OFFICE OF THE CITY ATTORNEY FOR THE CITY OF ANAHEIM in its official capacity, COUNTY COUNSEL FOR THE COUNTY OF ORANGE in its official capacity, CREASON & AARVIG, LLP in its official capacity, MARIA K. AARVIG in her official, individual, and corporate capacity, KINKLE, RODIGER & SPRIGGS in its official capacity, DONALD BEACHAM in his official capacity, DENTON COUNTY CRIMINAL DISTRICT ATTORNEY'S OFFICE in its official capacity, McDONALD SANDERS, PC in its official capacity, CANTLEY & HANGER in its official capacity, GRIFFEN, WHITTEN & JONES in its official capacity, HOPKINS & SUTTER in its official capacity, CULLUM LAW FIRM, PC in its official capacity, KIRKPATRICK & LOCKHART in its official capacity, McHALE & CONNER in its official capacity, CHASE, ROTCHFORD, DRUKKER & BOGUST in its official capacity, FIELDS & CREASON in its official capacity, OFFICE OF THE CITY PROSECUTOR in its official capacity, ROBERT E. CHRISTIAN in his official capacity, JAMES L. KEE in his official capacity, TERRY A. GREEN in his official and individual capacity, ELVIRA R. MITCHELL in her official and individual capacity, COLEMAN A. SWART in his official and individual capacity, GEORGE W. LINDLEY in his official capacity, PAUL L. ABRAMS in his official capacity, ROSALYN M. CHAPMAN in her official capacity, CHARLES F. EICK in his official capacity, JEFFREY W. JOHNSON in his official capacity, VICTOR B. KENTON in his official capacity, JENNIFER T. LUM in her official capacity, MARGARET A. NAGLE, FERNANDO M. OLGUIN in his official capacity, PATRICK J. WALSH in his official capacity, ROBERT N. BLOCK in his official capacity, RALPH ZAREFSKY in his official capacity, STEPHEN J. HILLMAN in his official capacity, JAMES W. McMAHON in his official capacity, CAROLINE TURCHIN in her official capacity, ANDREW J. WISTRICH in his official capacity, CARLA WOEHRLE in her official capacity, STEPHEN G. LARSON in his official capacity, MARC L. GOLDMAN in his official capacity, ARTHUR NAKAZATO in his official capacity, PERCY ANDERSON in his official capacity, WM. MATTHEW BYRNE, JR. in his official capacity, A. ANDREW HAUK in his official capacity, HARRY L. HUPP in his official capacity, WILLIAM D. KELLER in his official capacity, J. SPENCER LETTS in his official capacity, RONALD S.W. LEW in his official capacity, NORA M. MANELLA in his official capacity, CONSUELO B. MARSHALL in her official capacity, A. HOWARD MATZ in his official capacity, MARIANA R. PFAELZER in his official capacity, DEAN D. PREGERSON in his official capacity, EDWARD RAFEEDIE in his official capacity, WILLIAM J. REA, MANUAL L. REAL in his official capacity, CHRISTINA A. SNYDER in her official capacity, ROBERT M. TAKASUGI in his official capacity, JOHN F. WALTER in his official capacity, STEPHEN V.

WILSON in his official capacity, LOURDES G. BAIRD in her official capacity, AUDREY B. COLLINS in her official capacity, FLORENCE-MARIE COOPER in her official capacity, ROBERT J. KELLEHER in his official capacity, GEORGE H. KING in his official capacity, MARGARET M. MORROW in her official capacity, DICKRAN TEVRIZIAN in his official capacity, ROBERT J. TIMLIN in his official capacity, LOURDES G. BAIRD in her official capacity, DAVID O. CARTER in his official capacity, GARY L. TAYLOR in his official capacity, ALICEMARIE H. STOTLER in her official capacity, ALESHIA M. WHITE in her official capacity, PAUL BROWN in his official and individual capacity, ORLANDO GARCIA in his official and individual capacity, RICHARD P. LAZARRA in his official and individual capacity, MAURICE M. PAUL in his official and individual capacity, TERRY J. HATTER in his official and individual capacity, WILLIAM B. SHUBB in his official and individual capacity, GARY A. FEESS in his official and individual capacity, and DOES.

       Defendants

---

## FIRST AMENDED CIVIL RICO CLAIM FOR DAMAGES AND OTHER RELIEF FOR VIOLATION OF THE FALSE CLAIMS ACT, RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO), RELATED FEDERAL LAWS, AND RELATED STATE LAWS

     1.     This is a first amended action brought by plaintiff Janet I. Fischer, who petitions

for redress of grievances, and requests that the court hold defendants accountable for violations

of Title 18 U.S.C. § 1962 et seq. (West 2001), clearly established law, other applicable federal

statutes, and applicable state statutes, for fraud and swindle, for obstruction of justice, conspiring

to obstruct justice for themselves and others for operating the courts as a racketeering enterprise,

for the filing of false claims, and for obstructing justice on a qui tam.

### DEMAND FOR TRIAL BY JURY

     2.     Plaintiff demands that the Federal Rules of Civil Procedure, Rule 1, Scope and

Purpose of Rules, shall govern this action, and plaintiff shall preserve, inviolate, her **right of**

**trial by jury** under Rule 38, and right of discovery disclosures without request prescribed under

Rule 26, concurrent with defendant's Answer pursuant to Rule 7(a) and Rule 8(b), with no other

pleadings allowed except upon Order of the Court under grounds provided by law.  The **JURY**

shall decide all issues including immunity, and shall decide upon all claims in this suit.

## JURISDICTION AND VENUE

3.      All procedures, rules and codes are taken from West's 2001 editions of Federal

Civil Judicial Procedures and Rules, and Federal Criminal Code and Rules, hereinafter referred

to by Title number, U.S.C. (United States Code), and § (section).

4.      This Court has jurisdiction over this action pursuant to federal statutes, including

Title 28 U.S.C. § 1331 (federal question), Title 28 U.S.C. § 1343 (civil rights and elective

franchise), Title 28 U.S.C. § 1355 (federal fines, penalties and forfeitures), Title 31 U.S.C. §§

3729 and 3730 et seq (false claims), Title 18 U.S.C. §§ 2, 3, 4, 43, 201, 241, 242, 891, 1001,

1341, 1505, 1506, 1719, 1920, 1962 (principals, accessories, obstruction of justice, animal

enterprise terrorism, racketeering, fraud, embezzlement, perjury, fraudulent or false entries, mail

fraud, violation of franking privileges, theft, alteration or destruction of federal records, fraud to

obtain Federal employee's compensation, extortionate credit transactions, terrorism, conspiracy

against civil rights, deprivation of civil rights under color), Title 15 U.S.C. §§ 1-7 (illegal

restraint of trade), Title 7 U.S.C. § 2 (commodities-tampering), 42 U.S.C. § 1983 (civil rights),

First Amendment (right to petition for redress of grievances), Seventh Amendment (right to trial

by jury), Fourteenth Amendment (right to equal protection), and the USA PATRIOT Act

(domestic terrorism).

5.      Venue is proper under Title 28 U.S.C. § 84.

6.      The United States is comprised of the federal government, and has sovereign

standing to sue or be sued.  Head offices for all branches of the federal government are located in

Washington, DC, with branch offices/agencies in all states, which are created under 28 U.S.C. §

124.  State and private agencies contract with cities and/or counties, are directly or indirectly

regulated by the federal government, and are subject to liability pursuant to 18 U.S.C. § 666.

## OPPOSITION TO MAGISTRATE, 28 U.S.C. section 636(c)

7.     Plaintiff hereby files this her OPPOSITION TO MAGISTRATE JUDGE'S

unlawful JURISDICTION, 28 U.S.C. section 636, to prevent magistrate judge STEPHEN G.

LARSON assignment by the Clerk on 7/2/02 prior to plaintiff's "return of the form to the Clerk"

which provides the following NOTE: RETURN THIS FORM TO THE CLERK OF THE

COURT ONLY IF ALL PARTIES HAVE CONSENTED ON THIS FORM TO THE

EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE.  The

magistrate judge and the CLERK knew, or reasonable should have known, that assignment of a

magistrate judge violated Article III and constitutes a violation of plaintiff's rights secured by

law, 18 U.S.C. sections 241 and 242, and Article III of the Constitution for the United States and

presents a claim cognizable under 42 U.S.C. section 1983 and conspiracy under section 1985(3).

Defendants did "have a meeting of the minds" to conspire with co-conspirators after notice of

their conduct and behavior to obstruct these proceedings in furtherance of their joint racketeering

scheme or artifice as alleged in complaint, in direct or indirect conflict with statutory law

subsequent to the decisions in *Hajek v. Burlington Northern Railroad Co.,* 186 F. 3d 1105 (9th

Cir. 1999); also *Sanders v. Union Pacific Railroad Co.,* 193 F.3d 1080 (9th Cir. 1999).

### PLAINTIFF'S DEMAND FOR FULL DISCLOSURE PER TITLE 28 U.S.C. RULE 26

8.     Plaintiff demands that all defendants fully disclose the following without delay,

obstruction or "gamesmanship:"

> Copy of their Oaths of Office
> Copy of their Bond
> Copy of their Insurance
> Copy of their state licenses
> Copies of appearance bonds on each case
> Copy of a list of all their creditors

Copy of a list of all their debtors

Copies of all financial transactions

Memberships of all clubs, organizations, fraternities, groups

Treaties per limitations of the Constitution

Names, addresses and phone numbers of all witnesses for their defense

Names, addresses and phone numbers of any other entities pertinent to this case

Copies of any other papers pertinent to this case

## PLAINTIFF'S NOTICE AND DEMAND FOR NON-NEGOTIABLE, PRIVATE CONTRACT WITH THE COURT AND WITH EACH DEFENDANT, FOR NO THIRD PARTIES

9.     Plaintiff gives notice and demands that since titles of nobility were abolished by Article 1, section 9 of the United States Constitution, each defendant is required to answer Summons individually and separately without an attorney/esquire.  Plaintiff demands no third-parties on this case, no third-party answers, and each line answered by each defendant.

## PARTIES, F.R.C.P. RULE 17

10.     Plaintiff Janet I. Fischer ("plaintiff") is a citizen of the United States residing within the State of California at 17954-A S. Euclid Ave., Chino, CA 91710.

11.     The UNITED STATES OF AMERICA is hereby sued in its corporate capacity doing business from c/o JOHN ASHCROFT, 10th & Constitution Avenues, N.W., Washington, D.C. 20530.

12.     JOHN ASHCROFT is hereby sued in his official and individual capacity doing business from 950 Pennsylvania Ave., N.W., Washington, D.C. 20530.

13.     The ADMINISTRATIVE OFFICE OF THE U.S. COURTS ("OFFICE") is hereby sued in its official capacity doing business from 1 Columbus Circle, Washington, D.C. 20544.  OFFICE directs training both at the Federal Judicial Center In-Court Programs Branch, One Columbus Circle N.E., Washington, D.C. 20002, and at other in-house training programs nation-wide in each of the 92 United States district courthouses.

14.     LEONIDAS RALPH MECHAM ("MECHAM") is hereby sued in his official and individual capacity doing business from 1 Columbus Circle, Washington, D.C. 20544.

15.     DAVID J. MALAND is hereby sued in his official and individual capacity doing business from 101 Pecan St., Room 112, Sherman, Texas 75090

16.     WILLIAM G. PUTNICKI is hereby sued in his official and individual capacity doing business from 655 East Durango Blvd., San Antonio, Texas 78206

17.     SHERYL L. LOESCH is hereby sued in her official and individual capacity doing business from Office of the Clerk, United States Courthouse, Tampa, Florida 33602.

18.     SHERRI R. CARTER is hereby sued in her official and individual capacity doing business from 312 N. Spring St., No. G-8, Los Angeles, California 90012-4793.

19.     JACK WAGNER is hereby sued in his official and individual capacity doing business from 501 "I" Street, Sacramento, CA 95814.

20.     RACHEL INGRAM is hereby sued in her official and individual capacity doing business from 3470 12th St., Riverside, CA 92501.

21.     Defendants DAVID J. MALAND, WILLIAM G. PUTNICKI, SHERRI R. CARTER, SHERYL L. LOESCH, and JACK WAGNER supervise, direct, and train all clerks in their districts including RACHEL INGRAM, and they, along with their deputy clerks and other court staff are herein collectively known and addressed as "CLERKS."

22.     ROBERT D. McCALLUM is hereby sued in his official and individual capacity doing business from c/o U.S. Attorneys Office, P.O. Box 261, Ben Franklin Station, Washington, D.C. 20044.

23.     MICHAEL F. HERTZ is hereby sued in his official and individual capacity doing business from c/o U.S. Attorneys Office, P.O. Box 261, Ben Franklin Station, Washington, D.C. 20044.

24.     STEVE D. ALTMAN is hereby sued in his official and individual capacity doing business from c/o U.S. Attorneys Office, P.O. Box 261, Ben Franklin Station, Washington, D.C. 20044.

25.     ANDREW SKOWRONEK is hereby sued in his official and individual capacity doing business from c/o U.S. Attorneys Office, P.O. Box 261, Ben Franklin Station, Washington, D.C. 20044.

26.     JOHN S. GORDON is hereby sued in his official and individual capacity doing business from c/o U.S. Attorneys Office, 300 North Los Angeles Street, Room 7516, Los Angeles, CA 90012

27.     LEON W. WEIDMAN is hereby sued in his official and individual capacity doing business from c/o U.S. Attorneys Office, 300 North Los Angeles Street, Room 7516, Los Angeles, CA 90012.

28.     GARY PLESSMAN is hereby sued in his official and individual capacity doing business from c/o U.S. Attorneys Office, 300 North Los Angeles Street, Room 7516, Los Angeles, CA 90012.

29.     KRISTINE BLACKWOOD is hereby sued in her official and individual capacity doing business from c/o U.S. Attorneys Office, 300 North Los Angeles Street, Room 7516, Los Angeles, CA 90012.

30.     MIKE BRADFORD is hereby sued in his official and individual capacity, doing business from c/o U.S. Attorneys Office, 350 Magnolia, Ste. 150, Beaumont, TX 77701.

31.     WILLIAM BLAGG is hereby sued in his official and individual capacity, doing business from c/o U.S. Attorneys Office, 601 N.W. Loop 410, #600, San Antonio, TX 78216-5512

32.     KIRSTEN SUDHOFF DOOR is hereby sued in her official and individual capacity, doing business from c/o U.S. Attorneys Office, 501 "I" Street, Ste. 10-100, Sacramento, CA 95814.

33.     ANDREA HEDRICK PARKER is hereby sued in her official and individual capacity, doing business from c/o U.S. Attorneys Office, 350 Magnolia, Ste. 150, Beaumont, TX 77701.

34.     HAROLD O. ATKINSON is hereby sued in his official and individual capacity, doing business from c/o U.S. Attorneys Office, 601 N.W. Loop 410, #600, San Antonio, TX 78216-5512

35.     PAUL MICHAEL BROWN is hereby sued in his official and individual capacity, doing business from c/o U.S. Attorneys Office, P.O. Box 7146, Washington, D.C. 20044.

36.     LEON W. WEIDMAN is hereby sued in his official and individual capacity, doing business from c/o U.S. Attorneys Office, 300 N. Los Angeles St., Room 7516, Los Angeles, CA 90012.

37.     PATRICIA A. WILLING is hereby sued in her official and individual capacity, doing business from c/o U.S. Attorneys Office, 400 N. Tampa St., Ste. 3200, Tampa, FL 33602.

38.     ROBERT D. McCALLUM is hereby sued in his official and individual capacity doing business from c/o U.S. Attorneys Office, P.O. Box 261, Ben Franklin Station, Washington, D.C. 20044.

39.     MICHAEL F. HERTZ is hereby sued in his official and individual capacity doing business from c/o U.S. Attorneys Office, P.O. Box 261, Ben Franklin Station, Washington, D.C. 20044.

40.     STEVE D. ALTMAN is hereby sued in his official and individual capacity doing business from c/o U.S. Attorneys Office, P.O. Box 261, Ben Franklin Station, Washington, D.C. 20044.

41.     ANDREW SKOWRONEK is hereby sued in his official and individual capacity doing business from c/o U.S. Attorneys Office, P.O. Box 261, Ben Franklin Station, Washington, D.C. 20044.

42.     JOHN S. GORDON is hereby sued in his official and individual capacity doing business from c/o U.S. Attorneys Office, 300 North Los Angeles Street, Room 7516, Los Angeles, CA 90012

43.     LEON W. WEIDMAN is hereby sued in his official and individual capacity doing business from c/o U.S. Attorneys Office, 300 North Los Angeles Street, Room 7516, Los Angeles, CA 90012.

44.     GARY PLESSMAN is hereby sued in his official and individual capacity doing business from c/o U.S. Attorneys Office, 300 North Los Angeles Street, Room 7516, Los Angeles, CA 90012.

45.     KRISTINE BLACKWOOD is hereby sued in her official and individual capacity doing business from c/o U.S. Attorneys Office, 300 North Los Angeles Street, Room 7516, Los Angeles, CA 90012.

46.     Defendants MIKE BRADFORD, WILLIAM BLAGG, KIRSTEN SUDHOFF DOOR, ANDREA HEDRICK PARKER, HAROLD O. ATKINSON, PAUL MICHAEL

BROWN, LEON W. WEIDMAN, PATRICIA A. WILLING, ROBERT D. McCALLUM, MICHAEL F. HERTZ, STEVE D. ALTMAN, ANDREW SKOWRONEK, JOHN S. GORDON, LEON W. WEIDMAN, GARY PLESSMAN, and KRISTINE BLACKWOOD are all present or former U.S. Attorneys, Assistant U.S. Attorneys or Deputy U.S. Attorneys, who are sworn to protect the Constitution from foreign and domestic invasion, and are herein collectively known as "U.S. ATTORNEYS."

47.     The law firm of BENNET & WESTON is hereby sued in its official capacity, doing business from 1750 Valley View Lane, Ste. 120, Dallas, TX 75234

48.     The law firm of MATTHEWS, CALTON, STEIN, SHIELS, PEARCE, DUNN & KNOTT is hereby sued in its official capacity, doing business from 8131 LBJ Freeway, Ste. 700, Dallas, TX 75251.

49.     The law firm of WOLFE, CLARK, HENDERSON & TIDELL is hereby sued in its official capacity, doing business from 123 North Crockett Street, Ste. 100, Sherman, TX 75090.

50.     The law firm of BRADY & COLE is hereby sued in its official capacity, doing business from 900 Jackson St., Ste. 305, Dallas, TX 75202-4455.

51.     The law firm of GODWIN, WHITE & GRUBER is hereby sued in its official capacity, doing business from 901 Main St., Ste. 2500, Dallas, TX 75231.

52.     The law firm of LEA & CHAMBERLAIN is hereby sued in its official capacity, doing business from 301 Congress Ave., 18th Floor, Austin, TX 78701.

53.     The law firm of BECKWORTH & CARRIGAN, LLP is hereby sued in its official capacity, doing business from 1001 Fannin St., 4600 First City Tower, Houston, TX 77002.

54.     The law firm of SAYLES & LIDJI is hereby sued in its official capacity, doing business from 1201 Elm St., Ste. 4400, Renaissance Tower, Dallas, TX 75720.

55.     The law firm of WALD & ASSOCIATES is hereby sued in its official capacity, doing business from Ste. 215, Compass Bank Tower, 300 N. Coit Rd., Richardson, TX 75080-5400.

56.     The law firm of JACKSON & WALKER, LLP is hereby sued in its official capacity, doing business from 901 Main St., Ste. 6000, Dallas, TX 75202-3797.

57.     The law firm of JACKSON & WALKER, LLP is hereby sued in its official capacity, doing business from 112 East Pecan, Ste. 2100, San Antonio, TX 78205-1521.

58.     The law firm of JENKINS & GILCHRIST is hereby sued in its official capacity, doing business from 1800 Frost Bank Tower, 100 W. Houston, San Antonio, TX 78205.

59.     The law firm of JENKINS & GILCHRIST is hereby sued in its official capacity, doing business from 1445 Ross Ave., Ste. 320, Dallas, TX 75202-2799.

60.     The law firm of RHEA & RODMAN, LLP, is hereby sued in its official capacity, doing business from 2003 N. Lamar, Ste. 100, Austin, TX 78705.

61.     The Law Offices of DECARLI & IRWIN is hereby sued in its official capacity, doing business from 605 Brazos, Ste. 200, Austin, TX 78701.

**62.**     PAMELA MCGRAW (McGRAW & ASSOCIATES) is hereby sued in her individual and official capacity, doing business from 200 N. Travis, Ste. 404, Sherman, TX 75090.

63.     The Law Offices of CHARLES S. FRIGERIO is hereby sued in its official capacity, doing business from Commerce Plaza Building, 111 Soledad, Ste. 840, San Antonio, TX 78205.

64.  CHARLES S. FRIGERIO is hereby sued in his individual and official capacity, doing business from Commerce Plaza Building, 111 Soledad, Ste. 840, San Antonio, TX 78205.

65.  The OFFICE OF THE ATTORNEY GENERAL FOR THE STATE OF TEXAS is hereby sued in its official capacity, doing business from P.O. Box 12548, Capital Station, Austin, TX 78711.

66.  The law firm of CLEMENS & SPENCER, PC is hereby sued in its official capacity, doing business from 112 East Pecan St., San Antonio, TX 78205.

67.  The law firm of CLEMENS & SPENCER is hereby sued in its official capacity, doing business from 1500 NBC Bank Plaza, 112 East Pecan St., San Antonio, TX 78205-1517.

68.  KEITH A. KENDALL is hereby sued in his individual and official capacity, doing business from 10100 Reunion, Third Floor, San Antonio, TX 78216.

69.  The law firm of JONES, KURTH & ANDREWS, PC is hereby sued in its official capacity, doing business from 10100 Reunion Place, Ste. 600, San Antonio, TX 78216.

70.  The law firm of MATTHEWS & BRANSCOMB, PC is hereby sued in its official capacity, doing business from 112 E. Pecan, Ste. 1100, San Antonio, TX 78205-1516.

71.  The law firm of AKIN, GUMP, STRAUSS, HAUER & FELD is hereby sued in its official capacity, doing business from 300 Convent, Ste. 1500, San Antonio, TX 78205.

72.  The law firm of STRASBURGER & PRICE, LLP is hereby sued in its official capacity, doing business from 300 Covent St., Ste. 900, San Antonio, TX 78205.

73.  The law firm of PAUL ANDREW DRUMMOND, SOUTHWESTERN BELL TELEPHONE, is hereby sued in its official capacity, doing business from 1010 N. St. Mary's St., Ste. 1403, San Antonio, TX 78205.

74.     The law firm of THOMAS & LIBOWITZ, PA is hereby sued in its official capacity, doing business from 100 Light St., Ste. 1100, Baltimore, MD 21202.

75.     VICTORIA VALERGA is hereby sued in her individual and official capacity, doing business from 7300 Blanco Rd., Ste. 103, San Antonio, TX 78216.

76.     The law firm of SOUTHERN ANIMAL RESCUE ASSOCIATION, INC., is hereby sued in its official capacity, doing business from 1050 Rawhide Rd., Seguin, TX 78155.

77.     ANGELA DICKERSON NOBLE is hereby sued in her individual and official capacity, doing business from 312 W. Mountain St., Seguin, TX 78155.

78.     The law firm of ALLEN, STEIN, POWERS, DURBIN & HUNNICUTT is hereby sued in its official capacity, doing business from 6243 IH 10 West, 7th Floor, P.O. Box 101507, San Antonio, TX 78201.

79.     CHARLES B. GORHAM is hereby sued in his individual and official capacity, doing business from 1250 N.E. Loop 410, Ste. 710, San Antonio, TX 78209.

80.     The law firm of BRIN & BRIN is hereby sued in its official capacity, doing business from Fountainhead One, 8200 I-10 West, Ste. 610, San Antonio, TX 78230.

81.     The law firm of LEMLER & ASSOCIATES, PC is hereby sued in its official capacity, doing business from 8122 Datapoint Dr., Ste. 328, San Antonio, TX 78229.

82.     The LAW OFFICES OF FERNANDO RAMOS is hereby sued in its official capacity, doing business from 800 Dolorosa, Ste. 117, San Antonio, TX 78207.

83.     The law firm of PASCO COUNTY ATTORNEY'S OFFICE is hereby sued in its official capacity, doing business from West Pasco Government Center, 7530 Little Rd., Ste. 340, New Port Richey, FL 34654.

84.     The OFFICE OF THE ATTORNEY GENERAL FOR THE STATE OF FLORIDA, CIVIL LITIGATION DIVISION is hereby sued in its official capacity, doing business from Century Plaza, Ste. 1100, 135 W. Central Blvd., Orlando, FL 32801.

85.     The law firm of DEBOISE & POULTON, P.A. is hereby sued in its official capacity, doing business from Lakeview Office Park, Ste. 1010, 1035 S. Semoran Blvd., Winter Park, FL 32792.

86.     The law firm of HOLLAND & KNIGHT, LLP is hereby sued in its official capacity, doing business from 400 N. Ashley Dr., Ste. 2300, P.O. Box 1288, Tampa, FL 33602-1288.

87.     The LAW OFFICES OF JAMES RICHARD HOOPER, P.A. is hereby sued in its official capacity, doing business from 815 North Garland Ave., P.O. Box 540509, Orlando, FL 32854-0509.

88.     The law firm of FOWLER, WHITE, GILLEN, BOGGS, VILLAREAL & BANKER, PA is hereby sued in its official capacity, doing business from 501 E. Kennedy Blvd., Ste. 1700, P.O. Box 1438, Tampa, FL 33601-1438.

89.     The LAW OFFICE OF NANCY M. PARHAM is hereby sued in its official capacity, doing business from 210 N. Pierce St., Tampa, FL 33602-3597.

90.     The law firm of NIX, HOLTSFORD, GILLILAND, LYONS & HIGGINS, PC is hereby sued in its official capacity, doing business from P.O. Box 4128, Montgomery, AL 36103-4128.

91.     The LAW OFFICE OF JOSEPH M. DAVIS is hereby sued in its official capacity, doing business from 3333 W. Kennedy Blvd., Ste. 102, Tampa, FL 33609.

92.    The law firm of CARRINGTON & CARRINGTON is hereby sued in its official capacity, doing business from 619 Turner St., Clearwater, FL 33756.

93.    The HILLSBOROUGH COUNTY ATTORNEY'S OFFICE FOR THE STATE OF FLORIDA is hereby sued in its official capacity, doing business from 601 E. Kennedy Blvd., 27th Floor, P.O. Box 1110, Tampa, FL 33601-1110.

94.    The OFFICE OF THE CITY ATTORNEY FOR THE CITY OF ANAHEIM is hereby sued in its official capacity, doing business from 200 S. Anaheim Blvd., Ste. 356, Anaheim, CA 92805.

95.    The COUNTY COUNSEL FOR THE COUNTY OF ORANGE is hereby sued in its official capacity, doing business from 10 Civic Center Plaza, 4th Floor, P.O. Box 1379, Santa Ana, CA 92702-1379.

96.    The law firm of CREASON & AARVIG, LLP is hereby sued in its official capacity, doing business from 3963 Eleventh Street, Riverside, CA 92501.

97.    MARIA K. AARVIG is hereby sued in her official, individual, and corporate capacity, doing business from 3963 Eleventh Street, Riverside, CA 92501.

98.    The law firm of KINKLE, RODIGER & SPRIGGS is hereby sued in its official capacity, doing business from 3333 Fourteenth St., Riverside, CA 92501.

99.    DONALD BEACHAM is hereby sued in his official capacity, doing business from 42335 Washington St., Ste. F, Palm Desert, CA 92211.

100.    DENTON COUNTY CRIMINAL DISTRICT ATTORNEY'S OFFICE is hereby sued in its official capacity, doing business from 127 N. Woodrow Lane, Denton, TX 76205-6397.

101.    The law firm of McDONALD SANDERS, PC is hereby sued in its official capacity, doing business from 777 Main St., Ste. 1300, Fort Worth, TX 76102.

102. The law firm of CANTLEY & HANGER is hereby sued in its official capacity, doing business from 801 Cherry St., Ste. 2100, Fort Worth, TX 76102.

103. The law firm of GRIFFEN, WHITTEN & JONES is hereby sued in its official capacity, doing business from 218 N. Elm, Denton, TX 76201.

104. The law firm of HOPKINS & SUTTER is hereby sued in its official capacity, doing business from 3700 Bank One Center, 1717 Main St., Dallas, TX 75201.

105. CULLUM LAW FIRM, PC is hereby sued in its official capacity, doing business from 8333 Douglas Ave., Ste. 1400, Dallas, TX 75225-6308.

106. The law firm of KIRKPATRICK & LOCKHART is hereby sued in its official capacity, doing business from 1717 Main St., Ste. 3100, Dallas, TX 75201.

107. ALESHIA M. WHITE is hereby sued in her official capacity, doing business from Attorney General's Office of the State of California, P.O. Box 944255, 1300 I St., Ste. 125, Sacramento, CA 94244-2550.

108. Law Office of McHALE & CONNER is hereby sued in its corporate capacity doing business from 600 Wilshire Blvd., Ste. 300, Los Angeles, CA 90017.

109. Law Office of CHASE, ROTCHFORD, DRUKKER & BOGUST is hereby sued in its corporate capacity doing business from 700 South Flower St., Ste. 500, Los Angeles, CA 90017.

110. Law Office of FIELDS AND CREASON is hereby sued in its corporate capacity doing business from 3993 Market St., Riverside, CA 92501.

111. OFFICE OF THE CITY PROSECUTOR is hereby sued in its municipal and corporate capacities doing business from 221 East Walnut St., Pasadena, CA 91101.

112.   ROBERT E. CHRISTIAN is hereby sued in his official and individual capacities doing business from 121 South 11th, Duncan, OK 73533.

113.   JAMES L. KEE is hereby sued in his official and individual capacities doing business from 1102 Maple, P.O. Box 1646, Duncan, OK 73534.

114.   BENNET & WESTON, MATTHEWS CALTON STEIN SHIELS PEARCE DUNN & KNOTT, WOLFE CLARK HENDERSON & TIDELL, BRADY & COLE, GODWIN, WHITE & GRUBER, LEA & CHAMBERLAIN, BECKWORTH & CARRIGAN LLP, SAYLES & LIDJI, WALD & ASSOCIATES, JACKSON & WALKER LLP, JACKSON & WALKER LLP, JENKINS & GILCHRIST, JENKINS & GILCHRIST, RHEA & RODMAN LLP, DECARLI & IRWIN, PAMELA MCGRAW (McGRAW & ASSOCIATES), CHARLES S. FRIGERIO, OFFICE OF THE ATTORNEY GENERAL FOR THE STATE OF TEXAS, CLEMENS & SPENCER PC, CLEMENS & SPENCER, KEITH A. KENDALL, JONES KURTH & ANDREWS PC, MATTHEWS & BRANSCOMB PC, AKIN GUMP STRAUSS HAUER & FELD, STRASBURGER & PRICE LLP, PAUL ANDREW DRUMMOND SOUTHWESTERN BELL TELEPHONE, THOMAS & LIBOWITZ PA, VICTORIA VALERGA, SOUTHERN ANIMAL RESCUE ASSOCIATION INC., ANGELA DICKERSON NOBLE, ALLEN STEIN POWERS DURBIN & HUNNICUTT, CHARLES B. GORHAM, BRIN & BRIN, LEMLER & ASSOCIATES PC, LAW OFFICES OF FERNANDO RAMOS, PASCO COUNTY ATTORNEY'S OFFICE, OFFICE OF THE ATTORNEY GENERAL FOR THE STATE OF FLORIDA, CIVIL LITIGATION DIVISION, DEBOISE & POULTON P.A., HOLLAND & KNIGHT LLP, LAW OFFICES OF JAMES RICHARD HOOPER P.A., FOWLER WHITE GILLEN BOGGS VILLAREAL & BANKER PA, LAW OFFICE OF NANCY M. PARHAM, NIX HOLTSFORD GILLILAND LYONS & HIGGINS PC, LAW OFFICE OF JOSEPH M.

DAVIS, CARRINGTON & CARRINGTON, HILLSBOROUGH COUNTY ATTORNEY'S OFFICE FOR THE STATE OF FLORIDA, OFFICE OF THE CITY ATTORNEY FOR THE CITY OF ANAHEIM, COUNTY COUNSEL FOR THE COUNTY OF ORANGE, CREASON & AARVIG LLP, MARIA K. AARVIG, KINKLE RODIGER & SPRIGGS, DONALD BEACHAM, DENTON COUNTY CRIMINAL DISTRICT ATTORNEY'S OFFICE, McDONALD SANDERS PC, CANTLEY & HANGER, GRIFFEN WHITTEN & JONES, HOPKINS & SUTTER, CULLUM LAW FIRM PC, KIRKPATRICK & LOCKHART, ALESHIA M. WHITE, McHALE & CONNER, CHASE, ROTCHFORD, DRUKKER & BOGUST, FIELDS AND CREASON, OFFICE OF THE CITY PROSECUTOR, ROBERT E. CHRISTIAN and JAMES L. KEE are single-practice attorneys, corporations, partnerships, or associations comprised of licensed attorneys, who, as officers of the court, are sworn to protect the Constitution from foreign and domestic invasion. As members of the Bar Association, attorneys are governed by Judicial Canons, Oath of Office, Business and Professions Code, and West's Title 28 U.S.C. Rules of Court including Chief Justice White's directive in West's 2002 Title 28 CONGRESSIONAL ACTION ON PROPOSED RULES AND FORMS GOVERNING PROCEEDINGS, ORDER OF APRIL 29, 1980 "that the federal courts are subject to the injunction in Rule 1 that they 'be construed to secure the just, *speedy*, and *inexpensive* determination of every action. *Herbert v. Landau*, 441 U.S. 153, 177 (1979)." Defendant law firms, their agents and employees, are herein collectively known and addressed as "FIRMS."

115.    VIRGINIA A. PHILLIPS ("PHILLIPS") is hereby sued in her official and individual capacity, doing business from 3470 12th St., Riverside, CA 92501.

116.    PAUL BROWN is hereby sued in his official and individual capacity, doing business from 101 Pecan St., Room 112, Sherman, TX 75090.

117.    ORLANDO GARCIA is hereby sued in his official and individual capacity, doing business from 655 East Durango Blvd., San Antonio, TX 78206.

118.    RICHARD P. LAZARRA is hereby sued in his official and individual capacity, doing business from 801 North Florida Avenue, Tampa, Florida 33602.

119.    MAURICE M. PAUL is hereby sued in his official and individual capacity, doing business from United States Courthouse, Tampa, Florida, 33602.

120.    TERRY J. HATTER is hereby sued in his official and individual capacity, doing business from 312 N. Spring St., #G-8, Los Angeles, CA 90012-4724.

121.    WILLIAM B. SHUBB is hereby sued in his official and individual capacity, doing business from 501 "I" Street, Sacramento, CA 95814.

122.    GARY A. FEESS is hereby sued in his official and individual capacity, doing business from Edward R. Roybal Center & Federal Bldg., 255 E. Temple St., Los Angeles, CA 90012.

123.    TERRY A. GREEN is hereby sued in his official and individual capacity, doing business from

124.    ELVIRA R. MITCHELL is hereby sued in her official and individual capacity, doing business from

125.    COLEMAN A. SWART is hereby sued in his official and individual capacity, doing business from 200 N. Garfield Ave., Pasadena, CA 91101.

126.    GEORGE W. LINDLEY is hereby sued in his official capacity, doing business from 121 South 11th, Duncan, OK 73533.

127.    PERCY ANDERSON is hereby sued in his official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

128. WM. MATTHEW BYRNE, JR. is hereby sued in his official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

129. A. ANDREW HAUK is hereby sued in his official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

130. HARRY L. HUPP is hereby sued in his official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

131. WILLIAM D. KELLER is hereby sued in his official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

132. J. SPENCER LETTS is hereby sued in his official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

133. RONALD S.W. LEW is hereby sued in his official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

134. NORA M. MANELLA is hereby sued in her official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

135. CONSUELO B. MARSHALL is hereby sued in her official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

136. A. HOWARD MATZ is hereby sued in his official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

137. MARIANA R. PFAELZER is hereby sued in her official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

138. DEAN D. PREGERSON is hereby sued in his official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

139.     EDWARD RAFEEDIE is hereby sued in his official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

140.     WILLIAM J. REA is hereby sued in his official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

141.     MANUAL L. REAL is hereby sued in his official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

142.     CHRISTINA A. SNYDER is hereby sued in his official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

143.     ROBERT M. TAKASUGI is hereby sued in his official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

144.     JOHN F. WALTER is hereby sued in his official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

145.     STEPHEN V. WILSON is hereby sued in his official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

146.     LOURDES G. BAIRD is hereby sued in her official capacity, doing business from 255 E. Temple St., Los Angeles, CA 90012.

147.     AUDREY B. COLLINS is hereby sued in her official capacity, doing business from 255 E. Temple St., Los Angeles, CA 90012.

148.     FLORENCE-MARIE COOPER is hereby sued in her official capacity, doing business from 255 E. Temple St., Los Angeles, CA 90012.

149.     ROBERT J. KELLEHER is hereby sued in his official capacity, doing business from 255 E. Temple St., Los Angeles, CA 90012.

150. GEORGE H. KING is hereby sued in his official capacity, doing business from 255 E. Temple St., Los Angeles, CA 90012.

151. MARGARET M. MORROW is hereby sued in her official capacity, doing business from 255 E. Temple St., Los Angeles, CA 90012.

152. DICKRAN TEVRIZIAN is hereby sued in his official capacity, doing business from 255 E. Temple St., Los Angeles, CA 90012.

153. ROBERT J. TIMLIN is hereby sued in his official capacity, doing business from 3470 12th St., Riverside, CA 92501.

154. LOURDES G. BAIRD is hereby sued in her official capacity, doing business from 255 E. Temple St., Los Angeles, CA 90012.

155. DAVID O. CARTER is hereby sued in his official capacity, doing business from 411 W. 4th St., Rm. 1053, Santa Ana, CA 92701-4516.

156. GARY L. TAYLOR is hereby sued in his official capacity, doing business from 411 W. 4th St., Rm. 1053, Santa Ana, CA 92701-4516.

157. ALICEMARIE H. STOTLER is hereby sued in her official capacity, doing business from 411 W. 4th St., Rm. 1053, Santa Ana, CA 92701-4516.

158. PAUL L. ABRAMS is hereby sued in his official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

159. ROSALYN M. CHAPMAN is hereby sued in her official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

160. CHARLES F. EICK is hereby sued in his official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

161.     JEFFREY W. JOHNSON is hereby sued in his official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

162.     VICTOR B. KENTON is hereby sued in his official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

163.     JENNIFER T. LUM is hereby sued in his official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

164.     MARGARET A. NAGLE is hereby sued in her official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

165.     FERNANDO M. OLGUIN is hereby sued in his official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

166.     PATRICK J. WALSH is hereby sued in his official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

167.     RALPH ZAREFSKY is hereby sued in his official capacity, doing business from 312 N. Spring St., Los Angeles, CA 90012.

168.     ROBERT N. BLOCK is hereby sued in his official capacity, doing business from 255 E. Temple St., Los Angeles, CA 90012.

169.     STEPHEN J. HILLMAN is hereby sued in his official capacity, doing business from 255 E. Temple St., Los Angeles, CA 90012.

170.     JAMES W. McMAHON is hereby sued in his official capacity, doing business from 255 E. Temple St., Los Angeles, CA 90012.

171.     CAROLINE TURCHIN is hereby sued in her official capacity, doing business from 255 E. Temple St., Los Angeles, CA 90012.

172.   ANDREW J. WISTRICH is hereby sued in his official capacity, doing business from 255 E. Temple St., Los Angeles, CA 90012.

173.   CARLA WOEHRLE is hereby sued in her official capacity, doing business from 255 E. Temple St., Los Angeles, CA 90012.

174.   STEPHEN G. LARSON is hereby sued in his official capacity, doing business from 3470 12th St., Riverside, CA 92501.

175.   MARC L. GOLDMAN is hereby sued in his official capacity, doing business from 411 W. 4th St., Rm. 1053, Santa Ana, CA 92701-4516.

176.   ARTHUR NAKAZATO is hereby sued in his official capacity, doing business from 411 W. 4th St., Rm. 1053, Santa Ana, CA 92701-4516.

177.   Defendants VIRGINIA A. PHILLIPS, PAUL BROWN, ORLANDO GARCIA, RICHARD P. LAZARRA, TERRY J. HATTER, WILLIAM B. SHUBB, MAURICE M. PAUL, GARY A. FEESS, PERCY ANDERSON, WM. MATTHEW BYRNE, JR., A. ANDREW HAUK, HARRY L. HUPP, WILLIAM D. KELLER, J. SPENCER LETTS, RONALD S.W. LEW, NORA M. MANELLA, CONSUELO B. MARSHALL, A. HOWARD MATZ, MARIANA R. PFAELZER, DEAN D. PREGERSON, EDWARD RAFEEDIE, WILLIAM J. REA, MANUAL L. REAL, CHRISTINA A. SNYDER, ROBERT M. TAKASUGI, JOHN F. WALTER, STEPHEN V. WILSON, LOURDES G. BAIRD, AUDREY B. COLLINS, FLORENCE-MARIE COOPER, ROBERT J. KELLEHER, GEORGE H. KING, MARGARET M. MORROW, DICKRAN TEVRIZIAN, ROBERT J. TIMLIN, LOURDES G. BAIRD, DAVID O. CARTER, GARY L. TAYLOR, and ALICEMARIE H. STOTLER are Article III judges; TERRY A. GREEN, ELVIRA R. MITCHELL, COLEMAN A. SWART, and GEORGE W. LINDLEY are state court judges; and PAUL L. ABRAMS, ROSALYN M. CHAPMAN, CHARLES F. EICK, JEFFREY W.

JOHNSON, VICTOR B. KENTON, JENNIFER T. LUM, MARGARET A. NAGLE,

FERNANDO M. OLGUIN, PATRICK J. WALSH, ROBERT N. BLOCK, RALPH ZAREFSKY,

STEPHEN J. HILLMAN, JAMES W. McMAHON, CAROLINE TURCHIN, ANDREW J.

WISTRICH, CARLA WOEHRLE, STEPHEN G. LARSON, MARC L. GOLDMAN, and

ARTHUR NAKAZATO are Magistrate judges, who are sworn to protect the Constitution from

foreign and domestic invasion, with additional duties to preserve the public's belief in the integrity

of the courts.  Judges are required to perform all duties as prescribed by law, and are governed by

judicial Canons, Oath of office, and West's Title 28 Rules of Court, including Chief Justice

White's directive in West's 2002 Title 28 CONGRESSIONAL ACTION ON PROPOSED

RULES AND FORMS GOVERNING PROCEEDINGS, ORDER OF APRIL 29, 1980 that "[t]he

responsibility for control [of pretrial process] rests on both judges and lawyers.  Where existing

rules and statutes permit abuse, they must be changed.  Where the power lies with judges to

prevent or correct abuse and misuse of the system, judges must act." Defendant Judges and their

staff are herein collectively known as "JUDGES."

　　　178.　　Defendants DOES are unknown to plaintiff and will be named in their official,

corporate and individual capacities as agents, officers or employees for entities acting in civil

conspiracy, and are hereby sued as their identities become known through discovery.

BRIEF STATEMENT OF THE CASE, F.R.C.P. RULE 8

　　　179.　　CLERKS, under the direction of MECHAM through OFFICE, took bribes and

conspired with JUDGES, U.S. ATTORNEYS, FIRMS, their clients, and other defendants to use

the courts as a racketeering enterprise by working in concert to fix certain cases to obstruct justice

for certain classes of offenders and get them "off the hook" -- case dismissed, no hearings, no jury

trials.  An interesting factor for the jury will be that the offenders were all state or federal

government employees, their friends, and private persons and corporations, who were charged with committing felonies. NOTE: No proof is required in a judicial bribery case other than the solicitation and completion of the act by a judge; "to do a favor" is the standard for "principals and accessories." See *Salinas v. United States,* 118 S.Ct. 469 (1997). ASHCROFT had this information for at least 60 days in a qui tam filed April 17, 2002, No. EDCV 02-334 VAP SGLx, failed to indict, which makes ASHCROFT an "accessory after the fact."

PLAINTIFF'S REPORT OF THE FRAUD FALLS ON DEAF EARS ...

180.   In January 2000, plaintiff traveled to Washington, D.C. and hand-delivered a 100+ page report of defendants' corruption to the House Judiciary Committee, Department of Commerce, Department of Agriculture, and the Department of Justice, part of which is included, see EXHIBIT A. No action, investigation, or indictments were done on plaintiff's behalf by any person or agency, the fraud and swindle continues to date, and is being covered up by ASHCROFT, MECHAM, OFFICE, PHILLIPS, INGMAN, and DOE defendants.

BACKGROUND OF DEFENDANTS' FRAUDULENT SCHEMES...

181.   The function of the court is not to decide issues, but rather to determine whether they exist. Rules of Evidence apply. All defendants knew that a crime had been committed, knew that an injured citizen had protested the crime by filing a lawsuit against "corrupt local government and their friends," and knew that a jury trial was demanded. Defendants had a "meeting of the minds," and did engage in prohibited pretrial actions to cover up these crimes by getting these types of cases dismissed in prohibited bench trials, dismissed with prejudice, not for publication, no hearings, so as to conceal from the public defendants' criminal "property-grab," racketeering schemes, obstruction of justice for the offenders, and vicious retaliation against citizens protesting crime by government employees and their agents. Plaintiff demands that each defendant provide

proof that they were not participating on these particular cases, that hearings and jury trials were provided, that injured citizens got their injunctive relief, their property was returned and/or they were otherwise made whole, defaults were entered, and that the offenders on each case were prosecuted and incarcerated. The cases exist. Defendants were there. Defendants had "obligations and duties as prescribed by law." The jury will decide whether defendants performed these duties to ensure "just, speedy and inexpensive determination of every action," or whether they used their positions of public trust as officers of the court to needlessly increase the cost of litigation, conceal and obstruct justice for offenders engaged in robbery, extortion, racketeering, illegal search and seizure, fraud and swindle perjury, theft of property, transporting stolen property, laundering (fencing) stolen property, domestic terrorism, animal enterprise terrorism, perjury, and great bodily injury resulting in death. Plaintiff demands that each defendant explain how each of these crimes are not crimes when they are committed by a sheriff, justice of the peace, lawyer, judge, or any other government employee or agent.

182.    Defendants had knowledge and ability to prevent these special threats to social well-being, yet did nothing, except aid the offenders and enrich themselves in the process. Defendants cheated the public out of the intangible right to honest services, obstructed justice for themselves and co-conspirators in the schemes, and committed more fraud and swindle by submitting false claims for work performed. The public was cheated out of their due process rights by defendants, and their lives and business were destroyed. The public was also cheated out of their court filing fees, as defendants' use of fraud and swindle denied "due process" so as to conceal crimes. Defendants acted in concert, and cheated the public out of unalienable rights, rights granted by Acts of Congress, hearings and trial by jury by right. All defendants must provide proof that they actually performed their duties as prescribed by law, jury trials were held in

these and related cases, that the offenders were prosecuted and incarcerated, the victims were made whole, domestic terrorists were put out of business, that local corruption was stopped, and that defendants were not "cooking the books" as pertains CLERKS, JUDGES, MAGISTRATES' time cards, entries, and "who was authorized to do what work."

183.     Defendants' and co-conspirators' criminal enterprise of fraud and swindle targeted older American citizens who owned property, that is, they all had something to steal. Baseless complaints and false charges were initiated against these "targets" by corrupt local government and private corporation or persons. The perpetrators committed criminal trespass and theft to extort fees and fines from their "targets/victims" on the pretext that the victim violated some city or county codes, while factually there was no jurisdiction, no crime, no indictment, and no verified complaint. This "regulatory takings without just compensation scheme" was used as a pretext to steal more property, file false charges against the victim, and sucker them into court. Defendants then used the courts to maintain this perjury as a "Ponzi scheme," enlisted more participants (FIRMS, U.S. ATTORNEYS, DOES), entered phony fees, phony costs, phony fines, phony sanctions, phony judgments, and false bail into court records to give these fake things the appearance of legally valid to benefit defendants and participants in the scheme. Defendants took bribes as in "did favors for co-conspirators," and obstructed justice by denying all hearings and trials, which aided, abetted, and comforted the offenders, prevented their trial or apprehension, which makes all defendants "principals" and "accessories after the fact" as defined by Title 18 §§ 2 and 3. Plaintiff demands that all defendants explain how A) private property ownership has been abolished in the United States, B) Supreme Court decisions requiring valid warrants and "just compensation for private property taken for public use" have been repealed in *United States v. United States District Court*, 407 U.S. 297 (1972), *See v. City of Seattle,* 387 US 541, 18 L.Ed.2d

943, 87 S.Ct. 1737, *Camara v. Municipal Court,* 387 US 523, 18 L.ed.2d 930, 87 S.Ct. 1727,

*Overton v. Ohio,* 151 L.Ed 2d 317, *Palazzolo v. Rhode Island,* 533 U.S.__, 150 L.E.d.2d 592, 121

S.Ct.__ (2001), *Salinas v. United States,* 118 S.Ct. 469 (1997), *Steagald v. United States,* 451 U.S.

204, 68 L.Ed.2d 38, 101 S.Ct 1642 (1981), and C) that the Constitution, Title 18 U.S.C. and Title

28 U.S.C. have also been repealed.

184.    Once in court, FIRMS and U.S. ATTORNEYS worked both sides of the case in the

"false bail/attorney's fees" fraud and swindle.  FIRMS falsely represented to the victims that the

perpetrator/offenders in the scheme "had a right to violate the Fourth Amendment and carry off

property and/or file charges against the victim," then suckered the victim into more fees and costs

with honeyed words about how "you have a good case for an appeal, enough evidence has been

preserved on your case for an appeal...," see EXHIBIT B.  The record shows that FIRMS knew in

advance that the case would never go to trial, and used fraud and deceit to string the victim along

with the hope that his or her case would be heard and determined by a jury, when defendants

factually used their illegal association and rigged the courts to get all cases against offenders

dismissed with illegal bench trials in violation of *McKeever v. Block,* 932 F.2d 795, 797 (9th Cir.

1991), *Eldridge v. Block,* 832 F.2d 1132, 1137-1138 (9th Cir. 1987), *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 106 S.Ct. 2505 (1986):

> "3. Federal Civil Procedure 2470.2.  Credibility determinations, weighing of evidence,
> and drawing of legitimate inferences from the facts are jury functions, not those of the
> judge, whether his ruling is on motion for summary judgment or for directed verdict;
> evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in
> his favor.  Fed. Rules Civ. Proc., Rules 50(a), 56(c), 28 U.S.C.A.".

185.    In cases involving pro se victims, CLERKS took filing fee under false pretenses,

knowing that CLERKS, FIRMS, U.S. ATTORNEYS and JUDGES had the courts rigged and

would dismiss the case with prejudice, not for publication, no hearings, no trial by jury so as to not

have any of these fraud and swindle schemes exposed to the public.  Plaintiff demands that

CLERKS, U.S. ATTORNEYS, FIRMS and JUDGES produce the public notices and disclaimers

that were posted in a prominent location at all FIRMS' offices, and at all state and federal courts

that "NO DUE PROCESS, NO UNALIENABLE RIGHTS, NO RIGHTS GUARANTEED BY

ACTS OF CONGRESS, AND NO CIVIL REMEDIES ARE AVAILABLE HERE – WE GRANT

IMMUNITY TO ALL GOVERNMENT EMPLOYEES AND THEIR FRIENDS, NO MATTER

WHAT CRIME THEY COMMIT."

 186. In cases involving enforcement of city or county codes upon private residences or

small businesses, there was no due process, no Notice and Hearings, no just compensation, no

Bonds put up to indemnify the owner for the regulatory takings, and no due process.  Plaintiff

demands that defendants explain how cities and counties now own all property in the U.S.

 187. In cases involving theft of valuable animals and/or livestock, these home-invasion

robberies were perpetrated under the guise of "rescue and adoption," which was propaganda for

"criminal trespass," "perjury," "grand theft under color of law," "malicious prosecution," "false

bail," "false claim," "animal enterprise terrorism," and "laundering (fencing) of stolen property."

This "false bail" scheme was upheld in both state and federal courts, which treated the victim as

"guilty until proven innocent," after city or county agents confiscated the victim's private property,

held it for ransom, used it against him or her to extort money, then stole, fenced, or laundered it

after they were finished using it against the victim to generate false fees, fines, sanctions, and

attorneys' fees made payable to each other.  Plaintiff demands that defendants explain their

interpretation of "regulatory takings," "due process," and "just compensation."

 188. All defendants knew or should have known that all regulatory takings must be

compensated, no matter how minute the intrusion, see ***Palazzolo v. Rhode Island,*** 533 U.S.__, 150

L.E.d.2d 592, 121 S.Ct.__ (2001); that animals are "property" as defined in Title 18 U.S.C. § 2311, "agricultural commodities" as defined in Title 7 U.S.C. § 2, and "war materials" and "national defense materials" as defined in Title 18 U.S.C. § 2152.  Defendants knew or should have known that seizure of animals, birds and eggs was repealed since 1981, see Title 18 U.S.C. § 3112, was prohibited under the Animal Welfare Act, and strips the perpetrator of all immunity, see *Fuller v. Vines*, 36 F.3d 65 (9th Cir. 1994).  Defendants knew or should have known that we are at war, and it is <u>treason</u> to interfere with lands which are used to produce war materials and national defense materials.  Plaintiff demands an explanation from all defendants.

189.     Two or more predicate acts were committed in each case and each courthouse, which constitutes a "pattern" of "racketeering activity."  All defendants directly or indirectly participated in an "enterprise," which was their illegal association with each other and the courts, the activities of which affected interstate or foreign commerce, as their "targets" were injured in their businesses and livelihoods in violation of 18 U.S.C. § 1962 (a) – (c).  Plaintiff demands that each defendant explain his or her interpretation of "injured in business," "stripped of livelihood," and "illegal restraint of trade."

190.     Defendants used the courts and aided other participants in this racketeering scheme, such as private corporations, corrupt local officials, and corrupt attorneys by helping to set them up as phony "creditors," with phony "judgments" or "sanctions" against their "targets," to turn said "targets" into "debtors."  Hearings and trials were deliberately not scheduled to obstruct prosecution of co-conspirator/offenders' initial crimes of false charges, theft under color of law, extortion, false bail, laundering stolen property, denial of due process, commodities-tampering, and criminal conversion of title.  Thus, defendants "covered up" for each other.  The conduct of all defendants as "principals" constitutes a direct violation of Title 18 U.S.C. § 201 dealing with

bribery, graft, corruption, and conflict of interest. Plaintiff demands that defendants explain how American citizens have all become "debtors" to the courts and private corporations.

## VICIOUS RETALIATION...

191.    Defendants' co-conspirator's conduct of denial of due process and obstruction of justice for the offenders to cover up false charges and theft under color caused great bodily injury resulting in death in at least two cases, see EXHIBIT C suicide letter from raid victim, and Brinkley docket and death certificate. Brinkley's cancer was in remission, but returned and resulted in his death after defendants' obstruction and delay of his hearings and jury trial increased Brinkley's stress level, Brinkley, et al v. Flagler County, et al, No. 99-CV-260 (Florida). Justice delayed is justice denied. Notice of Brinkley's situation was likewise sent to the court, all Brinkley's politicians and Senator Orrin Hatch, who likewise had "knowledge and ability to prevent," and who all did nothing to stop the local corruption, robbery of senior citizens, and denial of Brinkley's due process rights. Plaintiff demands that defendants explain how these things can happen in a "free country."

## KICKBACKS AND FAVORS...

192.    In exchange for providing protection for the offenders, defendants were given promotions, kickbacks, public money, and job security. Plaintiff reported "racketeering and grand theft," see EXHIBIT D, which was acknowledged in a letter from defendant LARSON, see EXHIBIT E. LARSON had "knowledge and ability to prevent," yet LARSON aided and abetted the offenders by not prosecuting. Offenders are "still in business," and victim Marlene Peterson was stripped of her assets and livelihood. For his role in protecting "animal enterprise terrorism," "grand theft under color, transporting and fencing stolen property," LARSON received a "kickback" in the form of a promotion from U.S. ATTORNEY to MAGISTRATE JUDGE.

Plaintiff demands that LARSON explain "racketeering and grand theft," and give proof that he

investigated, the offenders were prosecuted and incarcerated, and that victim Marlene Peterson got

her stolen property back and was made whole.

PLAINTIFF'S STANDING...

193.    Plaintiff has standing to bring this complaint pursuant to ***Rotella v. Wood***, 528

US__, 145 Led 2d 1047, 120 S.Ct.__, at page 1049:

**Extortion, Blackmail, and Racketeering § 1 – civil RICO litigation**
3.  Both the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 USCS §§
1961 et seq.) and the Clayton Act (15 USCS § 15b) share a common congressional
objective of encouraging civil litigation to supplement government efforts to deter and
penalize prohibited practices; the object of civil RICO actions is thus not merely to
compensate victims, but to turn them into prosecutors dedicated to eliminating
**racketeering activity**.

194.    Plaintiff has been paying taxes since 1972, and as such, has a reasonable

expectation of the intangible right to honest government services.

195.    From 1968 to 1992, plaintiff engaged in product development, which was finalized

between the years 1983 and 1992.  The "units" or products plaintiff researched, developed and

perfected, were displayed at national and local trade shows, garnered Awards, which generated the

desired public interest in both sales of the products and public speaking tours.  In January 1993,

Plaintiff's life work (and life's dream) was wiped out when all products were stolen "under color

of law" by corrupt local and state agencies, who initiated a malicious prosecution against plaintiff's

business partner in order to steal the products.  Plaintiff lost over 9 years of hard work and over

$100,000.00 of property, when it was converted to public use without just compensation by

GREEN, MITCHELL, SWART, McHALE & CONNER, CHASE, ROTCHFORD, DRUKKER &

BOGUST, FIELDS AND CREASON, and AARVIG, who operated the courts as a racketeering

enterprise for conversion of title, after plaintiff filed a Claim with OFFICE OF CITY

PROSECUTOR FOR THE CITY OF PASADENA. Plaintiff filed a lawsuit in state court, which was dismissed. As a result of this "takings without Notice, due process or just compensation," and "laundering of plaintiff's stolen property," plaintiff lost her business, customer base, house, car, health, and reputation. The stress and shock of the losses, and destruction of faith in the judiciary, has resulted in plaintiff being unable to work since 1997. This gives plaintiff standing under RICO, as defendants' predicate acts resulted in interference in commerce (loss of plaintiff's $100,000.00 property), interference with ability to work, ultimate loss of business ($15-$17,000/year), lost income (dropped to zero after 1997), lost $127,000 house to foreclosure, and lost $16,500.00+ car to repossession. Plaintiff demands that defendants explain that these losses totaling over $453,000.000 "did not affect commerce," see *Guerrero v. Gates*, CV-00-07165-WILLIAM J. REA, August 28, 2000.

196.    Plaintiff was denied redress of grievances since 1993 as a result of the conspiracy of all defendants to use the courts to do fraud and swindle. Plaintiff demands that defendants prove that this never happened, that plaintiff got all her stolen property back, was made whole, that the offenders were prosecuted, incarcerated, and the racketeering activity was stopped.

197.    Between May and August, 1999, the same pattern of racketeering, predicate acts, fraud and swindle was perpetrated upon plaintiff's husband, Richard Fischer, which was another attack upon plaintiff's marital property. The participants initiated false charges against plaintiff's husband, and attempted to use the state courts to convert marital property $17,000 Ford Econoline van to their own use without just compensation. Plaintiff's husband paid $150.00 and filed a Civil RICO case in federal court in Fischer v. Stewart, et al, No. 99-CV-7890. Defendants OFFICE OF THE CITY ATTORNEY FOR THE CITY OF ANAHEIM and COUNTY COUNSEL FOR THE COUNTY OF ORANGE violated and abused the pre-trial process, bribed the federal employees

DOE CLERKS, TIMLIN and TEVRIZIAN, who "did the favor" and dismissed the case, no

hearings and no jury trial, which obstructed justice. HATTER had knowledge and ability to

prevent, and aided and abetted the offenders by not prosecuting crimes in the record. This attack

upon marital property in excess of $100 gives plaintiff standing, as both plaintiff and husband's

ability to work was interfered with by taking time off to go to court, preparation of the case, and

mental anguish from no longer feeling safe or secure at home or on the road. Plaintiff demands

that defendants explain how they can make their own rules and circumvent due process. Plaintiff

also demands defendants explain where all the money given to California state courts in SB 33

went, if it was supposed to abolish all municipal courts, consolidate them into Superior Courts and

make them courts of record.

198.    In July 1 and 2 of 2002, plaintiff was denied rights secured by acts of Congress

under Title 31 when DOE CLERK, INGRAM and PHILLIPS delayed and refused to unseal

plaintiff's False Claim qui tam complaint, and refused to issue Summons. In this qui tam

complaint, no. **EDCV 02-334 VAP SGLx,** plaintiff reported conduct which injured the United

States, was continuing to injure the United States, injured citizens to the point where some of them

died, injured their business, and, gauging from the number of phone calls plaintiff receives every

day relating to the injuries, such as suicides, lost businesses, devastated families, etc., required

immediate "just, speedy and inexpensive" prosecution, which has been denied, thus giving plaintiff

standing. PHILLIPS' and INGMAN's delay and obstruction is admissible to extend plaintiff's

statute of limitations on "prosecution of qui tam." Plaintiff demands that PHILLIPS and

INGMAN explain that EXHIBIT F Minute Order was not intended to cause delay to run out the

statute of limitations of 120 days from April 17 to August 17, 2002 to expire so that they could

"dismiss the qui tam against them for non-prosecution." Plaintiff also demands that INGMAN and PHILLIPS explain their interpretation of "rights under Title 31 U.S.C."

### "OH, BUT *ALL* GOVERNMENT EMPLOYEES ARE *IMMUNE*...."

199.    <u>Congress</u> states there is no such thing as "judicial immunity" for the plainly incompetent or those who knowingly violate clearly established law. The Rule 9(a) and Rule 17 defendants' sovereign immunity, Eleventh Amendment, absolute or qualified immunity, or good faith immunity was <u>vacated</u> by *stares decisis* in *Dennis v. Sparks,* 101 S. Ct. 183 (1980). Defendants shall be subject to title 18 U.S.C. §§ 1621-1623 for any materially false representations of fact or law alleging such immunity in any pleading or document filed in the above-entitled action under the Anti-Corruption Act of 1988, 18 U.S.C. § 1346; *see also Salinas v. United States,* 118 S.Ct. 469 (1997), *United States v. Frega,* 179 F. 3d 793 (9th Cir. 1999), *Carey v. Piphus,* 435 U.S. 247 (1978); *Smith v. Wade,* 461 U.S. 30, 51 (1983); *Martinez v. California,* 444 U.S. 277, 284 (1980); *Felder v. Casey,* 487 U.S. 131 (1988); *Howlett v. Rose,* 469 U.S. 356, 377-378 (1990); *Gutierrez de Martinez v. Lamagno,* 417 U.S. ___ (1995); also *Kalina v. Fletcher,* 118 S. Ct. 502 (1997). Immunity issues are *<u>also</u>* decided by the <u>jury</u>, *see Lalonde v. County of Riverside,* 204 F.3d 947 (9th Cir. 2000). Plaintiff demands that defendants produce the Clause in their Bonds, License and Insurance that exempts them from liability for racketeering or covering up racketeering.

### DEFENDANTS FRAUDULENT SCHEME – "WE'RE *ABOVE* THE LAW AND THE COURTHOUSE IS JUST *OUR* LITTLE PLAYGROUND..."

200.    In 1999, plaintiff examined over thirty federal court case dockets available on PACER, and perceived the same pattern of judicial corruption and bribery centering around CLERKS, who altered federal records including Dockets and other papers in suits against corrupt local government, state or federal employees, and who acted with FIRMS, U.S. ATTORNEYS and

JUDGES to get all suits against said corrupt government employees dismissed without any

hearings or public exposure. Nine of these dockets are detailed in this claim:

Brewer, et al v. Collin County, et al, No. 99-CV-256 (Texas)

Brown, et al v. Wilson County, et al, No. 97-CV-1473 (Texas)

Hardin v. Adams, et al, No. 00-CV-2443 (Florida)

Keim v. Cintra, et al, No. 00-CV-764 (Florida)

Fischer v. Stewart, et al, No. 99-CV-7890 (Southern California)

Hazlett v. County of Riverside, et al No. 99-CV-12982 (Southern California)

Martin v. Sandlin, No. 00-CV-97 (Central California)

Hoog v. Frio County, et al, No. 00-CV-640 (Texas), and

Phelps, et al v. Denton County Sheriff's, et al, No. 94-CV-182 (Texas)

201.    Said dockets revealed the pattern of the racketeering enterprise: U.S. ATTORNEYS

and FIRMS submitted illegal motions to dismiss, motions for sanctions, and other pleadings, which

CLERKS entered into the record in violation of Title 28 U.S.C. Rule 7 which states, "there shall be

a complaint...and an answer...no other pleadings are allowed" and Rule 26 Amendment "claims to

dismiss for insufficiency shall not be used..." Plaintiff demands that defendants explain how a

third-party answer without an affidavit is really an answer, and explain their interpretation of *In re*

*Grand Jury Proceedings,* 87 F.3d 377 (9th Cir. 1996).

202.    Instead of Answering the complaint pursuant to title 28 F.R.C.P. Rule 7, FIRMS'

and U.S. ATTORNEYS' documents entered by CLERKS motioned JUDGES to issue Orders or

Judgments to dismiss the case and/or grant sanctions against the party bringing the suit, which

obstructed FIRMS' client government employees and their co-conspirators from Answering the

complaint or otherwise being held "accountable." JUDGES "did a favor" and did issue such

Orders dismissing claims against U.S. ATTORNEYS' and FIRMS' clients, which effectively

evaded jury trials and pre-trial hearings and obstructed justice. Defendants abused and misused the

system and got motions to dismiss into the record instead of, or before, answers; covered-up the initial fraud and swindle on the local government level, got fabricated bills, costs, sanctions and fees into the record without any hearings or jury trials, then got these costs, fees and sanctions payable to each other! Defendants' abuse evaded prosecution for other government employees and their co-conspirators doing fraud and swindle. Ultimately, these cases were dismissed with prejudice, not for publication, not for the public. NOTE: Bribery offense does not require proof that payments are made in exchange for, or to influence specific official acts, *People v. Frederick Gaio, Jr.,* No. B125769, 2000 Daily Journal D.A.R. 6709 (June 26, 2000). The aforesaid constitutes a pattern of racketeering activity by defendants. Plaintiff demands that defendants explain how them working together to get all these illegal debts and entries into the record as a "Ponzi scheme" to turn innocent people into "debtors" is not racketeering.

203. The pattern shows that defendants achieved their goal, which was to use the courts to protect each other and their co-conspirators doing theft, fraud, swindle and racketeering, and to prevent or obstruct citizens from obtaining civil remedies set forth by Article III, Acts of Congress, statutes, the Constitution, and clearly established law. That goal was achieved in the nine cases plaintiff presents as admissible evidence in this case. There are many more cases like this in the record once you know what to look for.

204. The procured Orders and Judgments dismissing these cases against government employees with prejudice, gave, as their basis for dismissal, the JUDGES' determination that FIRMS' and U.S. ATTORNEYS' illegal motions were correct in stating that civil remedies, statutes, etc., claimed in the case, "did not exist," were "unintelligible gibberish," "too verbose and confusing," "failed to state a claim," were "concocted figments of the imagination," "vexatious," etc. This violated the 7th Amendment, because the jury determines these issues. Since a 12(b)(6)

motion to dismiss admits the truth of a complaint's allegations, it cannot be used to test a plaintiff's credibility. The record shows that CLERKS entered these motions into the record on behalf of FIRMS and U.S. ATTORNEYS as procurements for JUDGES to "do a favor" and dismiss the case, which JUDGES did in every instance. Plaintiff demands that defendants explain how all civil remedies became void in cases involving racketeering and misconduct by any and all government employees, their friends and co-conspirators.

205.   By abusing the pretrial process, defendants manipulated Title 28 U.S.C. Rule 39(a)(2) to make state and federal laws and the Constitution void, which evaded accountability and criminal prosecution for their co-conspirators and each other. Plaintiff demands that defendants show plaintiff all the civil remedies available after one has been injured by another's commission of the crimes of robbery, extortion, racketeering, illegal search and seizure, fraud and swindle perjury, theft of property, transporting stolen property, laundering (fencing) stolen property, domestic terrorism, animal enterprise terrorism, perjury, extortionate credit transactions, impersonating an officer, false bail, and great bodily injury resulting in death. An interesting point for the jury will be that defendants did not consider that any of these were crimes, as long as these acts were done by a government employee, his or her friends, a lawyer, court clerk, or a judge.

206.   The pattern that plaintiff experienced and observed in the courts was: if an American citizen ("target") sued after being defrauded by a government employee or any private person in conspiracy with government employees, defendants violated due process and the rules of court to get said government employee and his or her co-conspirators dismissed from the case. Illegal Motions were allowed to be filed, with the end result that Orders and Judgments were issued, declaring that the government employees and their co-conspirators were absolutely immune from suit, did not have to answer Summons, all civil remedies against them were void, so the case

was dismissed with prejudice, no hearings, no jury trials, not for publication. The pattern in the dockets shows that defendants abused and misused the pre-trial process, government employees and their co-conspirators named in these suits factually ignored Summons to answer, submitted documents labeled "Answers" that were factually either motions to dismiss, claims for absolute judicial immunity, motions to declare the "target" a "vexatious litigant," or motions for costs and sanctions. FIRMS' and U.S. ATTORNEYS' illegal documents, false fines, fees and costs, and violations of due process were entered into the record by CLERKS, and granted by JUDGES in violation of Title 28 U.S.C. and Title 18 U.S.C. Plaintiff demands that defendants explain their interpretation of title 28 F.R.C.P.s Rules of Court.

207.    Another interesting point for the jury will be defendants' use of their illegal association to operate a scheme or artifice to defraud the United States and United States' citizens of their intangible right to honest services by obstructing the due administration and proper functioning of the courts. The record shows that this obstruction prevented the underlying thefts under color of law, frauds and swindles, local corruption, malicious prosecution, bribery, great bodily injury resulting in death, and civil rights violations from being exposed to accountability and/or exposed to the public, which aided and abetted defendants' very sophisticated, prohibited fraud, swindle, and racketeering scheme to continue both in and out of the courthouses.

208.    Defendants' conduct effectively denied access to the courts for almost all, especially "pro se litigants," bringing suits against corrupt city, county or state officials and their attorneys, for theft under color, racketeering, extortion, impersonating an officer, laundering stolen property, tax and insurance fraud, commodities-tampering, bribes, fraud and swindle, Sherman Anti-Trust, extortionate credit transactions, and other prohibited criminal activity.

209.   Defendants, knowing that an offense against the United States had been committed, relieved, comforted, and assisted the offender to hinder or prevent his or her apprehension, trial, or accountability in violation of Title 18 § 3, which makes all defendants "accessories after the fact."

## CO-CONSPIRATORS START THINGS OFF – TYPICAL CASE OF EXTORTION, CORRUPTION, AND RACKETEERING BEGUN ON THE LOCAL LEVEL...

210.   Senior citizen Louise Holt, her WWII veteran husband J.V., and their son, Jack, a Vietnam veteran, live 13 miles outside Duncan, Oklahoma on 10 acres they paid $130,000.00 for in 1999. Louise has been breeding and raising small dogs for past 30 years. Around Christmas, 2001, based upon an anonymous complaint that the Holts "had too many dogs," a raid was perpetrated upon the Holts by the local Humane Society, who filed cruelty charges against all three Holts (People v. J.V. Holt, CF 2001-402). Louise was told that unless she got her husband, J.V., to sign her dogs over to the "Humane" Society, her son Jack (People v. Jackie R. Holt, CF 2001-401) would go to jail. Defendants LINDLEY, KEE CHRISTIAN, and DOES conspired to use the state court, and did use fear, threats, coercion, and intimidation to divest senior citizen Holts out of over $400,000.00 worth of property. The Holt family is now scattered and destroyed: son Jack lost his job over "the dog thing," and moved to Dallas to find work. J.V. was sentenced to 5 years' probation; he cannot come near a dog for 5 years, is getting "taxed twice" by having to pay $40.00 per month to a probation officer who is already receiving pay and benefits from the state, and, out of fear, has moved to Tulsa, Oklahoma. Louise is still in Duncan, all alone, also living in fear. Plaintiff demands that defendants LINDLEY, KEE and CHRISTIAN explain the following:

> A) Explain how "grand theft of dogs having a value of $100 or more," "transporting stolen property," "laundering stolen property," "forced veterinary/boarding/attorney 'services' totaling over $45,000.00 liened against Holts without a contract" could be O.K. as long as it was called "rescue and adoption,"

B) Explain their interpretation of "Notice and Hearing," "posting a Bond," "just compensation," and "due process,"

C) Explain "anonymous complaint," and explain how the Humane Society became a branch of government that could file charges "in the name of the People,"

D) Explain their participation in the Humane Society's "vested interest" in getting "convictions for something" as evidenced by EXHIBIT G, FIRM'S recommendation on how "rescue groups" can avoid getting sued for invasion of privacy and theft of property by "getting a conviction for something, then get (the victim) on probation, etc.,"

E) Explain that "having too many or too much property" is a crime, and explain their theories to the Federal Trade Commission and the Internal Revenue Service, as "raising dogs, cats, and other animals" is listed on IRS Form 1040 Schedule C "small business," and other business or property owners are not yet prosecuted for "having too many," such as Bill Gates having and producing "too many computers," and Zacky Farms having and producing "too many frying chickens,"

F) Explain how the Animal Welfare Act does not apply to them or to the state of Oklahoma,

G) Bring forward their Treaty with the Humane Society and S.P.C.A.,

H) Explain how the Humane Society could still be operating in their county, when it was declared a "domestic terrorist group" by the FBI in 1993 in the "FBI Report to Congress on Animal Enterprise Terrorism" available online under "Department of Justice Reports" for having its "own due process" and "Contract for transporting and laundering stolen property (animals) to overthrow the United States Constitution, see EXHIBIT H,

I) Explain how "theft of dog" is not a crime, and

J) Explain their interpretation of Title 18 U.S.C. 2311 definition of "stolen property."

<u>THOUSANDS MORE LIKE THIS . . . COVERED UP...</u>

211.   Plaintiff incorporates by reference all like cases having the same set of

circumstances – illegal search and seizure, denial of due process, perjury, racketeering, extortion,

false personation, illegal association, corruption, bribery, and use of the courts by DOE defendants

to obstruct justice and cover up crimes.  Plaintiff demands that defendants and 5,000 DOES
explain to the jury how all these things are <u>not</u> crimes.

BEHIND-THE-SCENES DETAILS...

212.    CLERKS, under the direction of MECHAM through OFFICE in conspiracy with
FIRMS, U.S. ATTORNEYS and JUDGES, routinely altered or destroyed records, and entered
illegal motions into the record to give fraudulent and false charges, false debts, bills and liens,
Judgments and Orders the *appearance* of "legally valid."  Docket entries were either omitted or
added in, and dates, numbers, and sequences were altered by CLERKS.  Defaults against parties
failing to answer were denied by CLERKS and JUDGES, who, in conspiracy with U.S.
ATTORNEYS, FIRMS and their clients, used their corrupt association to deny pre-trial hearings,
deny jury trials, enter illegal orders and motions such as 12(b)(6) in direct violation of F.R.C.P.
Rule 7(a) and Rule 12 as amended in 1966, and do whatever else that would effect denial of due
process and dispensing of justice as to suits against government employees in direct violation of
F.R.C.P. Rule 301.

213.    CLERKS "did favors" by <u>not</u> entering Defaults as required by law <u>after</u> government
employees named in these suits failed to Answer.  U.S. ATTORNEYS and FIRMS provided
fabricated fines, fees, costs, sanctions, or motions to dismiss that CLERKS couldn't have filed and
entered, but <u>did</u>, and which JUDGES <u>granted</u>.  Plaintiff demands that defendants explain what an
answer is, and what a default is.

214.    The targets' lives, livelihoods and businesses were ruined, which affected interstate
commerce.  For instance, in <u>Brown, et al v. Wilson County</u>, et al, No. #97-CV-1473, tax returns
showed that the Browns' income dropped over $40,000.00 for years after they were maliciously
prosecuted in state court, and their business was injured by corrupt local government in conspiracy

with private parties who maliciously prosecuted the Browns and slandered them in the media. The Browns sued in federal court, and submitted evidence of this corruption. The Browns' Docket shows that in five years, the Browns received <u>no</u> hearings, <u>no</u> jury trial, and defendants intentionally abused the pretrial process and denied Browns' federal claims. The Browns' default judgments were denied by CLERKS, which affected interstate commerce, as the underlying crimes continued unpunished and damaged other "targets," the United States continued to pay defendants' salaries, and was denied taxes paid on defaults. The Defaults of all the other "targets" were likewise denied, their businesses and livelihoods likewise suffered, and they got the same abuse in the state and federal facilities. The Browns' 70+ acre farm is gone, fields in waist-high weeds, as "animal activist/domestic terrorists," aided and abetted by local sheriff and county, put the Browns out of business – no more cattle or horses on their ranch. The United States suffered from lost business, diminished economy, taxes not paid on Defaults, and federal defendants' salaries – paid to defendants participating on <u>Brown, et al v. Wilson County,</u> et al, to do work that the record shows was never done.

215.    By way of threatening and intimidating any "targets" who dared to fight back in court, CLERKS used their illegal association to fraudulently assert that the "targets" were not welcome unless they could afford several hundred thousand dollar FIRMS. Defendants thus aided and abetted FIRMS and other participants to get kickbacks in the scheme to convert "targets'" title of property ownership, evade prosecution, <u>and</u> get sanctions, "vexatious litigant" orders and other judgments against the "targets" as a bonus. Plaintiff demands that defendants explain "equal access to justice for rich and poor alike."

216.    To add insult to injury, while FIRMS and U.S. ATTORNEYS racked up the fraudulent fees, converted targets' property, and wrote illegal Orders and Judgments for JUDGES

to sign that factually voided all statutes and the Constitution, MECHAM, OFFICE, CLERKS, JUDGES and DOES entered them into the record, then submitted false claims to the United States for "doing duties as prescribed by law!" ASHCROFT had this information for at least 60 days, and failed to indict. Plaintiff demands that defendants show that they performed "duties as prescribed by law," which resulted in hearings, jury trials, and prosecution of the offenders.

217.    MECHAM committed fraud pursuant to 18 U.S.C. § 1920 when he appeared before the Senate Budget Committee on March 5, 2002, knowing that he was never going to perform any duties as prescribed by law in furtherance of the scheme to obstruct all due process and deny all citizens civil remedies by right.

218.    CLERKS and JUDGES further failed to perform duties as prescribed in Clerks Manual, such as "Answer Dockets" and "Tickler Reports." The record shows that pre-trial hearings and jury trials never happened, which constitutes CLERKS' and JUDGES' "false compensation request" in violation of 18 U.S.C. § 1920. ASHCROFT failed to indict the other defendants after he had this information for at least 60 days.

<u>AND THE FRAUD GOES ON....</u>

219.    Defendants failed to do duties as prescribed by law, which defrauded both the United States and the paying public out of the intangible right to honest services. For instance, by not entering defaults, by entering motions to dismiss as "answers," by entering prohibited pre-trial motions, or by altering the sequence of events (numbers and entry dates) while supposedly "correctly docketing a case," CLERKS obstructed justice and made opportunity for, and encouraged, organized crime and corruption both in and out of court as well as denied the United States of its share of taxes on the default judgments. JUDGES, U.S. ATTORNEYS and FIRMS

gave "protection" by "failing to report" as required pursuant to 18 U.S.C. §§ 2, 3 and 4. The

United States was defrauded out of:

a. salaries and federal benefits paid to MECHAM, OFFICE, CLERKS, U.S. ATTORNEYS, JUDGES and DOES, who submitted false claims for work they did not do as prescribed by law,
b. income derived from taxes due on default judgments,
c. accountability for criminal activity both in and out of court,
d. the intangible right to honest services from all defendants,
e. the economic benefit of free flow of commerce and trade, and
f. domestic security and economic stability.

Defendants likewise defrauded the paying public out of:

a. filing fees,
b. due process, such as jury trials and federal questions getting answered,
c. a sympathetic and knowledgeable forum for the vindication of their federal rights
d. rights secured by the Constitution and Acts of Congress,
e. tax dollars for defendants' salaries,
f. the intangible right to honest services,
g. the economic benefit of free flow of commerce and trade, and
h. domestic security and economic stability.

220.    CLERKS thus obstructed justice and prevented "accountability" for both

themselves, the other defendants, and co-conspirators engaged in a pattern of racketeering,

extortion, malicious prosecution, theft under color, extortionate credit transactions, fraud and

swindle, and collection of fabricated debt. This allowed other serious crimes against the United

States to go unexposed, as what would happen in a jury trial, and unpunished, as CLERKS'

alterations and omissions aided other defendants and participants to both avoid default judgments

against them, and avoid subsequent criminal prosecution. As part of the cover-up, CLERKS

entered "Demand: $0,000" on the front of some of the dockets to conceal the real Demand in the

suits, which was several million dollars. Plaintiff demands that CLERKS explain their

interpretation of "duties as prescribed by law."

221.   MECHAM, OFFICE, CLERKS, JUDGES, U.S. ATTORNEYS, and DOES'
racketeering and false claims have defrauded the United States, and, in conspiracy with FIRMS,
have injured society, threatened economic stability and national security, and have violated the
public's trust in our state and federal courts.  Our beautiful judicial system has been undermined
and violated by defendants who, by their own papers, motions, Orders and Judgments, have
declared that the Constitution, Acts of Congress, Amendments, and statutes are void.  Since
defendants have acted in concert to void all civil remedies and the Constitution, plaintiff demands
that defendants bring forth what has replaced it, so that the American people can have full
disclosure, know what to expect, know what kind of government they are paying for, and know
how to conduct their lives and businesses.

222.   Defendants knowingly committed offenses against the United States, aided, abetted,
and procured others to do so, and used their positions in and out of the courthouses to relieve,
comfort, and assist the offenders to prevent their apprehension and trial.  For instance, all
defendants have had at least two years of law school, and know that the jury is the "trier of fact,"
and it is the jury that decides if civil remedies, statutes, Articles and Amendments to the
Constitution, or Acts of Congress are "unintelligible gibberish," "too verbose and confusing," "fail
to state a claim," or are "concocted figments of the ("target's") imagination."  Yet defendants
knowingly abused the pre-trial process to void jury trials.  Plaintiff demands that defendants
explain how Titles 7, 15, 18, 28, 31, and the Constitution are "unintelligible gibberish," "too
verbose and confusing," "concocted figments of the imagination," and "fail to state a claim."

### BRAINWASHING THE PUBLIC...

223.   Defendants participated with the media to spread negative and false information
about the justice system with the intended goal of intimidating and coercing the entire civilian

population into believing that "due process" consists of anonymous complaints, warrantless searches and seizures, huge retainer fees for attorneys, star-chamber justice, and bench trials. This had the target goal of neutralizing public resistance to theft under color of law, fraud and swindle, criminal conversion of title, bribery, operating the courts as a racketeering enterprise (*ala United States v. Frega,* 179 F.3d 793 (9ᵗʰ Cir. 1999)), tax fraud, and overthrow of our form of government from within. It's an old con – dumb-down the people, then defraud them out of their rights and property, as paraphrased by Phillips Payson in 1778: "It will always be as easy to rob an ignorant people of their liberty as to pick the pockets of a blind man."

224. Today, defendants' control of the media has lead the public to believe that "terrorists," "criminals," or "bad guys" are always foreigners, gangsters, "fringe groups" or "wackos," never judicial officers, court staff, big law firms, or non-profit corporations. This carefully cultivated perception has allowed defendants to position themselves to profit from the spread of negative and false information, as the public is kept in ignorance of defendants' real activities of voiding U.S. statutes and Constitution in order to defraud American citizens under color of official right, obstruct justice for each other and their co-conspirators, destroy our form of government, fabricate huge fees, fines, costs, liens and sanctions, and submit false claims for federal benefits – all of which has injured the United States.

225. This pattern has increased in recent years, mainly due to defendants "rigging" the pretrial process so that government employees committing theft, fraud and swindle, and treason don't have to worry anymore – their co-conspirator FIRMS, U.S. ATTORNEYS and JUDGES simply declare that the perpetrators have "absolute immunity," dismiss all charges against them, so the theft, fraud and swindle, corruption, and insurrection against the United States goes on draining

the U.S. economy, destroying lives and business, and destroying the American public's faith that any legal remedies can be obtained in court.

THREATS AND INTIMIDATION:
**"THESE** CIVIL REMEDIES DON'T EXIST, EITHER, NOT AGAINST ANY FEDERAL EMPLOYEES, BECAUSE WE'RE ALL ABOVE THE LAW!"
(BUT THIS *MAKES* PLAINTIFF'S CASE....)

226.    On April 17, 2002, plaintiff filed a qui tam claim under seal. DOE 1 CLERK altered a federal record by demanding that plaintiff file a "Rule 26 Disclosure," altered the record and destroyed the confidentiality of "filed under Seal" by demanding that plaintiff write name, address and phone number on the front of the complaint, by demanding that the complaint be "blue-backed," by giving plaintiff's qui tam the same case number as three other cases in violation of Title 28 F.R.C.P.s, Title 18 U.S.C. §§ 1506 and 223, see EXHIBIT I, and in violation of the Clerks Manual, *see* EXHIBIT J. Plaintiff demands an explanation of "handling of special cases under seal."

227.    Sometime between April 17 and May 14, 2002, defendant DOE CLERK broke the Seal in violation of 18 U.S.C. § 223, and divulged plaintiff's Sealed qui tam complaint to one or more of the defendants, who conspired with U.S. ATTORNEYS JOHN S. GORDON, LEON W. WEIDMAN, GARY PLESSMAN, KRISTINE BLACKWOOD, ROBERT D. McCALLUM, MICHAEL F. HERTZ, STEVE D. ALTMAN, and ANDREW SKOWRONEK to use the U.S. mail to send a letter threatening to dismiss plaintiff's claim, along with a fraudulent Notice that the "Seal was still intact," *see* EXHIBIT K. Both letter and Notice admit that DOE 1 CLERK broke it, and as "standard practice," forwarded it to a U.S. ATTORNEY for the admitted purpose of having him or her act as DOE 1 and 2 CLERKS' *defense* counsel. Plaintiff demands that GORDON, WEIDMAN, PLESSMAN, BLACKWOOD, McCALLUM, HERTZ, ALTMAN, and SKOWRONEK explain how the qui tam is "still under seal," when they and DOE CLERKS

violated the Seal, their very correspondence with plaintiff is proof of that violation; demands proof of what gave them seniority over JOHN ASHCROFT to commandeer the case without his delegation, and demands that they provide the law permitting "suggestion to dismiss" when nobody has been served!

228.    On May 14, 2002, plaintiff received letter and Notice through the U.S. mail – admissible evidence of felonies committed by DOE 1 and DOE 2 or more CLERKS of the United States District Courts, and a conspiracy to deny plaintiff the economic benefit of relator's reward, and a conspiracy to cover-up such actual felonies by U.S. ATTORNEYS in Los Angeles, California, and Washington, D.C., who "appeared" not as JOHN ASHCROFT'S delegates, but as "counsel for corrupt CLERKS violating Seal and needing representation." EXHIBIT K is admissible evidence to establish the "existence of a conspiracy" to threaten and intimidate a witness/victim in any official proceeding, and to obstruct justice for government employees committing crimes against American citizens and the United States, *see* West 2002 Federal Rules of Evidence, Rule 801, as amended in 1997.

229.    U.S. ATTORNEY JOHN S. GORDON was required to report his knowledge of the actual commission of a felony – DOE CLERK breaking the Seal, divulging contents to DOE CLERKS – in writing pursuant to 18 U.S.C. § 4. This "document" must be produced pursuant to Federal Rules of Civil Procedure, Rule 26(a) without request. Failure to do so requires mandatory sanctions against JOHN S. GORDON pursuant to Rule 37. These laws are "written" by Congress, and effective against "whoever." See 18 U.S.C. §§ 2 and 4, also USA PATRIOT ACT of 2001 at H.R. 3162-22, quoting:

### SEC. 223. CIVIL LIABILITY FOR CERTAIN UNAUTHORIZED DISCLOSURES.
(a) section 2520 of title 18, United States Code, is amended—
(1) in subsection (a), after "entity," by inserting, "other than the United States,";
(2) by adding at the end of the following:

"(f) ADMINISTRATIVE DISCIPLINE.— If a court or appropriate department or agency determines that the United States or any of its departments or agencies has violated any provisions of this chapter, and the court or appropriate department or agency finds that the circumstances surrounding the violation raise serious questions about whether or not an officer or employee of the United States acted willfully or intentionally with respect to the violation, the department or agency shall, upon receipt of a true and correct copy of the decision and findings of the court or appropriate department or agency promptly initiate a proceeding to determine whether disciplinary action against the officer or employee is warranted. If the head of the department or agency involved determines that disciplinary action is not warranted, he or she shall notify the Inspector General with jurisdiction over the department or agency concerned and shall provide the Inspector General with the reasons for such determination;" and

(3) by adding a new subsection (g), as follows:

"(g) IMPROPER DISCLOSURE IS VIOLATION. – Any willful disclosure or use by an investigative or law enforcement officer or governmental entity of information beyond the extent permitted by section 2517 is a violation of this chapter for the purposes of section 2520(a).",

(b) Section 2707 of title 18, United States Code, is amended –

(1) in subsection (a), after "entity," by inserting, "other than the United States,";

(2) by striking subsection (d) and inserting the following:

(d) ADMINISTRATIVE DISCIPLINE. – If a court or appropriate department or agency determines that the United States or any of its departments or agencies has violated any provision of this chapter, and the court or appropriate department or agency finds that the circumstances surrounding the violation raise serious questions about whether or not an officer or employee of the United States acted willfully or intentionally with respect to the violation, the department or agency shall, upon receipt of a true and correct copy of the decision and findings of the court or appropriate department or agency promptly initiate a proceeding to determine whether disciplinary action against the officer or employee is warranted. If the head of the department or agency involved determines that disciplinary action is not warranted, he or she shall provide the Inspector General with the reasons for such determination.", and

(3) by adding a new subsection (g), as follows:

(g) **IMPROPER DISCLOSURE.** – Any willful disclosure of a 'record,' as that term is defined in section 552a(a) of title 5, United States Code, obtained by an investigative or law enforcement officer, or a governmental entity, pursuant to section 2703 of this title, or from a device installed pursuant to section 3123 or 3125 of this title, that is not a disclosure made in the proper performance of the official functions of the officer or governmental entity making the disclosure, is a violation of this chapter. This provision shall not apply to information previously lawfully disclosed (prior to the commencement of any civil or administrative proceeding under this chapter) to the plaintiff in a civil action under this chapter.".

(c)(1) Chapter 121 of title 18, United States Code, is amended by adding at the end of the following:

**"Section 2712. Civil actions against the United States**

230.    U.S. Attorneys JOHN S. GORDON, LEON W. WEIDMAN, GARY PLESSMAN, KRISTINE BLACKWOOD, ROBERT D. McCALLUM, MICHAEL F. HERTZ, STEVE D. ALTMAN, and ANDREW SKOWRONEK impersonated the authority of the Attorney General when they conspired to send letter and Notice without "delegation from U.S. Attorney General John Ashcroft." ASHCROFT had Notice of these U.S. ATTORNEYS' conduct, and failed to indict. The provisions of the Anti-Corruption Act of 1988, 18 U.S.C. § 1341, as defined in § 1346 factually apply to CLERKS, ATTORNEYS, and any other "federal actors or employees of federal entities, including other defendants," who are liable pursuant to 28 U.S.C. § 2679 (West 2002) effective date November 18, 1988. The Supreme Court of the United States has previously prescribed that the "statute prohibits delegation to a U.S. Attorney of any prescribed duties of the Attorney General," see Guiterrez de Martinez v. Lamagno, 515 U.S. __, 132 L.Ed.2d 375, 115 S.Ct. 2227 (1995). EXHIBIT K provides evidence of GORDON, WEIDMAN, PLESSMAN, BLACKWOOD, McCALLUM, HERTZ, ALTMAN, and SKOWRONEK's "materially false representations of fact or law" in violation of 18 U.S.C. §§ 1621, 1622, and 1623, and constitutes "perjury" in a federal record pursuant to 18 U.S.C. § 1623:

> "NOTICE OF EVENTS RELEVANT TO THE SEAL OF QUI TAM COMPLAINT
>     The United States of America submits this filing to notify the Court of the following events relating to the above-captioned suit:
>     Relator filed this complaint under seal with the District Court on April 17, 2002. Unusually, this particular suit named the Clerk of the Courts for the Eastern Division, as well as the Administrative Office of the United States Courts, as defendants in the suit. The Clerks of Courts, in the normal course of her duties, looked at the sealed complaint and thus became aware that she and her office had been named as putative defendants. Pursuant to standard practice, she or her staff then forwarded the complaint to an Assistant United States Attorney who routinely acts as defense counsel in suits directed against the federal judiciary."
>     (2nd para.)   "The Clerk of Courts, in the normal course of her duties, looked at the sealed complaint and thus became aware that she and her office had been named as putative defendants..."

231.   DOE CLERKS violated the CLERKS MANUAL, Chapter 10, section 10.02.

Initial Processing:

**b. Specific Cases**
Some civil cases require additional documents ánd special handling.  The clerk should be familiar with these cases to ensure that the required documents are collected prior to opening the case.  The following are the specific cases and what they require:
**3. Suits Under the Federal Civil False Claims Act**
Private citizens may sue on behalf of the United States of America under the qui tam provisions of the federal Civil False Claims Act.  Refer to 31 U.S.C. sections 3729-32 for more information.  The clerk should be aware of the following requirements prior to opening this type of action:
● These cases are submitted under seal and will not be made public record until unsealed by the court;
● Summonses are not issued to the defendants at the time of filing.  The complaint will be served only on the Attorney General of the United States;
● Although the plaintiff is filing on behalf of the United States, the $150.00 filing fee will be collected by the clerk.

232.   Assistant Attorney General ROBERT D. McCALLUM, JR. committed "perjury" in

stating, under penalty of perjury, that "the "Clerk of Courts, in the normal course of her duties,

**looked at the sealed complaint** and thus became aware that she and her office had been named as

putative defendants." McCALLUM knew that the law **required** such documents to be **under Seal**

to be seen and read only by the **confirmed** Attorney General of the United States, now JOHN

ASHCROFT.  McCALLUM'S cover-up of CLERKS' conduct in breaking the Seal, reading the

"document under Seal," and divulging the contents to one or more of the defendants **proves**

plaintiff's claims against defendants for "failure to perform duties as required by law," "conspiracy

to obstruct justice," and "using their positions of public trust to evade prosecution and obstruct

justice for themselves and others committing crimes against the United States."

233.   DOE CLERK is an employee of a federal entity, and did willfully and intentionally

deliver the **secret documents** to **defendants**, which endangered the life of plaintiff.

234.  Plaintiff reasonably believes that the Attorney General is John Ashcroft, not ROBERT D. McCALLUM, JR.  *Guiterrez de Martinez, supra,* clarifies this at 115 S.Ct. pgs. 2228-2229 that only the <u>Attorney General</u> can certify scope of employment in order so that no one should be a judge in his own cause (*Guiterrez* was about certifying federal employee Lamagno's scope of employment when a U.S. ATTORNEY appeared on his behalf as private counsel and claimed "immunity" for him after he was sued for causing a traffic injury accident while driving drunk with a prostitute in the middle of the night). It is the duty of the Attorney General, ***NOT*** GORDON, WEIDMAN, PLESSMAN, BLACKWOOD, McCALLUM, HERTZ, ALTMAN, or SKOWRONEK to certify defendants' "scope-of-employment/office." And since ASHCROFT failed to "delegate" or "certify" anybody, all defendants are "<u>dumped</u>" and have to Answer Summons by <u>themselves</u>.

235.  U.S. ATTORNEYS GORDON, WEIDMAN, PLESSMAN, BLACKWOOD, McCALLUM, HERTZ, ALTMAN, and SKOWRONEK, entered into the conspiracy to obstruct justice and declare all civil remedies against corrupt government employees to be void, and have become "perpetrators," *see Salinas v. United States,* 118 S.Ct. 469 (1997), pursuant to the <u>Congressional</u> definition of "any scheme or artifice to defraud any citizens of their intangible right to honest services," 18 U.S.C. § 1346, *see* **EXHIBIT K's "<u>materially false representations of fact and law:</u>"**

> "[P]ursuant to standard practice, she or her staff then forwarded the complaint to an Assistant United States Attorney who routinely acts as defense counsel in suits directed against the federal judiciary."

236.  U.S. ATTORNEYS are prohibited from participation in private practice, <u>cannot</u> "routinely act as defense attorneys" for those they are sworn to prosecute pursuant to the Accountability Act of 1994, 18 U.S.C. § 2, 18 U.S.C. § 1001, *and Guiterrez de Martinez, supra*.

*See also* EXHIBIT J, "CHAPTER 1 OF CLERKS MANUAL" at Section 1.02c, with its own

Exhibit 2, pages 14-21, penalties for CLERKS' violation of prohibitions against practicing law,

violating judicial canons, codes of conduct, professional standards, appearance of impropriety,

**restraint against disclosure of confidential information**, conflicts of interest, material witness in

a proceeding, personal prejudice, outside activities, compliance with disclosure requirements, use

of the office in the solicitation of funds (or "doing favors"), Ethics Reform Act of 1989, 5 U.S.C. §

7353, 5 U.S.C. § 7351 (gifts to superiors), 5 U.S.C. app. 6, §§ 101 to 111 (Ethics Reform Act

financial disclosure provisions), 18 U.S.C. § 203 (representation in matters involving the United

States); 18 U.S.C. § 205 (claims against the United States); 28 U.S.C. § 955 (restriction on clerks

of court practicing law), and inappropriate political activity.

    237.    U.S. ATTORNEYS entered into a conspiracy to threaten and intimidate plaintiff,

see letter: **U.S. Department of Justice, Civil Division, May 14, 2002,** signed by Andrew

Skowronek, which is an admission of intent to obstruct justice by an attorney in "Commercial

Litigation Branch, U.S. Department of Justice." This constitutes "mail fraud" and "threat" alluding

to the "criminal intent to file an unlawful motion to dismiss with prejudice" in participation with

the "cover-up of the conspiracy to declare all civil remedies void as pertains any government

employees committing crimes in the record" in direct violation of 18 U.S.C. 1505, and the Civil

Antitrust Reform Act of 1990, and it was done in the name of Attorney General **John Ashcroft**.

The letter and Notice are admissible to establish the existence of a civil conspiracy to violate

plaintiff's constitutional rights pursuant to the Federal Rules of Evidence, 1997 Amendment (West

2002).

238.    SKOWRONEK states the following "admissions of conduct and behavior in furtherance of the scheme or artifice to deprive citizens of their intangible right to honest services" in violation of 18 U.S.C. § 1341 Fraud and swindles:

"Dear Ms. Fisher [sic]"

The *relator's* identity is required to be "DOE" and under Seal for a period of 60 days, therefore, an actual felony occurred when SKOWRONEK received and read a "Sealed document" in violation of law, see *In re Grand Jury Proceedings,* 87 F.3d 377 (9th Cir. 1996).

SKOWRONEK continues the fraud:

"This is a courtesy letter intended to apprise you of the status of your recently filed *qui tam* suit. As you will see from the attached Notice of Events, your complaint was seen by one of the defendants. This was an inadvertence consequent to the day-to-day operations of the clerks office, and we do not consider that the seal has been violated. To the contrary, we consider that the seal remains in place with full force and effect."

As an officer of the Court, SKOWRONEK is subject to 18 U.S.C. § 4, had "knowledge of the commission of an actual felony" with the obligation to notify the Court of the "criminal conduct of federal employees DOES 1 and more CLERKS" as soon as possible. The jury will determine if the Seal was violated, not a mere employee of the "Commercial Litigation Branch." The national news currently attests to the "factual criminal conduct" involved with corruption, cover-up and other events surrounding plaintiff's qui tam, see EXHIBIT L.

239.    SKOWRONEK appears to believe that the citizens are "unaware of the corruption in federal agencies and departments." The issue will be put to the jury, the trier of fact, as required by the Seventh Amendment and Federal Rules of Civil Procedure, Rule 38 (West 2002). SKOWRONEK continues the perjury:

"With regard to the substance of your suit, however, it is our current assessment that your complaint fails to articulate a cognizable claim under the False Claims Act. First, a False Claims Act suit cannot be maintained against an entity of the federal government,

and, as a consequence, your *qui tam* claims against the Administrative Office of the United States and its employees in their official capacities must fail."

240.    How predictable!  In keeping with the "custom and policy" of corrupt U.S. ATTORNEYS to obstruct justice for other corrupt government employees by declaring that all laws, statutes and civil remedies are "unintelligible gibberish," "do not apply in this case," and "fail to state a claim," SKOWRONEK made a materially false representation of law as a threat to obstruct the civil prosecution of claims against federal actors pursuant to the Anti-Corruption Act of 1988, 18 U.S.C. § 1341, also 18 U.S.C. § 1962 (RICO).  First, Congress declared that "federal actors are subject to suit." Title 28 U.S.C. § 2679 provides that the United States *shall be substituted as a defendant*, and the jury will determine if the claims "have merit."  Motions to dismiss were abolished in the year 1948 by Federal Rules of Civil Procedure Rule 7(c) (West 2002), and failure to Answer individual Summons will result in default, see Rule 12, 1966 Amendment.  Any attempt to plead "insufficiency," abolished by written law Rule 7(c), will result in Rule 37 "mandatory amplified sanctions" against SKOWRONEK acting in the name of the United States pursuant to Rule 11 and Rule 37 as amended.  See West 2002 Edition F.R.C.P. Rule 12, 2000 Amendment at page 99:

> "Rule 12(a)(3)(B) is added to complement the addition of Rule 4(i)(2)(B).  The purposes that underlie the requirement that service be made on the United States in an action that asserts individual liability of a **United States officer or employee for acts occurring in connection with the performance of duties on behalf of the United States also require that the time to ANSWER be extended to 60 days.**  Time is needed for the United States to determine whether to PROVIDE REPRESENTATION to the defendant officer or employee.  If the United States provides representation, the need for an extended ANSWER PERIOD is the same as in actions against the United States, a **United States agency, or a United States officer sued in an official capacity.**
> An action against a former officer of the United States is covered by subparagraph (3)(B) in the same way as an action against a present officer or employee.  Termination of the relationship between the individual defendants and the United States does not reduce the need for additional time to ANSWER.
> **GAP Report**
> No changes are recommended for Rule 12 as published.

244.    SKOWRONEK, in keeping with the custom and policy of voiding all civil remedies against corrupt government employees, used federal facilities and his position to threaten plaintiff/*relator* and solicit kickbacks for his co-conspirators:

> "We suggest that you retain private counsel so that you can discuss your allegations with him or her.  In addition, please be advised that the United States intends to file promptly a suggestion that the Court dismiss this case with prejudice to the relator."

245.    SKOWRONEK impersonated the Attorney General JOHN ASHCROFT, made materially false statements of fact and law, and sent a threat through the U.S. mail.  GORDON, WEIDMAN, PLESSMAN, BLACKWOOD, McCALLUM, HERTZ, SKOWRONEK and ALTMAN are all "principals" and "accessories after the fact" as defined by Title 18 §§ 2 and 3. ASHCROFT failed to indict GORDON, WEIDMAN, PLESSMAN, BLACKWOOD, McCALLUM, HERTZ, SKOWRONEK and ALTMAN after plaintiff sent him notice of their conduct on June 10, 2002.

<u>MORE RETALIATION....</u>

246.    Since the filing of plaintiff's qui tam complaint, defendant SHERRI R. CARTER legislated and re-wrote Title 31 in direct conflict of F.R.C.P.s, and issued an Order, see EXHIBIT M.  This violated the prohibitions against CLERKS practicing law, and the 2000 Amendment to Title 28 Rule 26, which abolishes all local rules that are in direct conflict with F.R.C.P.s.  SHERRI R. CARTER's Order voids Congress and abolishes "filed under Seal" without CLERKS' approval. Plaintiff demands that SHERRI CARTER explain her interpretation of "filed-under-Seal," and bring forward evidence that she was granted legislative powers to repeal or amend Title 31 U.S.C.

247.    Defendants RACHEL INGRAM and DOE CLERKS are continuing the obstruction of justice, as they have refused plaintiff's demands to unseal and issue Summons on First Amended Qui Tam Claim, no. **EDCV 02-334 VAP SGLx.**  Plaintiff drove to the Riverside

courthouse twice on July 1 and 2, and in spite of presenting evidence that the 60 days have passed and nobody was served or appeared, nobody intervened as ASHCROFT's delegate, DOE CLERKS, INGRAM and PHILLIPS caused more delay and refused to issue Summons.

<u>THE WHOLE ENCHALADA...</u>

248.    Defendants used the court facilities, resources and personnel, and stole over $100,000.00 worth of property from plaintiff in 1993 without due process-all plaintiff's claims denied, and attempted to use the courts again to steal $17,000.00 worth of plaintiff's marital property in 1999. Defendants and co-conspirators' same pattern of abuse of the pre-trial process was used against other "targets." Defendants and co-conspirators generated and granted false charges, bills, liens, fees, fraudulent judgments, orders, costs and other extortionate credit transactions against these "targets," made void all civil remedies against government employees doing fraud and swindle in these and other cases, voided accountability on behalf of co-conspirators, destroyed our judicial system in the process, then submitted false claims to the United States for "duties as performed by law." Each of these conducts and behavior establishes a pattern of predicate acts in furtherance of operating the courts as a racketeering enterprise. Plaintiff demands that defendants produce any civil remedies that are not void against corrupt government employees.

249.    Defendants are members and associates of a "racketeering enterprise" as defined in Title 18 U.S.C § 1961(4); and did commit the prohibited conduct described in section 1961(1)(B) – sections 201 (relating to bribery), sections 891-894 (relating to extortionate credit transactions), 1341 and 1343 (mail fraud, "any scheme or artifice to defraud"), 1503 (obstruction of justice), 1513 (retaliation against a witness, victim or informant), 1951 (interference with commerce, robbery and extortion); committed more prohibited conduct described in Title 18 U.S.C. § 1506

(theft or alteration of record), 241 (conspiracy against rights), 242 (deprivation of rights under color), 1341 (fraud and swindle), 1920 (false statement or fraud to obtain federal employee's compensation), 1001 (making materially false, fictitious, or fraudulent statement or entry), Title 28 U.S.C. Rule 79 (entry of judgment), Title 28 U.S.C. § 955 (practice of law), and committed prohibited activities as defined in Title 18 U.S.C. § 1962.

### FACTS APPLICABLE TO ALL CLAIMS – ONE HAND WASHES THE OTHER....

250.    Plaintiff reported the fraud, it has been <u>covered up</u> and <u>not prosecuted</u>, and it is continuing to date.

251.    Defendants' predicate acts are evident in nine Dockets from the states of Florida, Texas, and California: <u>Brewer, et al v. Collin County, et al</u>,  No. 99-CV-256, <u>Brown, et al v. Wilson County, et al</u>,  No. 97-CV-1473, <u>Hardin v. Adams, et al</u>,  No. 00-CV-2443, <u>Keim v. Cintra, et al</u>,  No. 00-CV-764, <u>Fischer v. Stewart, et al</u>,  No. 99-CV-7890, <u>Hazlett v. County of Riverside, et al</u> No. 99-CV-12982, <u>Martin v. Sandlin</u>, No. 00-CV-97, <u>Hoog v. Frio County, et al</u>,  No. 00-CV-640, and <u>Phelps, et al v. Denton County Sheriff's, et al</u>,  No. 94-CV-182. JUDGES' and CLERKS' failure to do duties as prescribed by Title 28 F.R.C.P.s as an aid to evade prosecution on behalf of other defendants and their associates is evident in each Docket, and any reasonable person would know the "fix was in" when he or she saw any of the following appear on the docket:

a.  NO "answers due by .__" computed by CLERKS (<u>omitted</u>),

b.  Associates in the scheme permitted to evade answering Summons,

c.  Entry numbers and dates altered and out of sequence (some <u>grossly</u> so),

d.  Attorneys' motions entered with NO Appearance Forms in the record (<u>omitted</u>),

e.  Prohibited motions and pleadings entered <u>before</u> an Answer,

f.  Prohibited third-party or consolidated answers by U.S. ATTORNEYS or FIRMS entered by CLERKS,

g.  Entries altered - "Motions to Dismiss" or "Motions for Costs and Sanctions" labeled "Answers" by CLERKS, "Requests to Enter Defaults" labeled "Motions," etc.,

h.  Defaults against parties failing to Answer **not** entered (omitted) by CLERKS after the 21 days,

i.  In some cases, Applications for Default by Clerk were denied by CLERKS and sent back through the U.S. mail, which constitutes destruction of a federal record in violation of Title 28 U.S.C. Rule 79 and Clerks Manual Chapter 21,

j.  Magistrates' rulings appeared in the record **without** consent of all parties (**another** omission by CLERKS in violation of 28 U.S.C. § 636(c)),

k.  Directed verdicts appeared in the record (abolished over 50 years ago in *Galloway v. United States*, 319 U.S. 372 (1943)),

l.  Fraudulent and false bills, liens, orders and judgments entered into the record with no jury trials/abstract of judgments (CLERKS **omitted** that one, too,

m.  CLERKS impersonated Chief Judges and did judicial and case transfers,

n.  NO Rule 16 pre-trial hearings scheduled (**omitted**) by CLERKS, and

o.  NO jury trials scheduled (**omitted**) by CLERKS.

252.    CLERKS did all this, even though Title 18 U.S.C. and Chapter 1 of the Clerks Manual states they go to jail for 30 years if they do just **one** of these things.  MECHAM and OFFICE failed to audit like MECHAM ***testified*** he was doing (I-am-overworked-and-I-need-more-money) during his March 5, 2002 Senate Budget Hearing, which makes all defendants "principals" as defined by Title 18 U.S.C. §§ 2, 3 and 4, and "conspirators" as defined in *Salinas v. United States*, 118 S.Ct. 469 (1997):

17. **Conspiracy  41**
    If conspirators have plan which calls for some conspirators to perpetrate crime and others to provide support, supporters are as guilty as perpetrators.
18. **Conspiracy  28(1)**
    It is possible for person to conspire for commission of crime by third person.

253    Plaintiff demands that MECHAM explain that he was not lying to Congress when he said he needed more money for CLERKS doing duties, when the record shows that CLERKS, JUDGES, and OFFICE were collecting paychecks, yet no work was being done – no jury trials, no hearings on these and many other cases, no dockets were getting audited, and no offenders were getting prosecuted for crimes in the record, see Brewer, et al v. Collin County, et al, No. 99-CV-

256, docket entry no. 289 on 4/14/00: "Plaintiffs' Admissible Evidence of $100,000 Bribe in

Related RICO Action by Pro Se Deft Paul C Walter's Law Firm Jenkins & Gilchrist, a

Professional Corporation, to Aid and Abet Conspirators Evade Criminal Prosecution by Bribing

Magistrate Caroline Malone on April 6, 2000 (tls) [Entry date 04/17/00]." Plaintiff demands that

MECHAM explain to plaintiff and Congress how this one got missed.

254.    Defendants' **only affirmative defense**, is to Rule 26 disclose and provide

admissible evidence to plaintiff, by a preponderance of the evidence, that their conduct consisted

solely of **lawful conduct** pursuant to duties prescribed by law in Title 28 U.S.C., their Oaths, and

the Clerks Manual; that the defendants' sole intention was to perform duties lawfully prescribed in

Title 28 by Congress, and to encourage, induce, or cause the Rule 1 "*just, speedy* and *inexpensive*

determination of every action" in getting injured parties vindication of their federal rights, and that

the "targets" were vindicated in court.

255.    Defendants must Rule 26 produce the following to prove they did the work, and

that "due process" (Rule 16 hearings and jury trials) happened:

   a.    Form 33s, Form 34s and Form 35s (Title 28 U.S.C.),
   b.    Tickler Reports (Clerks Manual, Chapter 11, Exhibit 6),
   c.    Answer Dockets (Clerks Manual, Chapter 11, Exhibit 7),
   d.    [Judges'] Calendar Reports (Clerks Manual, Chapter 11, Exhibits 8 and 9),
   e.    Civil Inventory/Scheduling Reports (Clerks Manual, Chapter 11, Exhibit 10),
   f.    Case Index Reports (Clerks Manual, Chapter 11, Exhibit 11),
   g.    Pending and Terminated Cases Report" (Clerks Manual, Chapter 11, Exhibit 3),
   h.    JS-5 Reports (Clerks Manual, Chapter 11, Exhibit 4),
   i.    Pending Motions Reports (Clerks Manual, Chapter 11, Exhibit 5),
   j.    Application for [attorney] Admission forms (Clerks Manual, Chapter 20, Exhibit 1),
   k.    National Discipline Data Bank Report Forms (Clerks Manual, Chapter 20, Exhibit 2),
   l.    Juror's Evaluation Forms and Report on Operation of the Jury Selection
         Plan (Clerks Manual Ch. 23),

m. Exhibit and Witness Lists (Clerks Manual, Chapter 14, Exhibit 3),

n. Civil Minutes - Trial (Clerks Manual, Chapter 14, Exhibit 8),

o. Monthly Report of Trials & Other Court Activity (Clerks Manual, Ch. 14, Exhibit 9),

p. U.S. Magistrate Judge Monthly Reports (shows Part IV. Consent Cases – Clerks Manual, Chapter 14, Exhibit 10),

q. Judgment on Jury Verdict (Clerks Manual, Ch. 14, Exhibit 1 in the very back), and

q. Abstracts of Judgment (Clerks Manual, Chapter 15, Exhibit 1), and

r. Proof plaintiff's $100,000.00 worth of products and property were returned.

These reports will indicate who actually did what job, the identity of the perpetrators, which dockets were audited by MECHAM pursuant to Title 28 section 604, and which jobs were never completed as prescribed by law. Defendants must produce evidence they performed their duties pursuant to Title 28 U.S.C., F.R.C.P.s and Clerks Manual, Chapter 4, Exhibit 1 "Progression of Civil Litigation in United States District Court."

## DEFENDANTS' PATTERN OF CORRUPTION AND RACKETEERING ACTIVITY COAST-TO-COAST: COUNTS FOR EACH DEFENDANT, FOR EACH PREDICATE ACT, DECIDED BY THE JURY

### COUNTS for Violation of Title 18 U.S.C. § 1962(d) Prohibited activities

256. The allegations set forth in paragraphs 46, 114, 177, and 179 to 255 are incorporated herein by reference.

257. Under the direction of MECHAM through OFFICE, CLERKS, DOES, JUDGES, U.S. ATTORNEYS, FIRMS, and their clients, met, conspired and engaged in the same pattern and practice of violating rules of court, abusing the pre-trial process, generating costs, fees, sanctions, fines and Orders for each other, denying due process, and obstructing justice to operate the United States District Courts as racketeering enterprises in the following Districts:

A. Eastern District of Texas – Sherman Division, 101 Pecan St., Room 112, Sherman, TX 75090, in Brewer, et al v. Collin County, et al, No. 99-CV-256. Defendants/participants in the scheme: ASHCROFT, MECHAM, OFFICE, DAVID J. MALAND, DOE CLERKS "tm," "sxs," "tls," "im," and "lw;" PAUL BROWN, MIKE BRADFORD, ANDREA HEDRICK PARKER, BENNET & WESTON, MATTHEWS CALTON STEIN SHIELS PEARCE DUNN & KNOTT, WOLFE CLARK HENDERSON & TIDELL, BRADY & COLE,

GODWIN WHITE & GRUBER, LEA & CHAMBERLAIN, BECKWORTH & CARRIGAN LLP, SAYLES & LIDJI, WALD & ASSOCIATES, JACKSON & WALKER LLP and JENKINS & GILCHRIST;

B. Western District of Texas – San Antonio Division, 655 East Durango Blvd., San Antonio, Texas 78206, in Brown, et al v. Wilson County, et al, No. 97-CV-1473. Defendants/participants in the scheme: ASHCROFT, MECHAM, OFFICE, WILLIAM G. PUTNICKI, DOE CLERKS "wg," "pjr," "rg," "tr," "eb," "cw," "kcl," "lp," "sj," ORLANDO GARCIA, WILLIAM BLAGG, HAROLD O. ATKINSON, JACKSON & WALKER LLP, JENKINS & GILCHRIST, RHEA & RODMAN LLP, DECARLI & IRWIN, PAMELA MCGRAW, CHARLES S. FRIGERIO, LAW OFFICE OF CHARLES S. FRIGERIO, OFFICE OF THE ATTORNEY GENERAL FOR THE STATE OF TEXAS, CLEMENS & SPENCER PC, CLEMENS & SPENCER, KEITH A. KENDALL, JONES KURTH & ANDREWS PC, MATTHEWS & BRANSCOMB PC, AKIN GUMP STRAUSS HAUER & FELD, STRASBURGER & PRICE LLP, PAUL ANDREW DRUMMOND SOUTHWESTERN BELL TELEPHONE, THOMAS & LIBOWITZ PA, VICTORIA VALERGA, SOUTHERN ANIMAL RESCUE ASSOCIATION INC., ANGELA DICKERSON NOBLE, ALLEN STEIN POWERS DURBIN & HUNNICUTT, CHARLES B. GORHAM, BRIN & BRIN, LEMLER & ASSOCIATES PC, and LAW OFFICES OF FERNANDO RAMOS;

C. Middle District of Florida (Tampa), Office of the Clerk, United States Courthouse, Tampa, Florida 33602, in Hardin v. Adams, et al, No. 00-CV-2443. Defendants/participants in the scheme: ASHCROFT, MECHAM, OFFICE, SHERYL L. LOESCH, DOE CLERKS "plk," "ctc," "bls," "jlh," "cdm," "mrh," "ch," "dlg," "jab," "wlb," RICHARD LAZARRA, PASCO COUNTY ATTORNEY'S OFFICE, OFFICE OF THE ATTORNEY GENERAL FOR THE STATE OF FLORIDA CIVIL LITIGATION DIVISION, DEBOISE & POULTON P.A., HOLLAND & KNIGHT LLP, LAW OFFICES OF JAMES RICHARD HOOPER, P.A.;

D. Middle District of Florida (Tampa), Office of the Clerk, United States Courthouse, Tampa, Florida 33602, in Keim v. Cintra, et al, No. 00-CV-764. Defendants/participants in the scheme: ASHCROFT, MECHAM, OFFICE, SHERYL L. LOESCH, DOE CLERKS "jlg," "ag," "smb," "eec," "bls," "seal," "jlh," "plk," "dlg," MAURICE M. PAUL, PAUL MICHAEL BROWN, PATRICIA A. WILLING, FOWLER WHITE GILLEN BOGGS VILLAREAL & BANKER PA, LAW OFFICE OF NANCY M. PARHAM, NIX HOLTSFORD GILLILAND LYONS & HIGGINS PC, LAW OFFICE OF JOSEPH M. DAVIS, CARRINGTON & CARRINGTON, HILLSBOROUGH COUNTY ATTORNEY'S OFFICE FOR THE STATE OF FLORIDA;

E. Central District of California (Western Division), 312 N. Spring St., No. G-8, Los Angeles, California 90012-4793, in Fischer v. Stewart, et al No. 99-CV-7890. Defendants/participants in the scheme: ASHCROFT, MECHAM, OFFICE, SHERRI R. CARTER, DOE CLERKS "bg," "pj," "yc," "rn," "ca," "pjap," "bp," "kc," "fvap," "lk," "weap," "ghap," "cbr," TERRY J. HATTER, OFFICE OF THE CITY ATTORNEY FOR THE CITY OF ANAHEIM, COUNTY COUNSEL FOR THE COUNTY OF ORANGE;

F. Central District of California (Western Division), 312 N. Spring St., No. G-8, Los Angeles, Calif. 90012-4793, in <u>Hazlett v. County of Riverside, et al No. 99-CV-12982.</u> Defendants/participants in the scheme: ASHCROFT, MECHAM, OFFICE, SHERRI R. CARTER, DOE CLERKS "la," "lk," "mrgo," "am," "bp," "kg," "sm," "step," "lc," "jj," "pbap," GARY A. FEESS, LEON W. WEIDMAN, CREASON & AARVIG LLP, MARIA K. AARVIG, KINKLE RODIGER & SPRIGGS, DONALD BEACHAM;

G. Eastern District of California (Sacramento), 501 "I" Street, Sacramento, CA 95814, in <u>Martin v. Sandlin, No. 00-CV-97.</u> Defendants/participants in the scheme: MECHAM, OFFICE, JACK WAGNER, DOE CLERKS "ljr," "rb," "rw," "mll," "pb," "ndd," "hk," "dc," "kdc," "ak," "pw," "sk," WILLIAM B. SHUBB, KIRSTEN SUDHOFF DOOR, ALESHIA M. WHITE;

H. Western District of Texas (San Antonio), 655 East Durango Blvd., San Antonio, Texas 78206, in <u>Hoog v. Frio County, et al No. 00-CV-640.</u> Defendants/participants in the scheme: MECHAM, OFFICE, WILLIAM G. PUTNICKI, DOE CLERKS "wg," "sj," "tr," "lp," ORLANDO GARCIA;

I. Eastern District of Texas – Sherman Division, 101 Pecan St., Room 112, Sherman, TX 75090, in <u>Phelps, et al v. Denton County Sheriff's, et al, No. 94-CV-18282.</u> Defendants/participants in the scheme: MECHAM, OFFICE, DAVID J. MALAND, DOE CLERKS "tm," "sxs," "sxh," PAUL BROWN, DENTON COUNTY CRIMINAL DISTRICT ATTORNEY'S OFFICE, McDONALD SANDERS PC, CANTLEY & HANGER, GRIFFEN WHITTEN & JONES, HOPKINS & SUTTER, CULLUM LAW FIRM PC, KIRKPATRICK & LOCKHART.

258. The pattern is the same: FIRMS and U.S. ATTORNEYS knowingly presented

fraudulent motions on behalf of their clients to evade prosecution for initiating malicious suits in

order to convert title of ownership. CLERKS, under the direction of MECHAM and OFFICE,

accepted them into the record, JUDGES issued Orders granting them, thus voiding due process,

statutes, the Constitution, Amendments, and Acts of Congress as pertains to suits against corrupt

government employees and their co-conspirators doing fraud and swindle. Plaintiff demands that

each defendant explain his or her participation in the above-named cases.

259. By way of fabricating "false bail," JUDGES issued Orders on behalf of co-

conspirators to illegally collect on attorneys' fees without any hearings in violation of Title 28

U.S.C. Rules 7, 11 (sanctions are only for defendants' attorneys), Rule 68, the Supreme Court's

directive in *Heinz v. Jenkins,* 115 S.Ct. 1489 (1995) (attorneys cannot engage in any debt-collection practices), and due process, which requires that <u>attorneys' fees are to be decided by the jury</u>. After defendants had milked the case dry, JUDGES got rid of it by dismissing it with prejudice, not for publication. The "targets" of this scheme were injured in their businesses, defrauded out of their money, property, livelihoods, reputations, and due process rights by defendants, who injured the "targets," the economy, and the United States. Plaintiff demands that defendants explain how H.R. Rep. No. 91-1549, 91st Cong., 2d Sess. 58, 187 (1970) *reprinted in* 1970 U.S. Code Cong. & Admin. News, 4007, 4081. ("The full House rejected a proposal to create a complementary treble damages remedy for those injured by being named as defendants in malicious private suits. 116 Cong. Rec. 35342 (1970).") does <u>not</u> apply to them.

260.    Defendants defrauded both the paying public under color of official right including plaintiff, and defrauded the United States by submitting false claims for doing duties as prescribed by law. The abuse and "racketeering pattern" is the same coast-to-coast:

A) Brewer, et al v. Collin County, et al, No. 99-CV-256 –

1) CLERKS violated Rule 7 by entering 87 prohibited motions and third-party answers submitted by U.S. ATTORNEYS and FIRMS from persons in default at Docket numbers 31, 33, 57, 59, 61, 64, 65, 66, 67, 68, 70, 71, 72, 73, 88, 90, 91, 92, 93, 94, 167, 168, 169, 170, 175, 203, 204, 205, 206, 209, 211, 207, 208, 211, 207, 208, 256, 257, 261, 262, 265, 266, 284, 288, 286, 287, 293, 295, 294, 297, 298, 299, 300, 301, 302, 303, 304, 305, 306, 307, 310, 311, 312, 313, 314, 315, 316, 318, 319, 320, 321, 322, 323, 324, 325, 331, 333, 336, 337, 344, 346, 347, 347, 348, 352, 353 and 358;

2) U.S. ATTORNEYS and FIRMS submitted 87 prohibited motions and third-party answers;

3) CLERKS did 2 magistrate assignments with no consents in the record between nos. 169 and 170;

4) CLERKS entered 21 illegal magistrate JUDGES' Orders with no consents in the record at numbers 57, 59, 60, 283, 282, 290, 317, 326, 327, 328, 329, 332, 334, 335, 340, 341, 349, 350, 351, 357 and 359;

5) JUDGES entered 21 Orders, Judgments, Findings and Recommendations on behalf of FIRMS' and U.S. ATTORNEYS' clients and none for "targets;"

6) CLERKS failed to enter 22 Defaults as required by law on parties who failed to Answer;

7) CLERKS altered the numerical sequence of 8 Docket entries after numbers 170, 206, 211, 281, 285, 287, 293 and 294;

8) MECHAM and OFFICE failed to audit, failed to investigate, and failed to prosecute 7 crimes in the record on Docket nos.: 289 (Plaintiffs' Admissible Evidence of $100,000 Bribe in Related RICO Action by Pro Se Deft Paul C Walter's Law Firm Jenkens & Gilchrist, a Professional Corporation, to Aid and Abet Conspirators Evade Criminal Prosecution by Bribing Magistrate Caroline Malone on April 6, 2000), no. 291 (MOTION by Brenda Brewer, Claude Brewer to vacate [282-1] order Issued by Magistrate in Return for "Bribes" from Defendants Stoler and LaPorte to Unlawfully Stay Discovery to Evade Criminal Indictment Pursuant to 42 USC Section 636, Repealed in 1988), no. 308 (MOTION by Brenda Brewer, Claude Brewer to vacate all Magistrate' orders and order #296 by Judge Folsom as unlawful and committed in conspiracy with non-party John T Gerhart by bribe of federal actors on April 6th, April 11th and April 18th), no. 317 (overturning the First Amendment of the Constitution), 354 (Order granting $29,439.67 attorneys' fees without an abstract of judgment from the jury) and no. 357 (Order granting $30,137.17 attorneys' fees without an abstract of judgment from the jury), JUDGE in Sherman, Texas, unlawfully issuing an Order at no. 210, referring case to a magistrate in Texarkana, Texas without consents in the record, in violation of Title 28 §124: cases filed in Sherman, Texas "shall be held at Sherman.";

9) ASHCROFT failed to prosecute other defendants for crimes in the record after he had this information for at least 60 days;

10) Achieved goal: Dismissed with no hearings, no jury trial.

B) Brown, et al v. Wilson County, et al, No. 97-CV-1473 –

1) CLERKS altered the record 97 times by not computing "Answers Due by" at Docket numbers 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 421, 422, 423, 424, 425, 426, 427, 431, 432, 433, 434, 435, 436, 437, 439, 440, 441, 442, 464, 465, 466, 480;

2) CLERKS did 2 assignments of a magistrate to the case between nos. 82 and 83, and at 223 with no consents in the record;

3) CLERKS entered 277 prohibited motions and third-party answers submitted by U.S. ATTORNEYS and FIRMS on behalf of their clients in default at Docket numbers 27, 180, 181, 182, 183, 184, 185, 186, 187, 188, 201, 202, 210, 211, 212, 213, 214, 216, 217, 218, 219, 220, 221, 222, 224, 226, 227, 228, 382, 383, 386, 387, 388, 397, 398, 399, 402, 405, 408, 417, 438, 444, 445, 446, 447, 448, 449, 450, 451, 452, 453 (CLERK omitted "return of service" for the Gossetts), 454, 455, 456, 457, 458 (agreement with who?), 461, 462, 467, 468, 481, 482, 488, 489, 490, 491, 492, 494, 495, 496, 499, 500, 501, 502, 503, 504, 505, 506, 507, 508, 509, 510, 511, 512, 513, 514, 515, 516, 517, 518, 524, 525, 531, 534, 535, 536-537, 538, 540, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 554, 555, 559, 560, 567, 568, 572, 575, 576, 577, 578, 579, 580, 584, 585, 588, 590, 592, 593,

594, 595, 597, 599, 600, 601, 603, 604, 605, 606, 607, 608, 609, 610, 611, 612, 613, 614, 615, 616, 617, 618, 619, 620, 621, 622, 626, 630, 631, 633, 636, 648, 649, 650, 651, 652, 653, 654, 655, 657, 661, 665, 666, 667, 668, 669, 670, 673, 676, 677, 678, 679, 680, 681, 683, 684, 685, 686, 687, 688, 689, 690, 694, 696, 697, 706, 708, 714, 726, 727, 732, 733, 734, 738, 751, 753, 761, 766, 783, 784, 787, 788, 789, 791, 792, 793, 794, 795, 799, 800, 801, 802, 803, 804, 805, 806, 807, 808, 810, 811, 812, 813, 816, 817, 818, 819, 820, 822, 824, 843, 846, 847, 848, 849, 850, 851, 852, 853, 854, 857, 860, 863, 871, 872, 873, 876, 878, 881, 886, 887, 888, 889, 898, 912, 913, 919, 921, 927, 928, 929, 931, 933, 931, 933, 936, and 937. NOTE: No other filings could have been entered after case was on appeal after no. 915;

4) U.S. ATTORNEYS and FIRMS submitted 277 prohibited motions and third-party answers;

5) CLERKS did 182 omissions – omitted Docket number for Third Amended Complaint between nos. 586 and 587, omitted "Answers Due By" for 83 defendants; omitted docket numbers for entries after nos. 606, 613, 614, 615, 616, 619, 620, 621, 648, 656, 672, 687, 697, 788 (CLERK practiced law and wrote this one himself or herself), 804, 805, 821 (also written by CLERK), 822, 854, 856, 857, 865, 923, 927, 929, 933 and 939, and 569; CLERK omitted magistrate consents in the record at Docket numbers 385, 390, 400, 407, 459, 487, 527, 530, 561, 569 574, 581, 582, 623, 624, 625, 626, 640, 641, 642, 643, 644, 645, 646, 662, 663, 674, 699, 700, 701, 702, 704, 705, 715, 731, 739, 741, 748, 759, 769 (jury decides), 770, 772, 773, 774, 814, 815, 821, 823, 826, 845 (jury decides), 868, 874, 882, 883, 884, 885, 890, 891, 892, 893, 907, 908, 909, 910, 911, 926, 930, 932, 935, 938 and 939;

6) CLERKS entered 71 illegal JUDGES' Orders at 385, 390, 400, 407, 459, 487, 527, 530, 561, 569 (CLERK omitted magistrate consent forms in the record, even though many other parties had objected earlier at Docket numbers 495, 496, 500, 508, 509, 512), 574, 581, 582, 623, 624, 625, 626, 640, 641, 642, 643, 644, 645, 646, 662, 663, 674, 699, 700, 701, 702, 704, 705, 715, 731, 739, 741, 748, 759, 769 (jury decides), 770, 772, 773, 774, 814, 815, 821, 823, 826, 845 (jury decides), 868, 874, 882, 883, 884, 885, 890, 891, 892, 893, 907, 908, 909, 910, 911, 926, 930, 932, 935, 938 and 939;

7) JUDGES entered 71 Orders, Judgments, Findings and Recommendations on behalf of FIRMS' and U.S. ATTORNEYS' clients and none for "targets;"

8) CLERKS did 4 alterations of the numerical sequence of Docket entries after numbers 81, 394, 427 and 663;

9) CLERKS failed to enter 83 Defaults as required by law;

10) MECHAM and OFFICE failed to audit, failed to investigate, and failed to prosecute for waste, misuse, and abuse;

11) ASHCROFT failed to prosecute other defendants for crimes in the record after he had this information for at least 60 days;

12) Achieved goal: Dismissed with no hearings, no jury trial.

C) Hardin v. Adams, et al, No. 00-CV-2443 –

1) CLERKS unlawfully performed Article III JUDGE'S function by assigning magistrate right after Docket number 1;

2) CLERKS altered the record 2 times at Docket numbers 4 and 5, calling them "answers" when they were not;

3) CLERKS entered 13 prohibited motions and third-party answers submitted by U.S. ATTORNEYS and FIRMS from persons in default at Docket numbers 38, 40, 41, 42, 45, 46, 47, 48, 49, 50, 52, 60 and 61;

4) U.S. ATTORNEYS and FIRMS submitted 13 prohibited motions and third-party answers;

5) CLERKS failed to enter 39 Defaults as required by law;

5) CLERKS entered 2 JUDGES' illegal Orders at 64, 71;

6) JUDGES entered 2 Orders, Judgments, Findings and Recommendations on behalf of FIRMS' and U.S. ATTORNEYS' clients and none for "target;"

7) MECHAM and OFFICE failed to audit, failed to investigate, and failed to prosecute for waste, misuse, and abuse;

8) ASHCROFT failed to prosecute other defendants for crimes in the record after he had this information for at least 60 days;

9) Achieved goal: Dismissed with no hearings, no jury trial.


D) Keim v. Cintra, et al, No. 00-CV-764 –

1) Right after Docket number 1 – CLERKS assumed duties of Chief JUDGE, and assigned magistrate, no consents in the record;

2) CLERKS entered 28 prohibited motions and third-party answers submitted by U.S. ATTORNEYS and FIRMS from persons in default at Docket numbers 13, 14, 16, 17, 22, 23, 24, 32, 33, 34, 41, 42, 43, 47, 48, 49, 50, 53, 54, 55, 56, 66, 67, 68, 69, 71, 72, and 75;

3) U.S. ATTORNEYS and FIRMS submitted 28 prohibited motions and third-party answers;

4) CLERKS failed to enter 20 Defaults as required by law;

5) CLERKS entered JUDGES' illegal Order at no. 70;

6) JUDGES entered 1 Order on behalf of FIRMS' and U.S. ATTORNEYS' clients and none for "target;"

7) MECHAM and OFFICE failed to audit, failed to investigate, and failed to prosecute for waste, misuse, and abuse;

8) ASHCROFT failed to prosecute other defendants for crimes in the record after he had this information for at least 60 days;

9) Achieved goal: Dismissed by MAURICE M. PAUL, no hearings, no jury trial.

E) Fischer v. Stewart, et al No. 99-CV-7890 –

1) CLERKS entered JUDGES' illegal Orders at Docket numbers 2 and 3 – JUDGE Tevrizian overturned F.R.C.P.s to legislate, CLERKS put it into the record;

2) CLERKS failed to compute 8 "Answers Due By" as part of their "duties prescribed by law" at Docket numbers 4, 5, 6, 7, 8, 9, 10, and 11;

3) CLERKS entered 4 prohibited motions and third-party answers submitted by FIRMS from persons in default at Docket numbers 12, 16, 17, 18;

4) CLERKS accepted 3 alterations at Docket numbers 13, 14 and 15 as Rule 26 disclosures from FIRMS when they were not;

5) FIRMS submitted 7 prohibited motions and third-party answers;

6) CLERKS entered JUDGE'S illegal Order at Docket number 22 – recusals are assigned by Chief JUDGE, not by another judge;

7) CLERKS failed to perform duties as prescribed by law, which was to enter 8 Default Judgments on the court's own motion against defendants, who failed to answer the complaint;

8) CLERK entered prohibited "directed verdict" at Docket number 23;

9) CLERKS did 23 alterations of the numerical sequences of Docket from number 23 on through 46;

10) CLERKS entered 6 illegal JUDGES' Orders at 22, 23, 30 (changed case number), 36, 37 and 45;

11) JUDGES entered 8 Orders, Judgments, Findings and Recommendations on behalf of FIRMS' and U.S. ATTORNEYS' clients and none for "target;"

12) MECHAM and OFFICE failed to audit, failed to investigate, and failed to prosecute for waste, misuse, and abuse;

13) ASHCROFT failed to prosecute other defendants for crimes in the record after he had this information for at least 60 days;

14) Achieved goal: Dismissed with no hearings, no jury trial.

F) Hazlett v. County of Riverside, et al No. 99-CV-12982 –

1) CLERK altered Docket by putting number 52 before number 1;

2) CLERK violated the prohibition against practicing law, and struck "target's" First Amendment speech at Docket number 3;

3) CLERKS failed to compute 30 "Answer Due By" as part of CLERKS' "duties prescribed by law" at Docket numbers 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 48, 49 and 50;

4) CLERKS entered 7 prohibited motions and third-party answers submitted by U.S. ATTORNEYS and FIRMS from persons in default at Docket numbers 33, 34, 43, 44, 47, 56 and 59;

5) U.S. ATTORNEYS and FIRMS submitted 7 prohibited motions and third-party answers;

6) CLERKS did 45 alterations of the numerical sequence of Docket from number 37 on through 82;

7) CLERKS file-stamped Defaults by plaintiff dated Dec. 20 at the same time plaintiff filed other documents at Docket numbers 53, 54, and 55, but failed to enter 28 Defaults into the record as required by law,

8) CLERKS destroyed federal records by returning 28 defaults to plaintiff via the U.S. Mail between Docket numbers 56 and 57;

9) CLERKS entered 13 illegal JUDGES' Orders at nos. 35 (no Rule 16 hearing), 37, 42, 46 (changed case number), 57, 60, 61, 62, 63, 70 (JUDGE FEESS committed perjury on this Order), 80, 81 and 82;

10) JUDGES entered 13 Orders, Judgments, Findings and Recommendations on behalf of FIRMS' and U.S. ATTORNEYS' clients and none for "target;"

11) MECHAM and OFFICE failed to audit, failed to investigate, and failed to prosecute for waste, misuse, and abuse;

12) ASHCROFT failed to prosecute other defendants for crimes in the record after he had this information for at least 60 days;

13) Achieved goal: Dismissed with no hearings, no jury trial.

G) Martin v. Sandlin, No. 00-CV-97 –

1) CLERKS altered Docket and failed to compute "Answers Due By" as part of their "duties prescribed by law" at Docket numbers 3 and 4;

2) CLERKS entered 16 prohibited motions and third-party answers submitted by U.S. ATTORNEYS and FIRMS at Docket numbers 5, 6, 7, 9; entered prohibited motions and third-party answers submitted by U.S. ATTORNEYS and FIRMS from persons in default at Docket numbers 10, 11, 12, 14, 15, 22, 23, 26, 27, 28, 29, 30;

3) U.S. ATTORNEYS and FIRMS submitted 16 prohibited motions and third-party answers;

4) CLERKS entered 6 illegal JUDGES' Orders at Docket nos. 16, 21, 24, 36, 38 and 39;

5) JUDGES entered 6 Orders, Judgments, Findings and Recommendations on behalf of FIRMS' and U.S. ATTORNEYS' clients and none for "target;"

6) DOE CLERK "ljr" falsified the record at Docket no. 22, labeling it "JOINT STATUS REPORT" when it factually was not "joint," as in "between all parties in front of a judge in a courtroom;" was factually an admission of intent to file motions to dismiss as regards "government employees" and deny pre-trial settlement conference, while spelling out _Martin's_ claims to be dismissed as: "1st, 7th & 14th Amendments, Article III of U.S. Constitution, Title 18 U.S.C. §§ 1341, 1962 and 1964, Title 28 U.S.C. §§ 1343, and Title 42 U.S.C. §§ 1983 and 1985(3) relating to the Anti-Conspiracy Act of 1988." JUDGES aided and abetted, dismissed with prejudice _Martin's_ civil remedies at Docket no. 38, no hearings, no jury trial, not for publication. FIRMS told the JUDGE at Docket nos. 15 and 30, that _Martin's_ claims are should be dismissed because they are "too verbose and confusing," "all federal defendants are immune," retired, senior-citizen, property-owner

*Martin* "does not belong to a class that entitles her to Title 42 rights," and *Martin's* "concocted theories regarding (1st, 7th & 14th Amendments, Article III of U.S. Constitution, Title 18 U.S.C. §§ 1341, 1962 and 1964, Title 28 U.S.C. §§ 1343, and Title 42 U.S.C. §§ 1983 and 1985(3)) are "figments of her imagination." *Martin* was defrauded out of her money and rights;

7) MECHAM and OFFICE failed to audit, failed to investigate, and failed to prosecute for waste, misuse, and abuse;

8) ASHCROFT failed to indict other defendants;

9) Achieved goal: Dismissed with no hearings, no jury trial.

H) Hoog v. Frio County, et al, No. 00-CV-640 –

1) CLERK practiced law, did Article III JUDGE's duties, and assigned case to a magistrate;

2) CLERK entered illegal JUDGE'S Order at number 3, which dismissed this case in its entirety before any of the 68 defendants were served, appeared, or replied;

4) JUDGE entered 1 Order on behalf of government employees named in this suit;

5) MECHAM and OFFICE failed to audit, failed to investigate, and failed to prosecute for waste, misuse, and abuse;

6) ASHCROFT failed to indict other defendants;

7) Achieved goal: Dismissed with no hearings, no jury trial.

I) Phelps, et al v. Denton County Sheriff's, et al, No. 94-CV-18282 –

1) CLERK solicited participation with magistrate after Docket number 1;

2) CLERKS entered 9 prohibited motions and third-party answers submitted by U.S. ATTORNEYS and FIRMS from persons in default at Docket numbers 10, 11, 12, 13, 14, 20, 37, 45, 52;

3) U.S. ATTORNEYS and FIRMS submitted 9 prohibited motions and third-party answers;

4) CLERKS omitted to enter 6 Defaults into the record as required by law;

5) CLERKS entered 13 illegal JUDGES' Orders at Docket nos. 17, 22, 24, 25, 26, 27, 28, 39, 53, 55, 56, 57, and 58,

6) JUDGES entered 13 Orders, Judgments, Findings and Recommendations on behalf of FIRMS' and U.S. ATTORNEYS' clients and none for "targets;"

7) MECHAM and OFFICE failed to audit, failed to investigate, and failed to prosecute for waste, misuse, and abuse;

8) ASHCROFT failed to indict other defendants;

9) Achieved goal: Dismissed with no hearings, no jury trial.

261.    Defendants took money and received federal benefits under false pretenses while actively participating in a racketeering enterprise, which functioned to give false costs, fees, fines, judgments and sanctions the *appearance* of legally valid, and obstructed justice for the other participants doing theft under color of law, fraud and swindle.  Plaintiff demands that defendants explain their roles in betraying the trust placed in them by depriving the citizens of the United States of the honest services of a public official, which has destroyed business, hindered commerce, injured the U.S. economy, and which constitutes a highly sophisticated, widespread, consistent pattern of racketeering activity including the illegal use of force, fraud, and corruption.

262.    Two or more predicate acts were committed in each case and each courthouse, which constitutes a "pattern" of "racketeering activity."  Defendants directly or indirectly participated in an "enterprise," which was their illegal association with each other and the courts, the activities of which affected interstate or foreign commerce, as their "targets" were injured in their businesses and livelihoods.  18 U.S.C. § 1962 (a) – (c).

263.    Plaintiff demands that defendants ASHCROFT, MECHAM, OFFICE, DAVID J. MALAND, PAUL BROWN, MIKE BRADFORD, ANDREA HEDRICK PARKER, BENNET & WESTON, MATTHEWS CALTON STEIN SHIELS PEARCE DUNN & KNOTT, WOLFE CLARK HENDERSON & TIDELL, BRADY & COLE, GODWIN WHITE & GRUBER, LEA & CHAMBERLAIN, BECKWORTH & CARRIGAN LLP, SAYLES & LIDJI, WALD & ASSOCIATES, JACKSON & WALKER LLP and JENKINS & GILCHRIST, WILLIAM G. PUTNICKI, ORLANDO GARCIA, WILLIAM BLAGG, HAROLD O. ATKINSON, JACKSON & WALKER LLP, JENKINS & GILCHRIST, RHEA & RODMAN LLP, DECARLI & IRWIN, PAMELA MCGRAW, CHARLES S. FRIGERIO, LAW OFFICE OF CHARLES S. FRIGERIO, OFFICE OF THE ATTORNEY GENERAL FOR THE STATE OF TEXAS, CLEMENS &

SPENCER PC, CLEMENS & SPENCER, KEITH A. KENDALL, JONES KURTH &
ANDREWS PC, MATTHEWS & BRANSCOMB PC, AKIN GUMP STRAUSS HAUER &
FELD, STRASBURGER & PRICE LLP, PAUL ANDREW DRUMMOND SOUTHWESTERN
BELL TELEPHONE, THOMAS & LIBOWITZ PA, VICTORIA VALERGA, SOUTHERN
ANIMAL RESCUE ASSOCIATION INC., ANGELA DICKERSON NOBLE, ALLEN STEIN
POWERS DURBIN & HUNNICUTT, CHARLES B. GORHAM, BRIN & BRIN, LEMLER &
ASSOCIATES PC, LAW OFFICES OF FERNANDO RAMOS, SHERYL L. LOESCH,
RICHARD LAZARRA, PASCO COUNTY ATTORNEY'S OFFICE, OFFICE OF THE
ATTORNEY GENERAL FOR THE STATE OF FLORIDA CIVIL LITIGATION DIVISION,
DEBOISE & POULTON P.A., HOLLAND & KNIGHT LLP, LAW OFFICES OF JAMES
RICHARD HOOPER, P.A., MAURICE M. PAUL, PAUL MICHAEL BROWN, PATRICIA A.
WILLING, FOWLER WHITE GILLEN BOGGS VILLAREAL & BANKER PA, LAW OFFICE
OF NANCY M. PARHAM, NIX HOLTSFORD GILLILAND LYONS & HIGGINS PC, LAW
OFFICE OF JOSEPH M. DAVIS, CARRINGTON & CARRINGTON, HILLSBOROUGH
COUNTY ATTORNEY'S OFFICE FOR THE STATE OF FLORIDA, SHERRI R. CARTER,
GARY A. FEESS, LEON W. WEIDMAN, CREASON & AARVIG LLP, MARIA K. AARVIG,
KINKLE RODIGER & SPRIGGS, DONALD BEACHAM PAUL BROWN, DENTON
COUNTY CRIMINAL DISTRICT ATTORNEY'S OFFICE, McDONALD SANDERS PC,
CANTLEY & HANGER, GRIFFEN WHITTEN & JONES, HOPKINS & SUTTER, CULLUM
LAW FIRM PC, KIRKPATRICK & LOCKHART, TERRY A. GREEN, ELVIRA R.
MITCHELL, and COLEMAN A. SWART explain the following:

    A) Explain "anonymous complaint," and explain how the Humane Society and the Society
    for the Prevention of Cruelty to Animals (S.P.C.A.) became the fourth branch of
    government that could file charges "in the name of the People,"

B) Explain their interpretation of "writs of assistance,"

C) Explain how "grand theft of livestock," "transporting stolen property," "laundering stolen property," "forced veterinary/boarding services without a contract" is O.K. as long as it is called "rescue and adoption,"

D) Explain "their interpretation" of Notice and Hearing, posting a Bond, just compensation, and due process,

E) Explain their participation in the Humane Society's "vested interest" in getting "convictions for something" as evidenced by EXHIBIT G, FIRM'S recommendation on how "rescue groups" can avoid getting sued for invasion of privacy, theft of property, transporting stolen property, impersonating an officer, charities-fraud, racketeering, extortion, Sherman Anti-Trust, and commodities-tampering (all animals, their food, and their manure as defined in Title 7 U.S.C § 2)

F) Explain that "having too many or too much property" is a crime, and explain their theories to the Federal Trade Commission and the Internal Revenue Service, as "raising dogs, cats, and other animals" is listed on IRS Form 1040 Schedule C "small business," and other business or property owners are not yet prosecuted for "having too many," such as Bill Gates having and producing "too many computers," and Zacky Farms having and producing "too many frying chickens,"

G) Explain how the Animal Welfare Act does not apply to them or to the states,

H) Bring forward their Treaty with the Humane Society and S.P.C.A.,

I) Explain how the Humane Society could still be operating in their county, when it was declared a "domestic terrorist group" by the FBI in 1993,

J) Explain that they did not know that "theft of livestock and pets" was a crime as long as it was labeled "rescue and adoption," and

K) Explain their interpretation of Title 18 U.S.C. § 2311 "stolen property/livestock,"

L) Explain their interpretation of Title 18 U.S.C. § 2331 "international terrorism means activities that - (A) involve violent acts...; (B) appear to be intended - (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion;"

M) Explain that they did not know we are at war, and explain their interpretation of Title 18 U.S.C. § 2152 "The words 'war material' include arms, armament, ammunition,

livestock, forage, forest products and standing timber, stores of clothing, air, water, food... The words 'war premises' include all buildings, grounds, mines, or other places wherein such war material is being produced... The words 'national-defense material' include arms, armament, ammunition, livestock, forage, forest products and standing timber, stores of clothing, air, water, food... The words 'national-defense premises' include all buildings, grounds, mines, or other places wherein such war material is being produced..." and

N) Explain non-prosecution of the Humane Society, which was declared a "domestic terrorist group," see EXHIBIT H,

264.　Plaintiff demands that defendants ASHCROFT, MECHAM, OFFICE, SHERRI R. CARTER, TERRY J. HATTER, OFFICE OF THE CITY ATTORNEY FOR THE CITY OF ANAHEIM, COUNTY COUNSEL FOR THE COUNTY OF ORANGE, JACK WAGNER, WILLIAM B. SHUBB, KIRSTEN SUDHOFF DOOR, and ALESHIA M. WHITE explain the following:

A) Explain their interpretation of "false charges,"
B) Explain their interpretation of "bribe,"
C) Explain their interpretation of "perjury,"
D) Explain their interpretation of "jury trial demanded,"
E) Explain their interpretation of "racketeering and extortion."

### COUNTS for Violation of Title 18 U.S.C. § 1506 Theft or alteration of record or process; false bail.

265.　The allegations set forth in paragraphs 46, 114, 177, and 179 to 264 are incorporated herein by reference.

266.　CLERKS knowingly and willfully changed dates, numbers and sequences on Docket entries, entered illegal JUDGES' orders, illegal FIRMS' and U.S. ATTORNEYS' documents, and other pre-trial actions. CLERKS mailed Defaults and other records out of the building which is "destruction of a federal record," and omitted duties prescribed by law in

furtherance of the racketeering enterprise in violation of Title 18 U.S.C. § 1506, Title 28 U.S.C.

Rules 7 and 12. As part of the scheme, CLERKS entered abolished and prohibited pleadings and

demurrers as "solicitations" by FIRMS and U.S. ATTORNEYS, which procured Orders from

JUDGES, that voided due process, evaded prosecution for others, and/or granted collection of

fraudulent judgments for costs/unlawful debt in furtherance of the racketeering enterprise.

Defendants knowingly did it after H.R. Rep. No. 91-1549, 91st Cong., 2d Sess. 58, 187 (1970)

reprinted in 1970 U.S. Code Cong. & Admin. News, 4007, 4081 (in which the full House rejected

a proposal to create a complementary treble damages remedy for those injured by being named as

defendants in malicious private [RICO] suits).

### COUNTS for Violation of Title 28 § 955
### Practice of law restricted and UNITED STATES DISTRICT COURT CLERKS MANUAL (hereinafter referred to as CLERKS MANUAL, Chapter 1 Statutes Governing Court Officers and Employees, § 1.02 c. Restriction on Practice of Law

267. The allegations set forth in paragraphs 46, 114, 177, and 179 to 266 are

incorporated herein by reference.

268. CLERKS violated restrictions against practicing law in CLERKS MANUAL,

Chapter1, § 1.02 c and Title 28 USC § 955, by violating Article III and making judicial

determinations that illegal "papers or documents" complied with F.R.C.P.s, which were

erroneously filed, in furtherance of the racketeering enterprise.

269. CLERKS made judicial determinations that certain documents or papers "complied

with F.R.C.P.s and Rule 8(b)" and entered them into the record, when they were factually not

answers, in furtherance of the racketeering enterprise. CLERKS "practiced law" and made

"judicial determinations" that their duties as prescribed by law did not include scheduling hearings

and jury trials or entering Defaults, but were to do favors for FIRMS, U.S. ATTORNEYS and their

clients in furtherance of the racketeering enterprise. CLERKS violated restrictions against

practicing law in CLERKS MANUAL, Chapter 1, § 1.02 c and Title 28 USC § 955, and

knowingly and willfully violated 28 U.S.C. Rule 7 "There shall be a complaint and an answer . . .
no other pleadings are allowed."

270. JUDGES, U.S. ATTORNEYS and FIRMS had responsibility for control of the
pretrial process, let the CLERKS violate court procedures and rules, and failed to prevent or
correct abuse and misuse of the system in furtherance of the racketeering enterprise. ASHCROFT
failed to indict after he had this information for at least 60 days.

271. MECHAM and OFFICE had the duty and responsibility for auditing all Dockets to
prevent or correct abuse and misuse of the system, and failed to perform duties as prescribed by
law in furtherance of the scheme or artifice to defraud and the racketeering enterprise.

## COUNTS for Violation of Title 18 U.S.C. § 241 Conspiracy.

272. The allegations set forth in paragraphs 46, 114, 177, and 179 to 271 are
incorporated herein by reference.

273. CLERKS conspired with magistrates, JUDGES, U.S. ATTORNEYS, FIRMS and
their clients, who all misused and abused the pretrial process to injure, oppress, threaten, and
intimidate United States citizens ("targets") in the free exercise and enjoyment of rights and
privileges secured to them by the Constitution and laws of the United States. Defendants increased
the misuse and abuse against "targets" for exercising these rights and privileges by suing corrupt
city, county and state officials, see *Salinas, supra* (conspiracy is a distinct evil, dangerous to the
public and punishable in itself). No proof is required.

274. MECHAM encouraged CLERKS' falsifications, fraud, and omissions by not
auditing the dockets, and by not getting CLERKS prosecuted for crimes in the record. JUDGES,
U.S. ATTORNEYS and FIRMS encouraged these predicate acts by failing to report the conduct.

The pattern is same coast-to-coast, and is prima fasciae evidence of defendants' conspiracy. ASHCROFT failed to indict after he had this information for at least 60 days.

275.   CLERKS conspired with other defendants' abuse of the pretrial process, and denied "targets" of their rights granted by Congress by entering illegal documents, failing to enter defaults or schedule hearings and trials, in furtherance of the conspiracy to operate the courts as a racketeering enterprise in violation of title 18 U.S.C. § 241 in Brewer, et al v. Collin County, et al, No. 99-CV-256, Brown, et al v. Wilson County, et al, No. 97-CV-1473, Hardin v. Adams, et al, No. 00-CV-2443, Keim v. Cintra, et al, No. 00-CV-764, Fischer v. Stewart, et al, No. 99-CV-7890, Hazlett v. County of Riverside, et al, No. 99-CV-12982, Martin v. Sandlin, No. 00-CV-97, Hoog v. Frio County, et al, No. 00-CV-640, and Phelps, et al v. Denton County Sheriff's, et al, No. 94-CV-182. (more to come). *See United States v. Frega,* 179 F.3d 793 (9th Cir. 1999), footnote 21:

> "We agree with the dissent that under *Salinas* and *Tille* each individual defendant need not "commit or agree to commit *the two or more predicate acts requisite to the underlying offense." Salinas v. United States,* 522 U.S. 52, __ S.Ct. 469, 478 L.Ed.2d 352 (1997) (emphasis added); dissent at 821. In other words, in order to convict a defendant on a RICO conspiracy charge, our case law "does not require proof that [he] participated personally, or agreed to participate personally, in two predicate offenses." *United States v. Tille,* 729 F.2d 615, 619 (9th Cir. 1984); dissent at 821. Rather, as the dissent acknowledges, the conspiracy must contemplate the commission of two predicate acts by one or more of its members. Dissent at 820. Thus, the principles recited by the dissent are correct but irrelevant to the present dispute, which involves not whether each defendant agreed to participate personally in each predicate act, but what predicate acts the jury could properly find had been agreed to by the conspirators, regardless of which member might perform them."

276.   The record shows, and any jury could easily find, that defendants conspired and committed a minimum of two predicate acts each.

### COUNTS for Violation of Title 18 U.S.C. § 242
### Deprivation of rights under color.

277.   The allegations set forth in paragraphs 46, 114, 177, and 179 to 276 are incorporated herein by reference.

278. CLERKS and DOES, under the direction of MECHAM through OFFICE, conspired with JUDGES, U.S. ATTORNEYS, FIRMS and their clients to misuse and abuse the pretrial process to deny due process and commit deprivation under color of law of rights, privileges, and immunities secured or protected by the Constitution or laws of the United States in furtherance of the racketeering enterprise. The record shows the deprivation of hearings, trials and other rights in Brewer, et al v. Collin County, et al, No. 99-CV-256, Brown, et al v. Wilson County, et al, No. 97-CV-1473, Hardin v. Adams, et al, No. 00-CV-2443, Keim v. Cintra, et al, No. 00-CV-764, Fischer v. Stewart, et al, No. 99-CV-7890, Hazlett v. County of Riverside, et al, No. 99-CV-12982, Martin v. Sandlin, No. 00-CV-97, Hoog v. Frio County, et al, No. 00-CV-640, and Phelps, et al v. Denton County Sheriff's, et al, No. 94-CV-182. ASHCROFT failed to indict after he had this information for at least 60 days.

279. Plaintiff's rights were violated by defendants in the three predicate acts in 1993, 1999, and 2002.

### COUNTS for Violation of CLERKS MANUAL, Chapter 9, Exhibit 4

280. The allegations set forth in paragraphs 46, 114, 177, and 179 to 279 are incorporated herein by reference.

281. CLERKS violated Chapter 9, Exhibit 4 of Clerks Manual ORDER STRIKING PLEADINGS by failing to do duties as prescribed by law by not striking improper pleading under "Other" for not being an Answer, for incomplete service list, for solicitation of judgment or collection on unlawful debt, in furtherance of the racketeering enterprise.

282. CLERKS violated 18 U.S.C. § 241 by entering illegal documents, and denying victims/targets' rights granted by Congress in furtherance of the racketeering enterprise in Brewer, et al v. Collin County, et al, No. 99-CV-256, Brown, et al v. Wilson County, et al, No. 97-CV-

1473, Hardin v. Adams, et al, No. 00-CV-2443, Keim v. Cintra, et al, No. 00-CV-764, Fischer v.

Stewart, et al, No. 99-CV-7890, Hazlett v. County of Riverside, et al, No. 99-CV-12982, Martin v.

Sandlin, No. 00-CV-97, Hoog v. Frio County, et al, No. 00-CV-640, and Phelps, et al v. Denton

County Sheriff's, et al, No. 94-CV-182.  ASHCROFT failed to indict after he had this information

for at least 60 days.

### COUNTS for Violation of Title 28 USC  F.R.C.P. Rule 26. General Provisions Governing Discovery; Duty of Disclosure as amended 2000.

283.    The allegations set forth in paragraphs 46, 114, 177, and 179 to 282 are incorporated herein by reference.

284.    CLERKS knowingly participated, and willfully aided and abetted defendants' evasion of prosecution by entering illegal orders limiting and exempting disclosures in furtherance of the racketeering enterprise in order to void Title 28 U.S.C. Rule 26, Subdivision (a)(1), 2000 Amendment disclosure requirements in Brewer, et al v. Collin County, et al, No. 99-CV-256, Brown, et al v. Wilson County, et al, No. 97-CV-1473, Hardin v. Adams, et al, No. 00-CV-2443, Keim v. Cintra, et al, No. 00-CV-764, Fischer v. Stewart, et al, No. 99-CV-7890, Hazlett v. County of Riverside, et al, No. 99-CV-12982, Martin v. Sandlin, No. 00-CV-97, Hoog v. Frio County, et al, No. 00-CV-640, and Phelps, et al v. Denton County Sheriff's, et al, No. 94-CV-182. ASHCROFT failed to indict after he had this information for at least 60 days.

### COUNTS for Violation of Title 18 U.S.C. § 1341 as defined in § 1346. Definition of "scheme or artifice to defraud."

285.    The allegations set forth in paragraphs 46, 114, 177, and 179 to 284 are incorporated herein by reference.

286.    CLERKS took money from plaintiff and "targets" filing suit for state and federal crimes with knowing intent to deprive them of the intangible right of honest services/F.R.C.P. Rules 7(a), 8(b), 16(b), 26, and 38 hearing/jury trials in furtherance of the racketeering enterprise in Brewer, et al v. Collin County, et al, No. 99-CV-256, Brown, et al v. Wilson County, et al, No. 97-CV-1473, Hardin v. Adams, et al, No. 00-CV-2443, Keim v. Cintra, et al, No. 00-CV-764, Fischer

v. Stewart, et al, No. 99-CV-7890, Hazlett v. County of Riverside, et al, No. 99-CV-12982, Martin

v. Sandlin, No. 00-CV-97, Hoog v. Frio County, et al, No. 00-CV-640, and Phelps, et al v. Denton

County Sheriff's, et al, No. 94-CV-182.

287.    JUDGES, FIRMS, U.S. ATTORNEYS, MECHAM and OFFICE encouraged the

conduct by failing to prosecute crimes in the record as part of their duties, and by concealing

evidence of criminal wrongdoing by using prohibited pre-trial actions to obstruct justice.

ASHCROFT failed to indict after he had this information for at least 60 days.

### COUNTS for Violation of Title 18 U.S.C. § 1341 Frauds and swindles.

288.    The allegations set forth in paragraphs 46, 114, 177, and 179 to 287 are

incorporated herein by reference.

289.    CLERKS used the U.S. mail to "solicit and procure" participation with "bribed

magistrate," knowing that no magistrate consents, FORM 33 pursuant to Title 28 U.S.C. § 636(c),

were in the record. "Magistrate participation" was just one part of the scheme or artifice to

defraud, and for obtaining money or property by means of false or fraudulent pretenses and

representations in furtherance of the racketeering enterprise in violation of Title 18 U.S.C. § 1341.

*NOTE:* Magistrate jurisdiction is a nullity sans consent of all parties – *Galloway, supra, Barnett v.*

*General Electric Capital Corp.*, 147 F.3d 1321, (11th Cir. 1998).

290.    JUDGES, MECHAM, CLERKS and OFFICE, in conspiracy with U.S.

ATTORNEYS and FIRMS, covered up state crimes by abusing the pretrial process, and used the

federal facilities to uphold phony costs, sanctions, bills and judgments against their "targets" –

American citizens who were defrauded out of rights, money, assets, and the intangible right to

honest services.  Defendants submitted false claims to the United States for performing duties as

prescribed by law, while the record shows they failed to perform these duties.  State and local

government received federal money, also committed fraud and swindle, and are liable, title 18

U.S.C. § 666. ASHCROFT failed to indict after he had this information for at least 60 days.

291. Defendants' predicate acts and racketeering enterprise resulted in severe economic,

financial, health and job loss to plaintiff.

## COUNTS for Violation of Title 28 USC Rule 79 and
## CLERKS MANUAL), Chapter 15, § 15.03 Books and Record Keeping

292. The allegations set forth in paragraphs 46, 114, 177, and 179 to 291 are

incorporated herein by reference.

293. CLERKS failed to keep books and records and entries therein as prescribed by law

and, as an aid to other defendants, altered sequences, omitted entries, or gave FIRMS' and U.S.

ATTORNEYS' documents or pleadings a different name or title in violation of Title 28 USC Rule

79 and CLERKS MANUAL, CHAPTER 15, § 15.03, and in furtherance of the racketeering

enterprise in Brewer, et al v. Collin County, et al, No. 99-CV-256, Brown, et al v. Wilson County,

et al, No. 97-CV-1473, Hardin v. Adams, et al, No. 00-CV-2443, Keim v. Cintra, et al, No. 00-CV-

764, Fischer v. Stewart, et al, No. 99-CV-7890, Hazlett v. County of Riverside, et al, No. 99-CV-

12982, Martin v. Sandlin, No. 00-CV-97, Hoog v. Frio County, et al, No. 00-CV-640, and Phelps,

et al v. Denton County Sheriff's, et al, No. 94-CV-182.

294. JUDGES, FIRMS, U.S. ATTORNEYS, MECHAM and OFFICE encouraged the

conduct by failing to audit, and failing to prosecute crimes in the record as part of their duties.

ASHCROFT failed to indict after he had this information for at least 60 days.

## COUNTS for Violation of District Court Clerks Manual,
## Chapter 20, § 20.01 Attorney Admissions Procedures.

295. The allegations set forth in paragraphs 46, 114, 177, and 179 to 294 are

incorporated herein by reference.

296.    CLERKS failed to use the UNIX ICMS system or otherwise verify in the record

that attorney was (1) on the roll as being admitted to the bar, (2) was in good standing, (3) had a

photo I.D. card, (4) had paid the admission fee, (5) had a certificate of good standing, and (6)

actually represented that party.  The record shows CLERKS' "failure to do duties and obligations

required by law," as most "attorney appearance forms in the record" are missing, indicating that

CLERKS let anybody walk in, purport to be an attorney, and file erroneous or fraudulent papers

and documents in furtherance of the racketeering enterprise.  CLERKS violated District Court

Clerks Manual, Chapter 20, § 20.01 Attorney Admissions Procedures in Brewer, et al v. Collin

County, et al, No. 99-CV-256, Brown, et al v. Wilson County, et al, No. 97-CV-1473, Hardin v.

Adams, et al, No. 00-CV-2443, Keim v. Cintra, et al, No. 00-CV-764, Fischer v. Stewart, et al, No.

99-CV-7890, Hazlett v. County of Riverside, et al, No. 99-CV-12982, Martin v. Sandlin, No. 00-

CV-97, Hoog v. Frio County, et al, No. 00-CV-640, and Phelps, et al v. Denton County Sheriff's,

et al, No. 94-CV-182.

297.    JUDGES, FIRMS, U.S. ATTORNEYS, MECHAM and OFFICE encouraged the

conduct by failing to prosecute crimes in the record as part of their duties prescribed by law.

ASHCROFT failed to indict after he had this information for at least 60 days.

## COUNTS for Violation of Title 18 U.S.C. § 1920.  False statement or fraud to obtain Federal employee's compensation:

298.    The allegations set forth in paragraphs 46, 114, 177, and 179 to 297 are

incorporated herein by reference.

299.    The record shows that ASHCROFT, MECHAM, OFFICE, CLERKS, JUDGES,

U.S. ATTORNEYS, and DOES did not do their jobs, yet did submit false claims for doing jobs.

ASHCROFT failed to indict after he had this information for at least 60 days.  Defendants will

have to dispute plaintiff's claims by bringing forth proof they did their jobs – Rule 16 hearings

were scheduled and held, jury trials were held, Dockets were audited, "whoever" violated the law

was prosecuted and incarcerated, and that the Clerk's Manual and Title 28 U.S.C. F.R.C.P.s were

followed in Brewer, et al v. Collin County, et al, No. 99-CV-256, Brown, et al v. Wilson County,

et al, No. 97-CV-1473, Hardin v. Adams, et al, No. 00-CV-2443, Keim v. Cintra, et al, No. 00-CV-

764, Fischer v. Stewart, et al, No. 99-CV-7890, Hazlett v. County of Riverside, et al, No. 99-CV-

12982, Martin v. Sandlin, No. 00-CV-97, Hoog v. Frio County, et al, No. 00-CV-640, and Phelps,

et al v. Denton County Sheriff's, et al, No. 94-CV-182.  State and local governments receive

federal money, also committed fraud and swindle, and are liable, title 18 U.S.C. § 666.

### COUNTS for Violation of CLERKS MANUAL CH. 1, EXH. 2 Codes of Conduct - Title 18 USC § 1001. Statements or entries generally:

300.    The allegations set forth in paragraphs 46, 114, 177, and 179 to 299 are

incorporated herein by reference.

301.    CLERKS accepted and entered materially false, fictitious, or fraudulent papers,

motions and orders from FIRMS, U.S. ATTORNEYS and JUDGES.  CLERKS and DOES, under

the direction of MECHAM through OFFICE, used false entries to obstruct justice for their

"friends," cover up both their own criminal activity and the crimes of FIRMS, U.S. ATTORNEYS

and their clients doing racketeering, extortion, fraud and swindle under color in Brewer, et al v.

Collin County, et al, No. 99-CV-256, Brown, et al v. Wilson County, et al, No. 97-CV-1473,

Hardin v. Adams, et al, No. 00-CV-2443, Keim v. Cintra, et al, No. 00-CV-764, Fischer v. Stewart,

et al, No. 99-CV-7890, Hazlett v. County of Riverside, et al, No. 99-CV-12982, Martin v. Sandlin,

No. 00-CV-97, Hoog v. Frio County, et al, No. 00-CV-640, and Phelps, et al v. Denton County

Sheriff's, et al, No. 94-CV-182.

302.    JUDGES, FIRMS, U.S. ATTORNEYS, MECHAM and OFFICE encouraged the

conduct by failing to prosecute crimes in the record as part of their duties, and concealed evidence

of criminal wrongdoing by using prohibited pre-trial actions to obstruct justice and conceal it from the public. ASHCROFT failed to indict after he had this information for at least 60 days.

303. This pattern of predicate acts caused a total $453,000.00 loss by plaintiff, and caused untold loss, including loss of life, with the other victims of defendants' scheme.

## CONCLUSION

304. The law as written says that none of these things could have happened if defendants really had been "doing duties as prescribed by law." Defendants used the courts to violate clearly established law, submitted false claims, defrauded the American people, defrauded the United States, obstructed justice for others participating in tax fraud, corporate fraud, charities fraud, malicious prosecution, and other illegal criminal activity, which, taken as a whole, constitutes a highly sophisticated "racketeering enterprise" and a "domestic invasion against the United States." NOTE: Hitler likewise took over the courts, then punished (sanctioned) anybody who complained about Third Reich employees.

305. The overall pattern shows that defendants' scheme is consistent in these and many other cases. Another interesting note for the jury is defendants' blanket granting of "immunity" to corrupt local government employees and each other in knowing violation of the very laws defendants take Oaths to protect. Congress states that defendants do not have the option to "pick and choose" which laws they feel like enforcing, or to "make it up as they go along" to get each other "off the hook" after committing robbery, fraud and swindle "under color of official right."

306. Defendants have conspired to deny plaintiff of the economic benefit of qui tam relator's reward, by falsely asserting that Title 31 is also void in suits against corrupt government.

307. There must be accountability. No matter how many laws get passed, such as Federal Employee Accountability Act, Anti-Corruption Act, Anti-Kickback Act, National

Uniformity Act, the problem just gets <u>worse</u>.  Sooner or later, the American people will find out that here is yet <u>another</u> federal agency, OFFICE, which has just been taking money under false pretenses, and <u>not</u> doing their job, like the INS (the 911 attacks), SEC (Enron, Anderson Accounting) and FBI (missing palm pilots, guns sold to criminals, agents indicted for stock fraud, etc.).  But <u>none</u> of this would have happened if Congress's beautiful laws had been <u>enforced as written</u> with <u>no</u> cover-ups, and with <u>accountability</u> for <u>all</u> criminal activity.  Congress's legislative intent in Title 28 U.S.C., the F.R.C.P.s, Title 18 U.S.C., Title 31 U.S.C. or Title 41 U.S.C. <u>is</u> to hold defendants "<u>accountable</u> as prescribed by law."  Defendants cannot have it both ways.  If defendants and co-conspirators had "absolute judicial immunity," they would not be required to be Bonded and Insured.  Either the laws must be <u>enforced as written</u> to deter "organized crime" and corrupt conduct committed by "<u>whoever</u>," to reclaim our wonderful civic institutions and form of government, or else we can just shut down all state and federal courts, the Department of Justice, the Federal Bureau of Investigation, and the Administrative Office of the United States Courts, as nothing happens there except bribery and corruption.  Defendants have gotten each other to issue determinations in the federal records that the Constitution, statutes, Amendments, and Acts of Congress are "unintelligible gibberish," "figments of the imagination," "fail to state a claim," "do not apply in this case," "vexatious," or are "too verbose and confusing."  So those courthouses should be closed, save the American people's money, and put big signs on the doors: "<u>**No Civil Remedies Available Here!**</u>"

RELIEF DEMANDED

WHEREFORE, plaintiff prays for judgment, awarding her:

      A.     Immediate indictment and prosecution of all defendants, co-conspirators, and offenders.

B.      Immediate restraint of all prohibited racketeering activity pursuant to Title 18

U.S.C. Section 1964(a) Civil remedies by issuance of the appropriate orders, including, but not

limited to: ordering any person to divest himself or herself of any interest, direct or indirect, in any

enterprise; imposing reasonable restrictions on the future activities or investments of any person,

including, but not limited to, prohibiting any person from engaging in the same type of endeavor as

the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering

dissolution or reorganization of any enterprise, making due provision for the rights of innocent

persons.

C.      Relief for plaintiff and the other victims ("targets") pursuant to Title 18 U.S.C. §

1512, Section 2 of Pub.L. 97-291(b) and Section 6 of Pub.L. 98-473 consisting of arrest of the

accused persons, return of property belonging to the victims ("targets"), and due process, jury

trials, and injunctive relief for all the victims ("targets") as demanded in their Complaints;

D.      Civil penalties in the amount of one million dollars ($1,000,000.00) for each

wrongful act of the defendants;

E.      Treble damages, by multiplying the total awarded damages by three;

F.      An award to plaintiff of 15% to 25% of the proceeds of qui tam action under Title

31 U.S.C. § 3730(d);

G.      An award and relief to plaintiff for defendants' wrongful use of federal facilities for

criminal profiteering, and for obstruction of justice;

H.      Punishment of defendants under the USA PATRIOT Act of 2001;

I.      An award and relief to plaintiff for defendants' violation of the Anti-Corruption Act

of 1988, 18 U.S.C. § 1341, against plaintiff;

J.      Costs of this action under Title 31 U.S.C. § 3729;

K.      Reasonable costs, attorneys fees, expenses to plaintiff including Title 31 § 3730(d);

L.      A damn good <u>explanation</u> for all this from each defendant;

M.      Such other relief as is just and proper.

<u>CERTIFICATION OF ADMISSIBILITY, RULE 801</u>

308.    I, plaintiff Janet I. Fischer, plaintiff in the above entitled action, do swear under

penalty of perjury under the laws of the United States of America, that the foregoing is of my

personal knowledge, being true and correct, and admissible against <u>all defendants</u> to establish the

"existence of a civil conspiracy to use the courts as a racketeering enterprise, to use the courts to

establish and collect fraudulent liens, debts and judgments, to obstruct justice in order to evade

prosecution for co-conspirators doing fraud and swindle, to submit false claims, to deny qui tam

relator's reward, and to deny citizens due process rights pursuant to the 1997 Amendment of

Federal Rules of Evidence, Rule 801 et seq.

DATED this 1st day of August, 2002


Respectfully submitted,



Janet I. Fischer, plaintiff
17954-A S. Euclid Ave.
Chino, CA 91710
(909) 393-3610

# Exhibits in Support of RICO Claim

EXHIBIT A: Original report of fraud .................................... 11 pages

EXHIBIT B: Attorney "sucker" letter .................................... 1 page

EXHIBIT C: Brinkley docket & Death Certificate .................................... 4 pages

EXHIBIT D: "racketeering in Riverside judiciary" .................................... 3 pages

EXHIBIT E: LARSON admission letter .................................... 1 page

EXHIBIT F: PHILLIPS' minute order .................................... 2 pages

EXHIBIT G: FIRM'S "how to avoid prosecution" .................................... 1 page

EXHIBIT H: Humane Society Lollipop Farm's
"Adoption Partner Agreement and Contract and
"Due Process" chart .................................... 5 pages

EXHIBIT I: qui tam faceplate, PACER 3 other cases .................................... 2 pages

EXHIBIT J: Chapter 1 Clerks Manual .................................... 11 pages

EXHIBIT K: "Letter and Notice" .................................... 8 pages

EXHIBIT L: Lindh Leak, FBI Agents Indicted .................................... 4 pages

EXHIBIT M: SHERRI CARTER public notice .................................... 1 page

# Administrative Notice Received:

House Judiciary Committee
Subcommittee on Courts
Rayburn House Building, #B351-A
Washington, DC 20515

Hand - delivered morning
of Jan. 5, 2000
— Janet I. Fischer
Refused to sign for or st...

---

Department of Justice
950 Pennsylvania Ave. NW
Washington, DC  20530

Hand - delivered to D.O.J. mail
room. Put Administrative notice in
envelope addressed to Janet Reno
in big red letters
— from Janet Fischer

---

Department of Commerce
Fraud, Waste, and Abuse
14th & Constitution Ave. NW
Washington, DC



- UNITED STATES DEPARTMENT OF COMMERCE
OFFICE OF INSPECTOR GENERAL
OFFICE OF INVESTIGATIONS

GREGORY D. SEBBEN
SPECIAL AGENT

14TH ST. & CONSTITUTION AVE., NW
ROOM 7620
WASHINGTON, DC 20230
FAX: (202) 789-0522
TEL: (202) 482-0907

I, Janet I. Fischer,
personally handed Notice to ↗

---

U.S. Department of Agriculture
Assistant General for Fraud, Waste & Abuse
1400 Independence Ave. SW, Rm. 507A
Washington, DC 20026

Walked up to
Room 507A, was
recieved and
stamped.

X-RAYED

JAN 0 5 2000

JPS-PENN

Exhibit A pg. 1 of 11

JAN 5 9 56 AM '00
ASSISTANT
INSPECTOR GENERAL
FOR INVESTIGATIONS

1

TO:         .
Subcommittee on Courts
Rayburn House Building, #B351-A
Washington, DC 20515

TO: Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530

FROM: Janet I. Fischer
DATE: January 4, 2000

TO: Department of Commerce
Fraud, Waste, and Abuse
14th & Constitution Ave. NW
Washington, DC

U.S. Department of Agriculture
Assistant General for Fraud, Waste & Abuse
1400 Independence Ave. SW, Rm. 507A
Washington, DC 20026

## ADMINISTRATIVE NOTICE

I want Hearings on the corruption in our courts, and immediate investigation and criminal prosecution of persons committing commodities-fraud and tampering of both agricultural and non-agricultural commodities which is currently adversely affecting several industries worth over $180 billion per year.

The corruption begins on a state level as violent crime, with private individuals conspiring with government employees to conduct illegal searches and seizures. It progresses on to white collar corruption crimes in both state and federal courts, resulting in loss of property, loss of life, and "absolute immunity" being granted to the perpetrators.

Congress requires equal access and protection under the law, yet John Q. Citizen is denied access because judges take bribes to dismiss complaints, clerks falsify records, and criminal conduct is committed by officers of the courts, who operate them as racketeering enterprises in the same manner as articulated in *U.S. v. Frega*, 179 F.3d 793 (9th Cir. 1999), and *Salinas v. U.S.*, 118 S.Ct. 469 (1997) [attached]. The Clerk's acceptance of improper pleadings and falsification of court records constitutes part of the scheme or artifice to defraud, and constitutes embezzlement. Clerks are required to compute when each ANSWER is due and mail out Magistrate Consent Forms to all parties pursuant to Title 18 sec. 1506, and Title 28 sec. 26. Judges are required to demand that all defendants produce Documents within 20 days, and no other pleadings are allowed by Clerk or Judge until a Title 28, Rule 7(a) ANSWER has been filed with attached Affidavit. Violations of Title 28 and Title 18 is resulting in racketeering and extortion being conducted in the courts, and victims' claims against this criminal conduct are not being heard.

### DEMAND FOR CORRECTION WITHIN THIRTY (30) DAYS

One:   All the victims of animal enterprise terrorism and racketeering masquerading as "judicial due process" need to have Hearings before Congress, just as the IRS victims got their hearings, and hearings were held for Mr. Jewel and Mr. Weaver. Because right now, corruption and obstruction of justice in the courts is resulting in these cases NOT BEING HEARD IN THE COURTS AT ALL.

Two:   The Hearings will reveal that both state and federal employees committed CRIMINAL CONDUCT of theft under color of law, impersonating an officer, robbery, swindle, extortion, laundering stolen property, perjury, bribery, obstruction of justice, falsifying court records, embezzlement, racketeering, rape, kidnapping, cruel and unusual punishment, and interference with commerce resulting in destruction of life, property, and livelihoods. The perpetrators of these crimes must be charged and punished immediately to prevent future constitutional injuries.

Three: RESTRAINING ORDERS need to be enacted immediately against all S.P.C.A., Humane Society and other animal terrorist organizations and vigilantes to cease and desist the criminal

1

*Exhibit A pg. 2 of 11*

thefts under color of law, ill-concealed as "rescues." Right now these private corporations are operating without a license in violation of the Amendment to Title 7, sec. 2158 **Final Order July 23, 1993** and have been committing theft under color for almost 20 years since Title 18, sec. 3112 was repealed in 1981. Public or city ordinances and codes are used by public employees in conspiracy with private individuals as a racketeering scheme or artifice to commit crimes against private property in violation of rights of unlimited ownership of commodities protected by Acts of Congress. This criminal conduct is currently being upheld in our courts, which cover up these crimes by granting "absolute immunity" for the criminal conduct, and use "corruption" to get the victim's case dismissed.

Four:   Audit how the courts are using their time. Judges are not in the courthouse – the building is there, but the judge isn't doing anything. Two people are being paid to do one job – that of statutory judge. This is causing "trial by judge" instead of "trial by jury." Some judges are billing for holding hearings when no case was heard, and the building was EMPTY. This came out in *Sanders v. Union Pacific R.R. Co.* [attached] where, before he resigned the bench, Judge James Ideman said he was in the building when he wasn't, and billed Uncle Sam for hearings that were never heard. More PROOF of embezzlement of federal money can be found by comparing the enclosed Dockets – one done in accordance with F.R.C.P. with the clerk computing when Answer is due and when Magistrate Consent Forms are mailed, and the other, falsified Dockets, which omit Docketing duties required by law, leaving the cases wide open for criminal conduct. Let's not forget to AUDIT all those "courts of record" that don't keep any records, because this is EMBEZZLEMENT, too.

Five:   IMMEDIATELY require all pounds and shelters to be licensed with the Department of Agriculture pursuant to Amendment to Title 7, sec. 2158 **Final Order July 23, 1993,** Executive Order and Amendment to the Animal Welfare Act in 1993 **Random Source Cats and Dogs** with mandatory punishment for violating the Anti-Corruption Act of 1988. In 1992, Mike Espy was given $100 million to accomplish this licensing by August, 1993. WHAT HAPPENED TO THE MONEY? Licensing has not YET occurred, and right now we have DOMESTIC TERRORISM going on with state and federal employees in conspiracy with private corporations and individual vigilantes, committing robbery and other atrocities under color of law, and using the courts, both state and federal, as part of their scheme or artifice to swindle their victims out of property, and cheat them out of the intangible right to honest government services. This CRIMINAL CONDUCT is causing multiple constitutional injuries every day, with unlawful searches and seizures by private individuals/vigilantes being upheld in both state and federal courts with NO due process, and with no crime, no victim, and no complaint. Animals do not have Constitutional rights, people do. In the state of California, there is no "animal cruelty crime," but there are crimes for "theft of livestock," "theft of dog," "carrying off stolen property," "receiving stolen property," "interference with commerce," "embezzlement," "frauds and swindles," "false personations and cheats," "perjury," "racketeering," "obstruction of justice," "rape of a minor child," "grand theft," and "commodities-tampering."

Six:   AUDIT all pounds and shelters for non-reporting seized livestock and other property. Right now, stolen property is laundered in violation of state and federal evidence and forfeiture laws. Uncle Sam is completely cheated and by-passed in this criminal process. Demand that ALL pounds and shelters account for every chicken, dog, horse, book, tool, camera, gun, goat, shirt, bedroll, necklace, cat, frozen dinner, duck, money, truck, mouse, etc. seized in every raid.

Seven:   Cases coming out of the Supreme Court need to get treated with the same importance in the media as an automobile recall. For example, on December 13, 1992, we had *U.S. v. Good,* 114 S.Ct., 492. The decision was, that WARRANTS are to be used ONLY to preserve evidence of criminal wrong-doing, and were NOT to be used to unlawfully assert ownership and control over innocent property. Because if the public KNEW this, a lot MORE warrants would get

3          *Exhibit A pg. 3 of 11*

thrown out, just as they are getting thrown out after the fact in the over 3,000 police corruption cases that have surfaced recently in the Los Angeles Police Department.

## MY OPTIONS

Unless both the House Judiciary Committee, Department of Commerce, Department of Agriculture and the Department of Justice act expeditiously within 30 days on this unconscionable situation which, metaphorically, has gone WAY beyond a few Jews being sent to Hitler's "work camp," I will exercise my options to:

One:   Initiate Qui Tam proceedings under Title 31 as will all the other victims filing separately;

Two:   Go ahead with a movie contract to air an on-line documentary series, featuring a new victim of a vigilante raid and/or criminal judicial misconduct EVERY DAY, and let the American public be the "triers of fact." THIS IS A **PROMISE**, NOT A THREAT.

## DOMESTIC TERRORISM: PROFILE OF SOME CASES

ALICE HOLT, 11th Circuit, Tampa Florida. *Holt v. Hillsborough County*. Operated for 30 years as "Toyland," taxable income $250,000/year, and occupied an $800,000.00 building complex for puppies, dog breeding, breeder's supplies, and dog grooming. In 1997, she was raided by the local police and Sheriff, who handcuffed her and her diabetic daughter for 6 hours while they invited county employees and the public in to steal her entire inventory of 500 dogs including 37 AKC Champions. No warrant, no complaint, no victim, no probable cause. These dogs, valued at between $600 - $1500 each, were "donated" to the County by the state court, and sold off for $165.00 each. END RESULT: Alice Holt is disenfranchised, out of business, and the $800,000.00 building is sitting empty. Filed in the 11th Circuit, 117 defendants, Tampa, Middle District, Judge Henry Adams. Was told she failed to state a claim. Private attorneys conspiring with government employees obstructed justice by illegally soliciting and obtaining enough official acts to keep HOLT's case from being heard in district court for the last 3 years.

LINDA AND HENRY BRINKLEY, 11th Circuit, Florida. *Brinkley v. Flagler County*. In 1997, they were raided by police and private individuals, who stole 500 dogs - theft under color of law. No warrant, no complaint, no victim, no probable cause. After the perpetrators were granted "absolute immunity," the Brinkleys were thrown in jail for three months. Linda Brinkley was furloughed out each day to work in order to pay for Henry Brinkley's diabetes medication and his chemotherapy, as he is suffering from cancer. HENRY was denied medical treatment while in jail because he refused to disinherit his wife. END RESULT: The Brinkleys were disenfranchised, put out of business, and, because he received no treatment or medication while in jail, Henry Brinkley is now DEAD as a result of the raid, which was promoted by Reader's Digest as an "animal rescue." Linda Brinkley remains on permanent criminal probation ($40.00/month) because she refuses to sign over her land inherited from her deceased husband and refuses to sign over legal security known as "dogs" already sold by the County. Filed in 11th Circuit, Judge Nimmons is still sitting on the case. Before he was jailed and killed, Henry Brinkley suffered threats and harassment when defendants drove slowly past his house numerous times while his wife was at work, causing him to have a heart attack. Private attorneys conspiring with government employees obstructed justice by illegally soliciting and obtaining enough official acts to keep BRINKLEY's case from being heard in district court for the last 2 1/2 years.

JIM AND MARY PALMER – 9th Circuit, Klamath County, Oregon. *Palmer v. Klamath County*, 99-3089. Ex-police officer and veteran, who just had a liver transplant, in quiet enjoyment on his 10-acre ranch of personal property known as "livestock" and "pets" 18 Registered Arabian horses, 12 sheep, 1 Pedigreed breeding bull, and Sheltie dogs. March 1998, Palmers raided by the local Sheriff, who stole the 18 Arabian horses, 12 sheep, and the bull. No warrant, no

4

*Exhibit A pg. 4 of 11*

complaint, no victim, no probable cause.  Trial in state court resulted in full acquittal of all fabricated "animal neglect" charges, yet the seized horses, sheep and bull were sold to friends of the Sheriff and the Judge.  The Palmers filed in District Court in Medford, and were told they failed to state a claim.  They amended the complaint, and added Judge Mike Hogan, who responded with "absolute immunity."  The U.S. District Attorney responded that judges have absolute immunity.  Since he now had "absolute immunity," the Sheriff used perjured information to seize the Palmer's second-youngest daughter Christine, age 13, and had child protective services put her into foster care in his own home.  The Sheriff then raped her, and, because she ran away to the hospital to get medical help and told her father, the Sheriff caught her and shaved her head bald.  The Sheriff refused to file a Complaint against himself for having sex with a minor child.  The California courts granted grandmother guardianship of daughter. . City, county and federal employees allege "absolute immunity" to commit robbery, criminal trespass, kidnapping, rape, racketeering, impersonating an officer, interference with commerce by threats or violence, obstruction of justice, laundering stolen property over $500,000.00 worth livestock, and civil rights violations.  <u>END RESULT</u>:  The raped child, now 15, attempted suicide, as her whole life was raising, riding, and showing horses, which were stolen and not returned.  Youngest daughter Patty, now 13, also attempted suicide last week in despair over the situation.  The now disenfranchised Palmers are facing forclosure January 7, 2000.  No state compensation pursuant to 5th Amendment Takings Clause was offered for the 18 Arabian horses, 12 sheep and one bull.  "Form letter" mailed back from Orrin Hatch's office in response to PALMER's desparate pleas for help.  The Palmers are out of business, family broken up.  Private attorneys conspiring with government employees obstructed justice by illegally soliciting and obtaining enough official acts to keep PALMER's case from being heard in district court for the last 1 1/2 years in spite of new judge being assigned.

LINDA TIPTON SPEARS, 9th Circuit, Klamath County, Oregon.  *Spears v. Klamath County,* 99-3022.  Same defendants as the Palmers.  SPEARS was leasing farmland, in 1998 was raided by same perpetrators as Palmers, who seized all livestock including horses, chickens and ducks.  All stud fees ($1,500 per stud) were also seized.  No warrant, no complaint, no victim, no probable cause.  She was threatened and evicted, and is now homeless.  Filed civil action in District Court against same Palmer defendants including Judge Mike Hogan.  Case dismissed for failure to state a claim, and all defendants, public and private, told that they had absolute immunity.  After she received physical threats to her life by defendant Sheriff, SPEARS has disappeared and could be dead.  <u>END RESULT</u>:  Disenfranchised SPEARS is homeless, out of business, thousands of dollars stolen, livestock stolen and laundered/sold to friends of the Sheriff and judge claiming "absolute immunity."  Private attorneys conspiring with government employees obstructed justice by illegally soliciting and obtaining enough official acts to keep SPEAR's case from being heard in district court for the last year.

LINDA SHAMBLIN, 9th Circuit, Oregon.  *Shamblin v. Josephine County*, 99-3021.  Widow with 7 children.  In 1997, Sheriff seized all horses, cows, ducks, chickens and the ranch.  No warrant, no complaint, no victim, no probable cause.  SHAMBLIN and 7 children required to move into a 14-foot travel trailer.  Also filed in Federal Court in Medford, Oregon.  Judge Mike Hogan told her she failed to state a claim, case dismissed, livestock sold to friends of Sheriff and Judge.  Filed an appeal, appeal denied – lack of jurisdiction.  The now disenfranchised SHAMBLIN and children have disappeared because of threats to her life by local defendants.  Only contact is mother's answer phone; calls not returned.  Mother believes Sheriff will kill her and the grandchildren.  <u>END RESULT</u>:  SHAMBLIN and children vanished and feared dead, ranch and livestock gone.  Private attorneys conspiring with government employees obstructed justice by illegally soliciting and obtaining enough official acts to keep SHAMBLIN's case from being heard in district court for the last year.

*Exhibit A pg. 5 of 11*

DOROTHY ROBERTSON – Klamath Falls, owner of 55 horses. No warrant, no complaint, no victim, no probable cause. Horses seized by Sheriff, sold to his friends, ROBERTSON held up for ridicule in the community by Sheriff; lost her nursing license. END RESULT: Robertson and other disenfranchised animal enterprise owners in southern Oregon have been threatened with death, so they left the state.

"MR. JOHNSON" – up the street from PALMERS, Klamath County, Oregon. Sheriff and friends raided him, stole 55 head of cattle. "Mr. Johnson" too terrorized to file complaint.

MARJORY DUSO – 11th Circuit, Florida. *Duso v. Putnam County.* Naturalized Canadian living in the U.S. for 40 years; licensed real estate agent, age 74. In November 1997, was raided by Putnam County Sheriff and the Humane Society in a warrantless search and seizure. No complaint, no victim, no probable cause. Was held at gunpoint for 8 hours while 42 dogs, valued at $300-$1,000 each were seized and stolen by county employees and private corporation personnel. Filed in District Court. State court ruled, pursuant to *Fuller v. Vines,* that it was unlawful per 4th Amendment to steal a dog and immunity gets stripped away, yet Judge Nimmons of 11th Circuit Court disenfranchised DUSO by aiding and abetting perjury, racketeering, extortion, and robbery by giving DUSO's dogs to Vickie Caldwell, private citizen committing theft and receiving stolen property. Private attorneys conspiring with government employees obstructed justice by illegally soliciting and obtaining enough official acts to keep DUSO's case from being heard in district court for the last 2 1/2 years.

GLENDA BRUNETTE, 9th Circuit, Ventura County, California. *Brunette v. Ventura County.* In 1995, a warrant was issued to private individuals to enter and seize property on 13-acre avocado ranch that "might" relate to "animal cruelty." No complaint, no victim, no probable cause. BRUNETTE, a widow whose husband died in a helicopter accident, was handcuffed on her property in front of her children and granddaughter and transported to jail. County employees and private citizens entered and seized/stole 42 cats. These cats were Bengals purchased nationwide for $800-$3500 each, current market value $8,000.00 per cat. Also seized were 2 dogs valued at $400.00 and $600.00, and 12 ducks for personal food consumption. BRUNETTE paid private attorney Henry J. Rossbacher of *Berger v. Hanlon* fame $80,000.00, who filed in District Court. Judge Dickran Tevrizian dismissed for failure to state a claim, and declared absolute immunity for Humane Society, even though warrants to seize animals, birds or eggs have been ILLEGAL since 1981 when Title 18, sec. 3112 was repealed. Rossbacher filed with the 9th, who reversed Tevrizian and removed him. Judge Carter assigned, who reversed the 9th Circuit, granted immunity and dismissed all claims against media, county, and non-profit corporations. Case currently on its way back to the 9th. END RESULT: Not even one of the best attorneys in the U.S. could "make it" past the corruption in order to get a case heard and to a jury trial to let BRUNETTE's peers be the "triers of fact." Private attorneys representing and conspiring with government employees obstructed justice by illegally soliciting and obtaining enough official acts to keep BRUNETTE's case from being heard in district court; now BRUNETTE has been disenfranchised and stripped of her property, assets, and her livelihood.

ANNE MILLER & JANET FISCHER – 9th Circuit, Los Angeles and Riverside Counties, California. *The People of Calif. v. Miller.* Joint animal enterprise owners in partnership for 3 years in production of pedigreed, exotic fowl for exhibition and for food consumption. Foundation brood cock 1987 National Champion. In 1992, raid by local government and private vigilantes resulted in theft of pedigreed exotic fowl valued at over $100,000.00. No warrant, no complaint, no victim, no probable cause. Chief vigilante Endel Jurman told MILLER "We haven't decided to charge you with anything yet based upon how cooperative you are." MILLER called S.P.C.A. next day, was told to pay $200.00. MILLER agreed in a letter to them only if they told her where they got their authority to charge $200.00, what was the money for, and what crime did she commit, otherwise it looked like extortion to her. Next week, she

6   *Exhibit A pg. 6 of 11*

received, through the U.S. Mail, an unsigned "complaint" consisting of 167 fabricated "animal cruelty" charges. Went "through the hoops" in state courts to get these ridiculous charges dropped; all state courts upheld grand theft under color of law, fabricated charges, violation of federal law, and state judge Terry A. Green presented her with a $35,270.00 "food, board, and veterinary care" bill for 3 ½ months' care for 11 chickens and 41 rabbits seized out of her back yard. Next raid orchestrated in 1993 to steal the rest of the legal security known as "fowl," inventoried on the previous raid. MILLER was held at gunpoint for 6 ½ hours while her house was ransacked, and was jailed for 35 days with NO BAIL – a situation which is normally reserved for rapists and murderers; FISCHER was raided and threatened twice, received 5 death threats in 1993, was ignored by Riverside Assistant District Attorney, police, and all politicians, who mailed "form letters" thanking FISCHER for "sharing her feelings." <u>END RESULT</u>: Both the now-disenfranchised MILLER and FISCHER are out of business, lost their business, houses, cars, jobs, lost over $100,000.00 of their estates thanks to corruption in the courts, mail fraud, fabricated charges, impersonating an officer, grand theft, extortion, interference with commerce, racketeering, criminal trespass, civil rights violations, kidnapping, false arrest, obstruction of justice, and threat and intimidation of a victim/witness in a racketeering case. MILLER'S case up on Appeal in State court; FISCHER's case dismissed in state court after key witnesses poisoned, threatened, paralegal received death threat, one witness dropped dead. FISCHER notified all local D.A., Sheriff, Attorney General, NOTHING DONE except a visit from D.A. Investigator Bernie Skiles to threaten and intimidate FISCHER, who was very clear about notifying him of the racketeering going on in Los Angeles, Riverside and San Bernardino Counties. Case hasn't been heard in state court for 6 years; not yet filed in District Court.

MARGARET AND PATRICK WEEMS – 9th Circuit, Topanga, California. *Weems v. County of Los Angeles.* 1998 two warrantless searches and seizures involving police and private individuals both on her private ranch located 1 mile off the main road and at her place of business at the Topanga Mall resulting in the theft of 2 burros sold to friends of the Sheriff. No warrant, no complaint, no victim, no probable cause. Filed in District Court, was told that she failed to state a claim. Defendant government employees and private vigilantes granted absolute immunity to commit criminal trespass, interference with commerce, theft, and hold her blind husband at gunpoint. <u>END RESULT</u>: Weems is disenfranchised and put out of business, and her pet shop "Angelpuss" is closed down. Private attorneys conspiring with government employees obstructed justice by illegally soliciting and obtaining enough official acts to keep WEEMS' case from being heard in district court for the last 2 years.

MARJORY PHELPS, 1991, 5th Circuit Texas. *Phelps v. Denton County.* Was raided by police and private individual terrorists, had 60 dogs outright stolen. No warrant, no complaint, no victim, no probable cause. Filed in Federal court; was told she failed to state a claim, case dismissed by Judge Paul Brown, who also grants immunity to private persons and public employees committing theft. Private attorneys conspiring with government employees obstructed justice by illegally soliciting and obtaining enough official acts to keep PHELPS' case from being heard in district court for the last 9 years.

ALAN AND LOIS BROWN, 5th Circuit, Texas. *Brown v. Wilson County.* In January of 1997, Sheriff allowed 75 County employees, media and private persons to enter and steal over 100 dogs and 1 dozen cats. No warrant, no complaint, no victim, no probable cause. Prior to this atrocity, the Browns owned their ranch free and clear, and had an annual taxable income of between $40,000.00 and $80,000.00. Now they no longer own the land they occupy in order to pay the $30,000.00 non-refundable fee to file in federal court. END RESULT: The Browns are effectively disenfranchised and out of business; they grossed $16,000 last year – barely enough to get by with their children and grand-children. Private attorneys representing and conspiring with government employees obstructed justice by illegally soliciting and obtaining enough

7       Exhibit A   pg-7of 11

official acts to keep BROWN's case from being heard in district court for the last 3 years. Alan Brown FED UP [see attached "Line in the Sand"].

BRENDA BREWER, 5th Circuit, Texas. *Brewer v. Collin County.* Lived on her ranch for 60 years with her diabetic husband; farmed 80 head of cattle. In 1997, was raided by Sheriff, county employees, and "animal activists/terrorists," who stole 14 head of cattle. More cattle would have been stolen, but another concerned citizen telephoned Judge Paul Brown, telling him he would be sued, so the orchestrated robbery stopped at 14 head. END RESULT: Fourteen cattle still gone, no compensation, BREWER sued in 1999, and was told she failed to state a claim, case dismissed. Judge Paul Brown dismisses all cases alleging "impeachable and criminal conduct" and "federal crimes" committed by public employees in conspiracy with private corporations/individuals committing theft.

WESTFALL, 5th Circuit, Texas. *Westfall v. Ellis and Navarro Counties.* Same defendants as BREWER; 350 head of cattle stolen, no warrant, no complaint, no victim, no probable cause. Case was resolved with sealed settlements – Judge Paul Brown was bribed so that the racketeering enterprise could continue, which it did – see BREWER and BROWN.

MYRA HAZLETT, 9th Circuit. *Hazlett v. Riverside County.* In 1997, no charges ever filed against her, yet she was dragged into state court, incarcerated, tortured, and fined over $11,000.00 for "public nuisance infraction" of keeping yard-sale items on her front porch for more than 3 months when a botched dental surgery resulted in her spending 10 days in intensive care, and 4 months' rehab in out-patient. Filed in District Court after local Animal Control and county employees committed "break and enter" when she wasn't home in order to inventory her legal security known as "calves, fowl, pigs and goats," which they threatened to "impound" unless she agreed to warrantless "inspections." City of Norco then billed her $950.00 for the "inspections" done with no warrant, no complaint, no victim, no probable cause. Judge Robert Timlin told her she did not state a claim. She was threatened by local defendants to the point where she had congestive heart failure, and spent 2 days in intensive care. Private attorneys answering for defendant city and county employees alleged "judicial immunity;" federal Judge Robert Timlin agreed, ordering HAZLETT to amend her complaint and remove all the racketeering, fabricated charges, extortion, fraud, swindle, false impersonations and cheats, kidnapping, interference with commerce, and obstruction of justice charges, and for her to only allege "civil rights" violations, which effectively told HAZLETT she has no First Amendment right in TIMLIN's court, and if she followed his coercion in amending her Complaint, it would end up with all the teeth drawn out of it. END RESULT: $350,000.00/year taxable income now reduced to $60.00 a month; the HAZLETT small livestock enterprise is disenfranchised/out of business. Private attorneys conspiring with government employees obstructed justice by illegally soliciting and obtaining enough official acts to keep HAZLETT's case from being heard in district court for the last 6 months.

MARLENE PETERS 9th Circuit, Riverside County, California. In 1998, was raided by local Animal Control. No warrant, no complaint, no victim, no probable cause. Forty miniature horses were stolen; PETERS was told by state Commissioner that her record would be wiped clean of all (fabricated) charges if she would just sign over ownership of legal security defined in Title 18, sec. 2311 "document evidencing ownership" of "livestock" meaning any domestic animals raised for home use, consumption or profit, such as PETERS' mini-horses. She refused, got a public defender, yet was disenfranchised and lost all her horses, donated by the county to private individuals/vigilantes who sold horses to other persons who participated in the robbery and received stolen goods before PETERS' appeal was filed. END RESULT: Marlene Peters lost her lifelong dream, and now helps animal terrorist vigilantes to target and rob other animal enterprise owners. The robbed and terrorized person has now become the robber and terrorist.

*Exhibit A pg. 8 of 11*

RICHARD FISCHER, 9th Circuit, California. *Fischer v. Stewart, et al, including Orange County.* Not an "animal enterprise" case, yet experienced <u>the same pattern of corruption and racketeering activity in the courts</u> on a traffic case – state consolidated courts of record receiving funds from both the state and the federal government, and not keeping records. Both state and federal judges upheld criminal conduct committed by private attorneys and government employees – extortion, impersonating an officer, falsifying court documents, violation of due process, embezzlement, bribery, operating the court as a racketeering enterprise, and obstruction of justice. Filed in district court in August 1999, court clerk allowed improper pleadings from defendants' attorneys, case dismissed in November for failure to state a claim, now in the 9th circuit on appeal. Private attorneys representing and conspiring with government employees obstructed justice by illegally soliciting and obtaining enough official acts to keep FISCHER's case from being heard in both state and district court for the last 8 months.

## TRICKLE DOWN . . .

There are laws protecting citizens' rights in the Constitution, all the Amendments, and as codified by Congress in all the law books as published by Westgroup, such as Title 18, Title 7, Title 28, the Constitution, Title 42, and Title 31. There are Supreme Court and Circuit Court decisions, which also protect citizens' rights to privacy, ownership, property, and engagement in commerce. Right now, we do not have these laws and procedures filtering down to state and federal employees. *Wilson v. Layne,* a U.S. 1999 Supreme Court case, stated that <u>as of 1993</u>, it is clearly established law that police officers, state or federal, violate the 4th Amendment when they invite 3rd party media or private persons along for searches and seizures. Warrants issued to seize animals, birds or eggs were <u>abolished</u> way back in 1981 when Title 18 sec. 3112 was <u>repealed</u>. Title 18 sec. 3105 spells out who may <u>or may not</u> execute a search warrant, enacted 1948. *Fuller v. Vines* states that since 1991 there is no immunity for stealing a dog. No immunity, judicial or otherwise, granted          and covering up criminal conduct according to *U.S. v. Frega,* 179 F.3d 793 (9th Cir. 1999), *Salinas v. U.S.,* 118 S.Ct. 469 (1997), *In re Grand Jury Proceedings,* 87 F.3d 377 (9th Cir. 1996), the Anti-kickback Act of 1986, the Anti-Corruption Act of 1988, Title 18 Racketeering enacted in 1934, etc. (I could go on and on). <u>How long does it take for a law enacted in 1934, or 1993, or 1948, or 1986, or 1981, or 1996 to filter down to the courts?  How is it that nobody got the word that since 1981 a warrant cannot be issued to seize an animal, bird or egg?</u>  How is it that nobody got the word that theft, impersonating an officer, receiving stolen property, rape, interference with commerce, obstruction of justice, falsifying court documents, embezzlement of federal funds, and extortion to name a few were FELONIES?  Judge Fern Smith of San Francisco was appointed to oversee and train all the other 1,600 federal judges that receive 6-digit paychecks thanks to taxpaying citizens. Is anybody checking up on her to see if she's doing her job? Or, is she just collecting a paycheck, sitting back, and ignoring her duties as prescribed by Congress?

## FUNNY PAPERS . . .

<u>Westgoup's 1999 Edition of Title 18 Crimes and Criminal Procedure</u> is worded "Whoever in any way..." or "Whoever violates..." or "Any person who..."  At least that's the way I read it. It did not say, "Whoever in any way ... except the dog-catcher, the Sheriff and his vigilante friends, all state and federal judges and other government employees..." or "Whoever violates ... except the dog-catcher, the Sheriff and his vigilante friends, all state and federal judges and other government employees ..." or "Any person who ... except the dog-catcher, the Sheriff and his vigilante friends, all state and federal judges and other government employees..."  Yet government employees in the courts ARE treating it and the rest of the laws written by Congress like so much *funny paper* in order to keep on rubber stamping corruption, interference, with commerce, racketeering and tampering with commodities. This has got to STOP <u>**RIGHT NOW**</u>.

9     Exhibit A pg. 9 of 11

## INTERFERENCE WITH COMMERCE (Title 18 sec. 1951)

Dogs, cats, horses, fowl, goats, pigs, llamas, cattle, snakes, crickets, tropical fish, ostriches, etc. and their manure are defined in Title 7, sec. 2 as *agricultural commodities – "commodity"* meaning anything of value which can be traded or sold. Many laws protect our rights to engage in commerce, enjoy unlimited ownership, and derive unlimited economic benefit of our property, such as Title 7 sec. 2131 securing unlimited ownership of agricultural commodities and unlimited engagement in commerce. For example, each household pays approx. $30.00/month per dog for food, and $24.00/month per cat. The cat and dog food industry alone generates $31 billion a year; fish food alone is $8 billion a year, and "pet paraphernalia" such as leashes, dishes, books, pet toys, cages, etc. generates $151 billion a year. These industries are getting WIPED OUT by government employees conspiring with vigilantes because the laws written by Congress are just so much "funny paper" to them. And the robbed and destroyed animal enterprise owners, farmers and ranchers are HUMAN BEINGS, who are now disenfranchised.

## ADHERENCE TO ENEMIES OF THE UNITED STATES (Title 18, sec. 2381)

Americans in years past have fought many wars to preserve freedom and our way of life. Enemy ideologies, such as socialism, were seen as great threats to a free society, as they restricted or abolished ownership, and redistributed, regulated and controlled all wealth. A man could not keep and enjoy the fruits of his labor. It is a true axiom that those who do not remember the past are doomed to repeat it. Today, Americans forget that Hitler's regime used "animal rights" as political propaganda to distort the notion of "rights" and reduce Man's status to that of animals. This justified treating men like animals – before the war was over, the first nation to ban vivisection and declare that shoeing a horse was cruel had turned countless men, women and children into lampshades and soap. Today we see the same enemy ideology at work – vigilantes proclaiming "animal rights," acting in conspiracy with local government employees to restrict ownership, interfere with commerce by use of threats, fear and violence, tamper with commodities/food supply, and redistribute wealth. Isn't that why we fought the Nazis in WWII? Yet this criminal conduct is aided and abetted by judges in our courts, who grant "absolute immunity" to the perpetrators, thus making themselves accessories after-the-fact.

## THREAT TO NATIONAL SECURITY (Title 18, sec. 3592)

Our dwindling resource of farmers is being wiped out by vigilantes in government and private sectors committing racketeering and theft under color of law. Who will take the farmer's place and, by their own hard work, produce something out of nothing to feed our nation? What happens when the 3 million farmers dwindles down to zero, because Title 18 sec. 43 Animal enterprise terrorism is granted absolute immunity in our courts? "Enemy ideology" has infiltrated our civic institutions, falsified our notion of "rights" so that "government regulation and control of all wealth" with the aid of private vigilantes now enforces a "no ownership" policy upon us to the point where we can no longer keep and raise livestock, food or pets.

### 1780 - A TRIP IN TIME . . .

Imagine what a George Washington, Thomas Jefferson, or Phillip Payson would do if a band of dog-catchers, private citizens and the local Sheriff swooped down on his ranch, held him and his family at gunpoint, and stole his dogs, cats, horses, cattle, chickens, and goats.

### I THOUGHT . . .
### (WHAT'S GOOD FOR THE GOOSE IS GOOD FOR THE GANDER)

That if anyone commits robbery, they are immediately arrested and charged.

10   Exhibit A pg. 10 of 11

That if anyone receives stolen goods, they are immediately arrested and charged.
That if anyone commits criminal trespass, they are immediately arrested and charged.
That if anyone commits extortion, they are immediately arrested and charged.
That if anyone impersonates an officer, they are immediately arrested and charged.
That if anyone commits racketeering, they are immediately arrested and charged.
That if anyone files false charges, they are immediately arrested and charged.
That if anyone commits perjury, they are immediately arrested and charged.
That if anyone commits kidnapping, they are immediately arrested and charged.
That if anyone commits rape of a child, they are immediately arrested and charged.
That if anyone commits torture, they are immediately arrested and charged.
That if anyone falsifies court documents, they are immediately arrested and charged.
That if anyone covers up a crime, they are immediately arrested and charged.
That if anyone aids and abets crime, they are immediately arrested and charged.
That if criminal conduct results in death, they are immediately arrested and charged.
That if anyone commits treason, they are immediately arrested and charged.
That if anyone obstructs justice, they are immediately arrested and charged.
That if anyone tampers with commodities, they are immediately arrested and charged.

## EPILOGUE

Pursuant to Title 18 sec. 4 "whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both," I have now reported CRIMINAL CONDUCT in the state and federal courts, and INTERFERENCE/TAMPERING WITH COMMODITIES AND COMMERCE involving both public and private sectors. It is up to the House Judiciary Committee, Blaine Merritt, Department of Justice, Department of Commerce and the Department of Agriculture to take immediate action.

It would be so refreshing, just once, to get treated like any other good paying customer in the private sector would if there was a problem – with politeness and immediate attention to the problem instead of getting the "bum's rush."

This report probably won't get read by anybody. At the very least, I will have covered my bases by reporting RACKETEERING AND CRIMINAL CONDUCT and a new kind of DOMESTIC TERRORISM, so that when the CRIMINAL CHARGES are filed pursuant to Title 31 against persons committing these crimes AND persons covering them up, nobody in the above agencies can say, "Gee, we had NO NOTICE that all this was going on!"


Respectfully submitted,

*Janet I. Fischer*

Janet I. Fischer
17954-A S. Euclid Ave.
Chino, CA 91709
(909) 393-3610


encl.: Sanders, Salinas, Frega and Kalina cases; dockets: Brewer, Palmer, Fischer, Weems, Hazlett; CRTF letter, sanctions, Spears dismissal, Fischer and Brown letters, "Palmer package"

11   Exhibit A  pg. 11 of 11

### KEYSER & WOODWARD, P.A.

#### ATTORNEYS AT LAW

POST OFFICE BOX 92
501 ATLANTIC AVENUE
INTERLACHEN, FLORIDA 32148

TIMOTHY KEYSER, J.D.
MICHAEL W. WOODWARD, J.D., M.A., M.ED.

TELEPHONE 904-684-4673
FACSIMILE 904-684-4674

1 September 1998

Marjorie E. Duso
Post Office Box 1246
Welaka, Florida  32193

Dear Ms. Duso:

My appearance on your behalf today at the hearing on our motion for rehearing concludes my representation of you. The state court trial-level case is now complete, and I believe we have made a good record and preserved a number of issues for appeal. However, as you do not seem happy with my services, I will not be representing you in an appeal or any other matters in the future. I therefore advise you to retain another attorney as soon as possible.

As I have stated before, I believe your case should be both (1) appealed to a higher Florida court to determine, among other things, the constitutionality of Florida Statutes § 828.073, as written and as applied in your case, and (2) filed in federal court as a 42 U.S.C. § 1983 action. There is no guarantee of victory in federal court, and there will certainly be no quick and easy victory, so my advice is that you not give up your state court appeal option but rather that you pursue both avenues of redress.

Judge Parsons will sign a written order denying our motion for rehearing. (I will forward the order to you as soon as I receive it.)  The state court appeal has a 30-day deadline from the time Judge Parsons renders that written order. Your notice of appeal must be filed within that time period or your right to appeal will be lost. As I will no longer be representing you, I strongly advise that you make prompt arrangements with another attorney to handle the appeal as well as your federal court action. If you would care to have your new attorney contact me, I will provide him or her with any materials, background information, or other assistance that he or she may require.

I wish you much success in obtaining redress for the injustice that was done to you.

Sincerely,

Michael W. Woodward

Exhibit B pg. 1 of 1

Docket as of April 23, 2001 0:08 am                    Web PACER (v2.3)

# U.S. District Court

# Middle District of Florida (Jacksonville)

# CIVIL DOCKET FOR CASE #: 99-CV-260

## Brinkley, et al v. Flagler County, et al

Filed: 03/19/99

Assigned to: Judge Ralph W. Nimmons, Jr.
Jury demand: Plaintiff
Demand: $20,000,000
Nature of Suit: 470
Lead Docket: None
Jurisdiction: Federal Question
Dkt# in other court: None
Cause: 18:1964 Racketeering (RICO) Act

*Delayed Justice... no hearings no accountabili... C*

| | |
|---|---|
| HENRY BRINKLEY<br>plaintiff | Henry Brinkley<br>[NTC] [PRO SE]<br>5743 W. State Road 100<br>P.O. Box 1371<br>Bunnell, FL 32210<br>904/437-7933 |
| LINDA BRINKLEY<br>plaintiff | Linda Brinkley<br>[NTC] [PRO SE]<br>5743 W. State Road 100<br>P.O. Box 1371<br>Bunnell, FL 32110<br>904/437-7933 |
| v.<br>FLAGLER COUNTY, in its<br>municipal capacity<br>defendant<br>[term  03/01/00] | Victor M. Halbach, Jr.<br>[term  03/01/00]<br>[COR LD NTC]<br>Sonya Harrell Hoener<br>[term  03/01/00]<br>[COR LD NTC]<br>Marks, Gray, P.A.<br>1200 Riverplace Blvd., #800<br>P.O. Box 447<br>Jacksonville, FL 32201<br>USA<br>904/398-0900 |
| FLAGLER COUNTY HUMANE SOCIETY,<br>INC., in its corporate<br>capacity<br>defendant<br>[term  03/01/00] | John Stephen O'Hara, Jr.<br>[term  03/01/00]<br>[COR LD NTC]<br>Tina EckertNeinstedt Sweet<br>[term  03/01/00]<br>[COR LD NTC] |

*Exhibit C  pg. 1 of ...*

_defendant Humane society in default_

Proceedings include all events.                                           MOTR:
3:99cv260 Brinkley, et al v. Flagler County, et al          CLOSED
                                                                          HTS

6/15/99  56      REQUEST by Henry Brinkley, Linda Brinkley for entry of
                 Clerk's default as to Reader's Digest (ls)
                 [Entry date 06/17/99] [Edit date 06/22/99]

6/15/99  57      REQUEST by Henry Brinkley, Linda Brinkley for entry of
                 Clerk's default as to Mena Bustamante in her official and
                 individual capacity (ls) [Entry date 06/17/99]
                 [Edit date 06/22/99]

6/15/99  58      REQUEST by Henry Brinkley, Linda Brinkley for entry of
                 Clerk's default as to Flagler/Palm Coast (ls)
                 [Entry date 06/17/99] [Edit date 06/22/99]

6/15/99  --      Motion(s) referred: [58-1] request for entry of Clerk's
                 default as to Flagler/Palm Coast, referred  to Magistrate
                 Judge Howard T. Snyder (ls) [Entry date 06/22/99]

6/15/99  --      Motion(s) referred: [56-1] request for entry of Clerk's
                 default as to Reader's Digest, referred  to Magistrate
                 Judge Howard T. Snyder (ls) [Entry date 06/22/99]

6/15/99  --      Motion(s) referred: [57-1] request for entry of Clerk's
                 default as to Mena Bustamante, referred  to Magistrate
                 Judge Howard T. Snyder (ls) [Entry date 06/22/99]

6/15/99  59      APPLICATION by Henry Brinkley, Linda Brinkley for default
                 judgment by Clerk against defendant Flagler/Palm Coast
                 News-Tribune, Inc. (ls) [Entry date 06/22/99]
                 [Edit date 06/22/99]

6/15/99  60      APPLICATION by Henry Brinkley, Linda Brinkley for default
                 judgment by Clerk against defendant Reader's Digest
                 Magazine, Inc. (ls) [Entry date 06/22/99]
                 [Edit date 06/22/99]

6/15/99  61      APPLICATION by Henry Brinkley, Linda Brinkley for default
                 judgment by Clerk against defendant Mena Bustamante in her
                 official and individual capacity (ls). [Entry date 06/22/99]
                 [Edit date 06/22/99]

6/15/99  62      APPLICATION by Henry Brinkley, Linda Brinkley for default
                 judgment by Clerk against defendant Cindy Nerad in her
                 corporate and individual capacity (ls) [Entry date 06/22/99]
                 [Edit date 06/22/99]

6/15/99  63      APPLICATION by Henry Brinkley, Linda Brinkley for default
                 judgment by Clerk against Amy Wade in her corporate and
                 individual capacity (ls) [Entry date 06/22/99]

6/15/99  64      APPLICATION by Henry Brinkley, Linda Brinkley for default
                 judgment by Clerk against defendant Flagler County Humane
                 Society, Inc. (ls) [Entry date 06/22/99]

Docket as of March 14, 2000 12:36 pm                        Page 11

_Exhibit C pg. 2 of 4_

Proceedings include all events.                                          MOTR
3:99cv260 Brinkley, et al v. Flagler County, et al          CLOSED
                                                                        HTS

| 7/9/99 | 78 | (and) MOTION by Mena Bustamante with memorandum in support to dismiss official capacity claims (ls) [Entry date 07/15/99] |
| 7/19/99 | 79 | NOTICE OF FILING ORIGINAL AFFIDAVIT of Mina Bustamante by Mena Bustamante Re: [78-1] motion to set aside default (mfk) [Entry date 07/20/99] |
| 7/27/99 | 80 | MOTION by Reader's Digest with memorandum in support to quash service of process, and to set aside default referred to Magistrate Judge Howard T. Snyder (ls) [Entry date 07/28/99] |
| 7/28/99 | 81 | NOTICE of filing case management report (doc. 77 filed 7/9/99) by Flagler County (jec) [Entry date 07/29/99] |
| 8/4/99 | 82 | SUGGESTION of death upon the record under Rule 25(a)(1) by Flagler Cnty Humane, Amy Wade, Cindy Nerad (jec) [Entry date 08/06/99] |
| 8/9/99 | 83 | AMENDED CERTIFICATE OF SERVICE with respect to the Estate/Survivors of Henry Brinkley (mfk) |
| 9/3/99 | 84 | NOTICE of filing certificate of death of Henry Brinkley by Flagler Cnty Humane, Amy Wade, Cindy Nerad (ls) [Entry date 09/07/99] |

"Go against us, and you die." — Humane society.

Diabetes and heart medication witheld, because Henry Brinkley refused to sign over legal security defined in Title 18 sec. 2311. "dogs" to the "Humane" Society, who had him jailed on fabricated charges. Henry said, "I haven't done anything wrong— it is not a crime to own a dog." Humane Society failed to answer, was in default, & could only resort to killing Henry Brinkl[

Docket as of March 14, 2000 12:36 pm          Page 14

Exhibit C pg. 3 of 4

STATE OF FLORIDA

OFFICE of VITAL STATISTICS

CERTIFIED COPY

CERTIFICATE OF DEATH
FLORIDA

| Field | Value |
|---|---|
| First | Henry |
| Last | Brinkley |
| Sex | Male |
| Date of Death | July 29, 1999 |
| Social Security No. | 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 |
| Age | 70 |
| Date of Birth | December 25, 1928 |
| Birthplace | Packard, Tennessee |
| Armed Forces | No |
| Place of Death | Memorial Hospital | City: Ormond Beach | County: Volusia |
| Usual Occupation | Farmer | Self Employed | Married | Surviving Spouse: Linda Pethich |
| Residence State | Florida | County: Flagler | City: Bunnell | Street: W.Hwy. 100 |
| Inside City | No | Zip: 32110 | Race: White | Education: 12yrs |
| Father's Name | Henry Brinkley | Mother's Name: Lucy Bowman |
| Informant | Darla Brinkley | P.O. Box 1938, Bunnell, Florida 32110 |
| Method of Disposition | Cremation | Place: Tri-City | Daytona Beach, Florida |
| Funeral Facility | Coastal Cremation Service, Inc. 29 Old Kings Rd., Palm Coast, Fl32137 |
| License Number | KA 365 |

Date Signed: 7/6/?? | Hour of Death: 3:55 pm

Dr. Mitchell Weisberg, 1620 MaSON Ave, Ste.E, Daytona Beach,Fl. 32114

Cause of Death: Lymphoma

Autopsy: No

Not

*THIS IS A CERTIFIED TRUE AND CORRECT COPY OF THE OFFICIAL RECORD ON FILE IN THIS OFFICE

Carol L. Mederia CDR

AUG 2 6 1999

WARNING!
7981300

HEALTH

Exhibit C pg. 4 of 4

Civil Rights Task Force
Document Center
17954-A S. Euclid Ave.
Chino, Calif. 912709

Organized Crime Strike Force Unit
Special Agent Diana Parker
1400 United States Courthouse
312 N. Spring Street
Los Angeles, CA 90012

The Office of State Representative Rod Pacheco
State Capital Room 3104
Sacramento, CA 95814
(909) 319-2064, (916) 319-2064

RE: racketeering in Riverside judiciary

Dear Sirs,                                                            January 25, 1999

The Task Force has received documentation of a "racketeering enterprise" in the Riverside municipal court of Judge McIntire. The "profiteering enterprise," if prosecuted by the State, is pursuant to California Penal Code section 186 et seq.

The Task Force is obligated to report the unlawful conduct to the State Legislature and the United States RICO investigators (Title 18, sec. 4).The Task Force has great respect for the federal agents that prosecuted the judges and private attorneys in United States v. Frega in 1996; also, United States v. Maloney, 71 F.3d 645 (C.A.7 1995), cert. denied, 519 U.S. ___. 117 S. Ct. 295, 136 L.Ed.2d 214 (1996), see generally J Touhy & R. Warden, Greylord: *Justice Chicago Style* (1989). Maloney served as a judge from 1977 until he retired in 1990, and it appears he has the dubious distinction of being the only Illinois judge ever convicted of fixing a murder case. Before he was appointed to the bench, Maloney was a criminal defense attorney with close ties to organized crime, who often paid off judges in criminal cases. App. 54-56; 81F.3d 684, 686 (C.A. 7 1996) (Rovner, J., dissenting) ("[B]y the time Maloney ascended to the bench in 1977, he was well groomed in the art of judicial corruption"). Once a judge, Maloney exploited many of the relationships and connections he had developed while bribing judges to solicit bribes for himself. For example, Lucius Robinson, a bailiff through whom Maloney had bribed judges while in practice, and Robert McGee, one of Maloney's former associates, both served as "bag men" or intermediaries between Maloney and lawyers looking for a fix. Two such lawyers, Robert J. Cooley and William A. Swano, were key witnesses against Maloney in his trial. Maloney, supra, at 650-652. Maloney was convicted in Federal District Court of conspiracy, racketeering, extortion, and obstructing justice in April 1993. Quoting Supreme Court Chief Justice Rehnquist, see Bracy v. Gramley, 117 S. Ct. 1793 (June 9, 1997).

The victim of this "extortion scheme" is Marlene Petersen of 3538 Center Ave., Norco, Calif. 91760. On April 17, 1998, Norco animal control took 33 (all) of Petersen's miniature horses, including 5 mares in foal in violation of CPC 602.2, the Commerce Clause, and the Takings Clause in order to convert private property to public use to deprive the owner/victim of possession and the economic benefit of property employed in commerce; which deprives the victim of her Due Process rights secured by the Fifth and Seventh Amendments. The end result

Exhibit D page 1 of 3

was that Marlene Petersen was stripped of her livelihood, and her future livelihood. Judge McIntire appointed a "public defender attorney" to prosecute the victim on fabricated charges which kept changing as the months rolled on in order to retaliate and oppress her testimony against public employees committing robbery of citizens residing in the wealthier areas of Riverside County. The "related cases" seem to have a target goal of fraudulently conveying property owned by citizens as is the result in Los Angeles, Ventura, and San Bernardino Counties. The common denominator is either a humane society or animal control department or Title 18 U.S.C. section 43 "animal enterprise terrorism." The "stolen or seized property" (in this case, horses C.P.C. 487a felony theft of horse) is laundered through private corporations/humane societies to avoid the reporting requirements for the sale of stolen property or evidence embezzled from warrant seizures or warrantless seizures. By chance, the victim discovered that Norco Animal Control officers had buyers lined up for her horses before she even went to court - effectively making Judge McIntire and Norco Animal Control horse thieves.

The California legislature amended California Penal Code section 813 et seq. In SB 33 requiring compliance with the Fourth Amendment. To issue a Summons or arrest warrant, using the prescribed form section 814, requires the signature of a magistrate and a written request of the district attorney of the county or the Attorney General of the State. One million dollars ($1,000,000.00) was allocated to finance the extra duties of the Clerks of the county courts.

The Legislature practices "deliberate ignorance," has never verified compliance by the county, and will not, or do not, investigate citizen's complaints. California legislators and public employees are also well schooled in the art of judicial corruption and political corruption. Since the conviction of Senator Carpenter and the bribery conviction in United States v. Jackson, 72 F. 3d 1378 (9th Cir. 1996), "...no proof is required in a judicial bribery case other than the solicitation and completion of the act by a judge (pursuant to California Penal Code section 7); 'to do a favor' is the standard for principals and accessories (California Penal Code sections 30-31)." The documentation of People v. Peterson, supra, establishes "criminal conduct and favors given by a municipal court judge to private attorneys/parties." Federal Rules of Evidence rule 801 et seq. was amended in 1997 making co-conspirator's statements and conduct admissible to establish the existence of a "civil conspiracy" (Delew v. Wagner, ___ F.3d.___ 9th Cir. 1996).

The California Legislature is investigating the reported "civil rights violations" at Cororan State prison. The United States Justice Department indicted eight correctional officers since the ". . . alleged frivolous complaints of prisoners and surviving family members of prisoners killed were possibly valid . . ." The "cover up" was the causation of deaths and human rights violations which provided "standing" for the victims' families whose claims were initially rejected as "unworthy of consideration; i.e., frivolous." In history and hindsight, the "frivolous" tax protestors have at last been heard by Congress, resulting in the Internal Revenue Service Restructuring and Reform Act of 1998, H.R. 2676. The Ruby Ridge incident portraying the federal agents as "immune" from civil liability has also been corrected in history, truthfully disclosing that the agents made up their own laws and procedures to justify their murderous conduct; therefore, they have no "qualified immunity" for intentional violation of Kevin Harris' civil rights. Randy Weaver has testified before Congress and Kevin Harris has prevailed before the Ninth Circuit affirming that ". . . the jury shall be the trier of fact . . ." in Harris v. United States, et al.

Exhibit D page 2 of 3

The Task Force assures the victim that her valid claim must be rejected by the local government agencies before she has standing in the United States district court for a Civil RICO claim, and that the deprivations inflicted by those government officers predisposed to racketeering and civil rights violations continue to be documented and reach the "shocking to the conscience" level of outrageousness.

City of Norco Animal Control officers do not recognize "private ownership" or the Fourth Amendment; anything they can see or enter with their weapons is subject to their "control." The Legislature enacted California Penal Code section 602-602.2 requiring the written consent of the owner or agent of the owner to enter private property in California, which officers consider to be "their discretion." They "own judges" and can commit "extortion" without any fear of accountability. Citizens are required (milked) to pay whatever fine is determined by the municipal court judge based upon fabricated charges of "animal neglect" or risk imprisonment. In this victim's case, she was called into Judge McIntire's chambers, and told that if she relinquished ownership of her horses, that her record would be wiped clean. A clear-cut case of horse theft, extortion, and racketeering at the hand of Judge McIntire.

The Task Force will research these cases to get the names of all the participating co-conspirators, and those covering up the racketeering enterprise throughout the story line, as in Mahoney, supra, it will take years before the United States indicts. Like Cocoran State Prison, citizens must die or be subject to constitutional injuries before the remaining citizens will be free in their homes with the inalienable rights secured by the Constitution of the United States.

The Task Force will file Qui Tam, Title 31 United States Code, after all the actors are identified for acts or omissions committed in furtherance of the alleged racketeering enterprise which deprives citizens of rights, privileges or immunities secured by the Constitution of the United States or by Title 42 U.S.C. section 1983 and 1985 et seq.

The Task Force will not interfere with the racketeering enterprise, but will document the many twists and turns, and inquire from the actors/perpetrators just what their "statutory authority" might be and just what set of laws they are utilizing. The Task Force will make inquiries statutorily provided under Freedom of Information and California Government Code section 6254(f) to obtain "omissions admissible to establish civil conspiracy" and the "county's admission of deliberate decisions to deprive citizens of rights secured by the Constitution and encouragement of deliberate indifference to the rights of citizens they are compensated to serve and protect."

Your attention and intervention would be appreciated by the victim, herein Marlene Petersen in Riverside County. You now "have knowledge" and the statutory ability to prevent constitutional injury to this citizen of the United States.

Dated _Jan. 25, 1999_

_Janet I. Fischer_

Janet I. Fischer - Document Center Chino
Civil Rights Task Force
17954-A S. Euclid Ave.
Chino, Calif. 91709

cc. Peterson, Martin, Weems, Burnette, Phelps, Hershey

Exhibit D   page 3 of 3



U. S. Department of Justice

**United States Attorney**
**Central District of California**

Stephen G. Larson
Assistant United States Attorney
Chief, Organized Crime Strike Force
213-894-2434

United States Courthouse
312 North Spring Street
Los Angeles, California 90012

April 5, 1999

Janet I. Fischer
Document Center Chino
Civil Rights Task Force
17954-A South Euclid Avenue
Chino, CA 91709

Dear Ms. Fischer:

I have received your various letters concerning your allegations of "racketeering in the Riverside judiciary." I have forwarded your letters to the Federal Bureau of Investigation for further investigation.

If I become aware of any further developments in this matter, I will contact you. If you have any questions you can contact me at 213-894-2434.

Very truly yours,

ALEJANDRO N. MAYORKAS
United States Attorney

STEPHEN G. LARSON
Assistant United States Attorney
Chief, Organized Crime Strike Force

Exhibit E pg. 1 of 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES – GENERAL</u>

Case No.   EDCV 02-334 -VAP(SGLx)                    Date: July 9; 2002

Title:     SEAL 1, et al. -v- SEAL A, et al.

==============================================================

PRESENT:       HONORABLE VIRGINIA A. PHILLIPS, U.S. DISTRICT JUDGE

Rachel Ingram                          None Present
Courtroom Deputy                       Court Reporter

ATTORNEYS PRESENT FOR                  ATTORNEYS PRESENT FOR
PLAINTIFFS:                            DEFENDANTS:

None                                   None

PROCEEDINGS:     MINUTE ORDER DENYING RELATOR'S REQUEST AND
                 DEMAND TO SHORTEN DATE FOR MOTION TO UNSEAL
                 (IN CHAMBERS)

On April 17, 2002, Relator filed a Qui Tam Complaint under the False Claims
Act, 31 U.S.C. § 3729, et seq. on behalf of the United States Government.  Pursuant
to 31 U.S.C. 3730(b)(2), the Complaint was filed under seal.  On July 1, 2002,
Relator filed a First Amended Complaint under the False Claims Act.  The First
Amended Complaint also was filed under seal.

On July 2, 2002, Relator filed an "Ex Parte Request and Demand to Shorten
Date for Motion to Unseal."
//
//

MINUTES FORM 11                        Initials of Deputy Clerk _YI____
CIVIL – GEN              Page 1

Exhibit F pg. 1 of 2

Relator's Ex Parte Request is hereby DENIED.  Relator failed to provide Notice of the Ex Parte Request to the attorneys for Plaintiff United States of America.  See Local Rule 7-19.1.

Furthermore, in any future Ex Parte Request or Motion, Relator shall provide written authority why the First Amended Complaint, filed on July 1, 2002 (which supercedes the Original Qui Tam Complaint), shall not remain under seal for at least sixty (60) days pursuant to 31 U.S.C. § 3730(b)(2).

IT IS SO ORDERED.

Master plan for maliceous prosecution and property theft
Initiated by Humane Society Lawyers after the FBI reported
that the Humane Society was a "domestic terrorist group" in 1993.
Now used by code enforcement to get bogus liens against
property for later siezure. See FBI Report to Congress on
Animal Enterprise Terrorism @ www.findlaw.com or www.firstgov.
under "DOJ Reports"

### Collector suits plague humane groups

LOS ANGELES--The July 3, 1993 seizure of nearly 100 animals from alleged Los Angeles animal collectors Wayne and Barbara Chronister continues to have ramifications, as the Chronisters on July 30 of this year sued the Humane Task Force, the Pet Assistance Foundation, Last Chance for Animals, and 13 individual rescuers for purportedly defaming them and illegally depriving them of property.

At least one defendant, realtor Carole Ellis, promptly countersued for defamation and libel.

The rescue groups obtained warrants and raided when the Los Angeles SPCA and L.A. County Animal Control balked, expecting complications. Greenbrae attorney Larry Weiss, representing Ellis, cites the case as a textbook example of legal problems that arise in trying to prosecute collectors.

"Increasingly, collectors who have been deprived of their animals are suing the county that confiscated them or the individuals or organizations who took part in the operation," Weiss wrote in the Summer 1995 edition of *CHAIN Newsletter*. "On occasion they have even been able to persuade a credulous judge that they were indeed the victims and not the perpetrators of a crime. At the very least they continue to waste the time and scant resources of humane organizations."

Weiss' rules for avoiding such suits: "First, get a conviction for something. A misdemeanor is fine, but at least get something so you can put the defendant on probation. Trust me, probation is your only ace-in-the-hole with a collector. If you don't get a conviction, you are likely to be sued. Second, include a stipulation, as part of any plea bargain, that the defendant was the owner of all the animals seized. If you don't, then sure as Fatal Plus is blue, the brother, sister, or daughter is going to say 'These were my animals,' and produce a manufactured bill of sale to prove it. Third, contact the district attorney and the probation officer prior to sentencing and make sure intelligent conditions of probation are recommended," including surrender of all claim to confiscated animals; agreement that the defendant shall pay impound costs; a pledge that the defendant shall not threaten, abuse, annoy, harass, or molest anyone involved in the prosecution; and a pledge that the defendant shall have no other contact with anyone involved in the case.

As if to further underscore Weiss' points, Thomas Horvath, 46, of Matteson, Illinois, on October 17 sued the city for condemning his house on July 7 and seizing 31 cats from the allegedly feces-filled premises. Horvath claims 15 of the cats belonged to his sister in Arkansas.

### Other cases

John and Laurine Dimino of New York City have sued the American SPCA for $1,450,000 for allegedly euthanizing their 21-month-old Siberian husky in November 1994 without offering them a reclaim opportunity. The suit charges that, "The ASPCA's Staten Island facility and Brooklyn shelter, where the ASPCA transported the dog from Staten Island, were both closed to the public for the entire time that the dog was there."

Private no-kill shelter operator Pat Klimo of Ringwood, Illinois, on October 18 won more time to relocate the 80 animals she has at her home. Klimo was cited on May 13, 1994, for running an "animal care shelter" illegally in an area which does permit the maintenance of private kennels. Klimo was to have moved all the animals by October 2, but McHenry County judge Gerald Zopp said he'll need until November 28 to determine if the order is legally valid.

Exhibit G pg. 1 of 1

The Humane Society at Lollypop Farm recognize the benefits associated with networking with other animal protection agencies and individuals participating in breed-specific re-homing of companion animals. We also recognize the potential pitfalls in such networking. It is not appropriate or responsible for any animal shelter to release animals simply for the sake of saving their lives. We must be assured that the permanent placement of any animal will be in his/her best interest AND in the best interest of the adopter and the community. To maximize the benefits to the animals we are attempting to place, we have developed the following protocol for working with "placement partners" and "partner agencies."

**Definitions:**

Breed Placement Partners are individuals who seek to re-home unwanted, abandoned dogs or cats of a specific breed. Such partners must have written guidelines regarding placement policies and should be formally associated with some regional/national breed "rescue" agency.

Partner Agencies are established, not-for-profit animal protection organizations incorporated for the purpose of preventing cruelty to animals. Such agencies either have animal sheltering facilities or use "foster" or "haven" homes to house animals awaiting permanent placements.

In working with breed placement partners or partner agencies (hereinafter referred to collectively as "partners"), the Humane Society at Lollypop Farm will adhere strictly to the following policies:

1. Animals will be released from The Humane Society at Lollypop Farm to qualifying "partners" only as a last resort and when euthanasia would be the only other available option.

2. At all times the Humane Society at Lollypop Farm prefers and will encourage and entertain referrals of potential adopters from "partners."

3. Animals will be released to "partners" only at the discretion of the Executive Director of the Humane Society at Lollypop Farm or their designees.

4. Animals will be released only to individuals who have been approved and certified by a "partner" and by the Humane Society at Lollypop Farm. A listing of such individuals will be maintained and will be updated at least monthly.

5. All animals will be spayed/neutered, vaccinated and dewormed prior to release. Those services will be passed on to the "partner" at cost.

6. The "partner" must notify the Humane Society at Lollypop Farm of the name, address, telephone number(s), and any other pertinent information which applies to both the foster care provider AND the person(s) with whom the animal is ultimately, permanently placed.

7. The Humane Society at Lollypop Farm reserves the right to reclaim any animal from a "partner" or from a permanent placement if, in our opinion, the animal is improperly cared for, is at risk, or was released/adopted under false pretense.

8. The Humane Society at Lollypop Farm reserves the right to refuse to release any animal or to terminate our relationship with any "partner" we feel has not abided by our guidelines.

9. No pit bulls or pit bull type dogs will be released to any "partner."

10. No feral cats (i.e. unsocialized, "wild" cats) will be released to any "partner."

11. No animal that has bitten any person or attacked another animal in an unprovoked manner will be eligible for release to a "partner."

12. The Humane Society at Lollypop Farm will only work in cooperation with "partners" with whom a prior formal relationship has been established. The following qualifications must be met:

A. The "partner" must submit copies of written adoption guidelines/policies, adoption applications, adoption contracts, foster home qualifications, follow-up procedures, and two community references (at least one of whom must be a veterinarian).

B. Adoption requirements must be at least as stringent as those followed by The Humane Society at Lollypop Farm.

C. The Humane Society at Lollypop Farm reserves the right to inspect the premises upon which any released animal will be (or is being) housed (including foster homes).

D. The Humane Society at Lollypop Farm and "partners" will strive to best meet the needs of the animals by working together in an honest and collegial manner. To this end, "partners" shall appoint contact persons assigned to work with the Humane Society at Lollypop Farm.

For further information on becoming a Placement Partner or Partner Agency please call Gillian Hargave at Lollypop Farm, (716) 223-1330 ext. 257.

Exhibit H pg. 1 of 5

FROM : 000000000000          FAX NO. :          Jul. 13 2001 02:30AM  P1

## *Placement Partner Agreement*

Name of Organization: _____   Phone: _____

Address: _____

Main Contact: _____   Phone: _____

Address: _____

*If there is more than one contact, please attach additional sheet of paper with the appropriate information to this agreement.*

**I agree to abide by the policies set forth in this brochure and have enclosed all necessary documents needed to process this agreement.**

Signature of representative: _____   Date: _____

Humane Society at Lollypop Farm
99 Victor Road • P.O. Box 299
Fairport, N.Y. 14450
(716) 223-1330 • Fax: (716) 425-4183
Website: www.lollypop.org
Email: info@lollypop.org

*Exhibit H  pg. 2 of 5*

The Humane Society
at Lollypop Farm

Placement
Partner
Agreement

_____ ___ _____ COUNTY S.P.C.A. HAS INVESTIGATED THE
REPUTATION OF Rob _____ AND FIND HIM/HER TO
BE A VERY KNOWLEDGEABLE AND RESPECTED PERSON IN THE AREA OF
_____ HUSBANDRY    *(small rat snake, black rat snake, 1 gopher snake, 1 fox phase rat snake)*

AND WHEREAS THE _____ COUNTY S.P.C.A. FEELS THAT IT IS IN
THE BEST INTEREST OF THE ANIMAL TO BE PLACED IN THE TEMPORARY
CARE OF  Rob _____ SUBJECT TO ORDER OF THE
COURT.  THE PARTIES AGREE AS FOLLOWS:

1.    Rob _____ WILL TAKE FULL RESPONSIBILITY
      FOR THE CARE AND FEEDING OF THE reptiles AND WILL GET
      NO REIMBURSEMENT FROM THE _____ COUNTY S.P.C.A., THE
      FORMER OWNER OR ANY PARTY.

2.    Rob _____ AGREES TO RELINQUISH CUSTODY
      OF SAID ANIMAL AND RETURN TO THE _____ COUNTY S.P.C.A.
      SAID ANIMAL SHOULD THE COURT DECIDE THAT ANY PARTY
      BESIDES THE _____ COUNTY S.P.C.A. WILL BE AWARDED
      CUSTODY OF THE above reptiles. THE _____ COUNTY
      S.P.C.A. WILL BE RESPONSIBLE FOR SHIPPING COSTS RELATED
      TO TRANSPORTING THE ___ BACK TO ULSTER COUNTY S.P.C.A.

3.    IN THE EVENT THAT THE COURT AWARDS CUSTODY OF
      THE above reptiles TO THE _____ COUNTY S.P.C.A.,
      _____ AGREES TO SIGN THE STANDARD
      ADOPTION _____ OF THE _____ COUNTY S.P.C.A

SIGNED _____SIGNED _____

      ____ SPCA Cruelty Investigator


                                    Date: 10/12/95


AGREEMENT BY AND BETWEEN THE _____COUNTY S.P.C.A.
                                        ROAD
                                    , N.Y.
                                    AND
                            Richard _____

FOR IN CONSIDERATION OF $1.00 AND OTHER VALUABLE
CONSIDERATION THE PARTIES HERETO AGREE AS FOLLOWS:

WHEREAS THE _____ COUNTY S.P.C.A., on _____ did seize
4 rabbits, 4 ferrets, 3 tri-foxes, 5 prarie dogs + 2 flying squirrels
WHEREAS _____ HAS OFFERED TO CARE FOR
SAID ANIMAL AND FURNISH IT WITH FOOD, SHELTER AND CARE;

WHEREAS THE _____ COUNTY S.P.C.A. HAS INVESTIGATED THE
REPUTATION OF _____ COUNTY AND FIND HIM/HER TO
BE A VERY KNOWLEDGEABLE AND RESPECTED PERSON IN THE AREA OF
ANIMAL   HUSBANDRY

AND WHEREAS THE _____ COUNTY S.P.C.A. FEELS THAT IT IS IN
THE BEST INTEREST OF THE ANIMAL TO BE PLACED IN THE TEMPORARY
CARE OF _____ SUBJECT TO ORDER OF THE
COURT.  THE PARTIES AGREE AS FOLLOWS:

1.    _____ WILL TAKE FULL RESPONSIBILITY
      FOR THE CARE AND FEEDING OF THE above animals AND WILL GET
      NO REIMBURSEMENT FROM THE _____ COUNTY S.P.C.A., THE
      FORMER OWNER OR ANY PARTY.

2.    _____ AGREES TO RELINQUISH CUSTODY
      OF SAID ANIMAL AND RETURN TO THE _____ COUNTY S.P.C.A.
      SAID ANIMAL SHOULD THE COURT DECIDE THAT ANY PARTY
      BESIDES THE _____ COUNTY S.P.C.A. WILL BE AWARDED
      CUSTODY OF THE above animals. THE _____ COUNTY
      S.P.C.A. WILL BE RESPONSIBLE FOR SHIPPING COSTS RELATED
      TO TRANSPORTING THE ___ BACK TO _____ COUNTY S.P.C.A,
      above animals

3.    IN THE EVENT THAT THE COURT AWARDS CUSTODY OF

                                    *Exhibit H*
                                    *pg. 3 of 5*

# TO ANIMALS USING THE SYSTEMATIC APPROACH
# OVERVIEW OF THE CRIMINAL JUSTICE SYSTEM



Exhibit
pg. 4 of 5

nd jury indictment; often used in felonies,
   always in misdemeanors.

s government's evidence to determine if sufficient
   tify trial.  Some states have no grand jury system;
   seldom use it.

a    for plea; defendant elects trial by judge or
   if available); counsel for indigent usually appointed
   n felonies.  Often not at all in other cases.

   may be reduced at any time prior to trial in return
   .ea of guilty or for other reasons.

   nge on constitutional grounds to legality of
   :ion.  May be sought at any point in process.

10   Police often hold informal hearings and dismiss or adjust
     cases without further processing.

11   Probation officer decides desirability of further court
     action.

12   Welfare agency, social services, counseling, medical care,
     etc., for cases where adjudicatory handling is unnecessary.

Copyright © 1986 by Eric Sakach and Kurt Lapham, HSUS/WCHO



# A DIAGRAM FOR INVESTIGATING CASES OF CRUEL
## WITH A GENER

This chart presents a simple yet comprehensive view of the role of the investigator and the movement of cases through the criminal justice system. The scope of authority of humane agents and procedures in individual jurisdictions will vary from the pattern shown here. The relative volumes of cases disposed of at various points in the system is not indicated since no nationwide data of this sort exists.

COURT

**INVESTIGATION**

Necessary Information Gathered
1) Date and time complaint received and/or violation observed
2) Nature of complaint or violation
3) Location of subject animal(s) and occurrence
4) Name and address of owner and/or responsible party (suspect)
5) Date and time alleged offense occurred
6) Names, addresses, and phone numbers of:
   a) Complainant(s)
   b) Witness(es)
   c) Victim(s)
7) Special circumstances or other pertinent information

Visit to Location of Occurrence
1) View subject animal(s) and/or crime scene if legal vantage point
   a) Obtain search warrant if necessary
2) Contact owner and/or responsible party
   a) Obtain written consent to search
   b) Obtain search warrant if necessary

Examination of subject animal(s)
1) Animal(s) appear to be in satisfactory condition - no grounds for complaint
   a) Investigation concluded with report of findings and notification of complainant
2) Animal(s) appear to be in unsatisfactory condition - cause for complaint exists

**EDUCATION**

1) Animal neglect or suffering is a result of ignorance or thoughtlessness, and/or financial difficulty
   a) Provide owner with recommendations for proper care and attention (obtain veterinary assistance if necessary)
   b) Set reasonable time limit for improvements and issue written "notice to comply" form
   c) Reinspect at an appropriate later date to ensure compliance

**SURRENDER**

1) Educational efforts are unsuccessful or owner is unable to provide adequate care and attention
   a) Have owner surrender animal(s) and sign statement giving up all rights to the animal(s)

**LEGAL ALTERNATIVES**

1) Problem not covered under state or local anti-cruelty laws
   a) Civil action
   b) Zoning/health ordinances
   c) Federal laws

**PROSECUTION**

1) Animal cruelty or suffering is a result of criminal negligence or acts prohibited by law
   a) Citation or arrest of person(s) responsible
   b) Animal(s) taken into protective custody

■ FELONIES

■ MISDEMEAN

**ENFORCEMENT**                                      **PROSECUTION**

Crimes Observed by Law Enforcement

No Cause for Complaint or Unsolved

Released without Prosecution

Charge Dropped or Dismissed

| CRIME | → | 1 INVESTIGATION | CITATION/ARREST | 2 BOOKING | 3 INITIAL APPEARANCE | 4 PRELIMINARY HEARING |

■ INFRACTIC

Crimes reported to Law Enforcement

Release or Adjustment

■ JUVENILE

10 POLICE JUVENILE UNIT

Non-Police Referrals

THE HUMANE SOCIETY OF THE UNITED STATES

Exhibit H pg. 5 of 5

1  May continue until trial.

2  Administrative record of arrest. Stage at which temporary release on bail may be available.

3  Formal notice of charge(s) and rights before a magistrate, commissioner, or justice of the peace. Bail set. Summary trials for petty offenses (infractions) usually conducted here without further processing.

4  Preliminary testing of evidence against defendant. Charge may be reduced. No separate preliminary hearing for misdemeanors in some systems.

5  Charge filed by prosecutor on basis of information submitted by law enforcement or citizens. Alternative

6

7

8

9

10

FILED

Janet I. Fischer
17954.A S-Euclid ave.
Chino, CA. 91710
(909) 393-3610

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA   02 FEB 17 PM 4:19
WESTERN DIVISION

EDCV 02-    334    VAP SGLx

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. Under Seal, | ) Civil Action No.:_____ |
| | ) |
| Relator Under Seal | ) QUI TAM COMPLAINT |
| | ) |
| and | ) JURY TRIAL DEMANDED |
| | ) |
| United States Attorney General | ) Date Received:_____ |
| John Ashcroft | ) |
| 10th & Constitution Avenues, N.W. | ) Original Complaint filed UNDER SEAL pursuant to |
| Washington, D.C. 20530 | ) 31 U.S.C. § 3730(b)(2) |
| | ) |
| Plaintiffs | ) |
| | ) |
| vs. | ) |
| | ) |
| Defendants Under Seal | ) |
| and DOES 1-5000, | ) |
| Defendants Under Seal | ) |

Exhibit I
pg. 1 of 2

Case Selection Page

## Case Selection Page

| Case Number | Title | Filing Date | Last Updated |
|---|---|---|---|
| 2:02cr00334 | USA v. Sacdalan | 04/02/02 | 04/19/02 |
| 2:02cv00334 | USA v. Richard R Gehl | 01/14/02 | 01/17/02 |
| 8:02cv00334 | Martin Kornbloom v. Accton Comm, Erisa | 04/01/02 | 05/20/02 |

**There were  3  matching case number records found.**

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/22/2002 06:14:40 | | | |
| **PACER Login:** | in0140 | **Client Code:** | citizens against fraud |
| **Description:** | case search | **Case Number:** | . 02 .. 334 |
| **Billable Pages:** | 1 | **Cost:** | 0.07 |

*Exhibit* I
pg. 2 of 2

*District Court Clerks Manual*



# DISTRICT COURT CLERKS MANUAL

## Chapter 1
## CLERK OF COURT

§ 1.01. Statute Establishing the Office of Clerk
§ 1.02. Statutes Governing Court Officers and Employees
    a. Administration of Oaths
    b. Vacancy in clerk position
    c. Restrictions on Practice of Law
§ 1.03. Statutes Governing Custodians of Federal Funds or Property
§ 1.04. Local Rules, General and Standing Orders, and Standard Operating Procedures
    a. Local Rules
    b. General and Standing Orders
    c. Standard Operating Procedures
§ 1.05. Resolutions of the Judicial Conference and Circuit Councils
    a. Judicial Conference of the United States
    b. Judicial Councils of Circuits
§ 1.06. Regulations and Directives of the Administrative Office and Other Agencies
    a. The Administrative Office of the United States Courts
    b. Other Agencies
§ 1.07. Information Statutes
§ 1.08. Anti-Discrimination Statutes
§ 1.09. Hatch Act
FUNCTIONS
§ 1.10. Serving the Court in the Performance of Its Work
§ 1.11. Management of Personnel and Physical Resources
    a. Personnel
    b. Other resources
§ 1.12. Financial Responsibilities
§ 1.13. Participation in Activities Which Promote the Effective Administration of Justice
    a. Collection and Analysis of Statistics and Preparing Reports
    b. Local Rules
    c. Public Relations - The General Public
    d. Public Relations - The Bar
    e. Public Relations - The News Media
APPENDIX
    EXHIBIT 1 Clerks' and Deputy Clerks' Oath
    EXHIBIT 2 Codes of Conduct



Exhibit J
pg. 1 of 11

### § 1.01. Statute Establishing the Office of Clerk

Section 751(a) of title 28, United States Code, states that "each district court may appoint a clerk who shall be subject to removal by the court." Section 751(c) states that "the district court may designate places within the district for the offices of the clerk and his deputies, and their official stations."

The clerk is authorized by the statute to appoint "necessary" deputies, clerical assistants and employees in the number approved by the Director of the Administrative Office. *28 U.S.C. § 751(b)*. The clerk also is authorized to remove deputies. Both the appointments and removals, however, are subject to the approval of the court. *28 U.S.C. § 751(b)*.

With two exceptions, the statute requires the clerk to live within the judicial district in which the clerk is employed. The two districts exempted from this requirement are the District of Columbia and the Southern District of New York. *28 U.S.C. § 751(c)*. The clerk in these districts must reside within 20 miles of the respective districts.

The statute also prohibits the clerk or deputy clerks from receiving any "compensation or emoluments through any office or position to which he is appointed by the court, other than that received as such clerk. . . ." *28 U.S.C. § 751(d)*.

### § 1.02. Statutes Governing Court Officers and Employees

Chapter 57 of title 28, United States Code, contains a number of provisions governing court officers and employees that are applicable to clerks and deputy clerks. A few of the major provisions of Chapter 57 and other statutes are discussed below.

#### a. Administration of Oaths

The clerk of court and deputy clerks are authorized to administer oaths and affirmations and take acknowledgments. *28 U.S.C. § 953*. It is strongly recommended that a clerk check local state law as to a federal clerk of court's and a deputy clerk's authority to take acknowledgments in the state in which the court is located.

There are severe penalties for false acknowledgment which the clerk should make clear to all employees designated as deputy clerks:

Whoever, being an officer authorized to administer oaths or to take and certify acknowledgments, knowingly makes any false acknowledgment, certificate, or statement concerning the appearance before him or the taking of an oath or affirmation by any person with respect to any proposal, contract, bond, undertaking, or other matter submitted to, made with, or taken on behalf of the United States or any department or agency thereof, concerning which an oath or affirmation is required by law or lawful regulation, or with respect to the financial standing of any principal, surety, or other party to any such proposal, contract, bond, undertaking, or other instrument, shall be fined not more than $2000 or imprisoned not more than two years, or both. *18 U.S.C. § 1016*.

#### b. Vacancy in clerk position

Section 954 of title 28, United States Code, provides that when the office of clerk is vacant, the deputy clerks shall perform the duties of the clerk in the name of the last person who held that office. When the clerk is incapacitated, absent, or otherwise unavailable to perform official duties, the deputy clerks shall perform the duties of the clerk in the name of the clerk. The court may designate a deputy clerk to act temporarily as clerk of the court in his

or her own name. They should be prepared and sworn to by a deputy having knowledge of the facts. All courts should have in place an organizational chart which identifies the person who would be in charge of the office in the event of the clerk's death until the appointment of a successor.

### c. Restrictions on Practice of Law

All clerks of court and their deputies and assistants are prohibited by statute from practicing law "in any court of the United States." *28 U.S.C. § 955.* Canon 5D of the Code of Conduct for Judicial employees, which was added by the Judicial Conference in September of 1988, further provides that: "A clerk shall not practice law in any federal, state or local court, or undertake to perform legal services for any private client in return for remuneration." The . Code of Conduct makes a limited exception for performance of routine legal work necessary to the management of the personal affairs of the clerk or a member of the clerk's family. The Code of Conduct, which is included as Exhibit 2 of the Appendix to this chapter, should be consulted for specific conditions relating to this limited exception contained in Canon 5D.

The Office of the General Counsel advises that clerks should seek the approval of their court before undertaking the practice of law, and, if necessary, the chief district judge may request a formal opinion from the Judicial Conference Committee on Codes of Conduct as to whether a specific action is within the scope of permissible activity. The Administrative Office is not authorized to issue interpretations of the Code of Conduct.

Courts generally have adopted the policy that employees of the clerk's office are prohibited from giving legal advice to the public. Many courts have used 28 U.S.C. § 955 to support this position, reasoning that providing legal advice comes with the definition of the "practice" of law prohibited by § 955. The provision of legal advice by the clerk's office may also violate state restrictions on the practice of law. A discussion of what constitutes "legal advice" is contained in Chapter 9 of this manual.

### § 1.03. Statutes Governing Custodians of Federal Funds or Property

Section 3302 of title 31, United States Code, is the general statute which governs federal employees as custodians of money. The statute requires that "an official or agent of the United States Government having custody or possession of public money shall keep the money safe without:

(1) lending the money;
(2) using the money;
(3) depositing the money in a bank; and
(4) exchanging the money for other amounts."

  *31 U.S.C. § 3302(a).*

The statute requires generally that public money should be deposited in the Treasury or with a depositary designated by the Secretary of the Treasury not later than the third day after receipt, unless a different period is prescribed by regulation by the Secretary of the Treasury. *31 U.S.C. § 3302(c).* An accurate entry of each amount of public money received, transferred and paid must be kept. *31 U.S.C. § 3302(e).*

This statute sets forth the general rules of responsibility of a custodian of public moneys. The specific procedures for financial management in a clerk's office are set forth by the

EXHIBIT 2

Volume 2: Codes of Conduct

## CANON 1: A JUDICIAL EMPLOYEE SHOULD UPHOLD THE INTEGRITY AND INDEPENDENCE OF THE JUDICIARY AND OF THE JUDICIAL EMPLOYEE'S OFFICE

An independent and honorable Judiciary is indispensable to justice in our society. A judicial employee should personally observe high standards of conduct so that the integrity and independence of the Judiciary are preserved and the judicial employee's office reflects a devotion to serving the public. Judicial employees should require adherence to such standards by personnel subject to their direction and control. The provisions of this code should be construed and applied to further these objectives. The standards of this code shall not affect or preclude other more stringent standards required by law, by court order, or by the appointing authority.

## CANON 2: A JUDICIAL EMPLOYEE SHOULD AVOID IMPROPRIETY AND THE APPEARANCE OF IMPROPRIETY IN ALL ACTIVITIES

A judicial employee should not engage in any activities that would put into question the propriety of the judicial employee's conduct in carrying out the duties of the office. A judicial employee should not allow family, social, or other relationships to influence official conduct or judgment. A judicial employee should not lend the prestige of the office to advance or to appear to advance the private interests of others. A judicial employee should not use public office for private gain.

## CANON 3: A JUDICIAL EMPLOYEE SHOULD ADHERE TO APPROPRIATE STANDARDS IN PERFORMING THE DUTIES OF THE OFFICE

In performing the duties prescribed by law, by resolution of the Judicial Conference of the United States, by court order, or by the judicial employee's appointing authority, the following standards apply:

A. A judicial employee should respect and comply with the law and these canons. A judicial employee should report to the appropriate supervising authority any attempt to induce the judicial employee to violate these canons.

Note: A number of criminal statutes of general applicability govern federal employees' performance of official duties. These include:

> 18 U.S.C. § 201 (bribery of public officials and witnesses);
> 18 U.S.C. § 211 (acceptance or solicitation to obtain appointive public office);
> 18 U.S.C. § 285 (taking or using papers relating to government claims);
> 18 U.S.C. § 287 (false, fictitious, or fraudulent claims against the government);
> 18 U.S.C. § 508 (counterfeiting or forging transportation requests);
> 18 U.S.C. § 641 (embezzlement or conversion of government money, property, or records);
> 18 U.S.C. § 643 (failing to account for public money);

18 U.S.C. § 798 and 50 U.S.C. § 783 (disclosure of classified information);
18 U.S.C. § 1001 (fraud or false statements in a government matter);
18 U.S.C. § 1719 (misuse of franking privilege);
18 U.S.C. § 2071 (concealing, removing, or mutilating a public record);31 U.S.C. § 1344
(misuse of government vehicle);
31 U.S.C. § 3729 (false claims against the government).

In addition, provisions of specific applicability to court officers include:

18 U.S.C. §§ 153, 154 (court officers embezzling or purchasing property from bankruptcy estate);
18 U.S.C. § 645 (embezzlement and theft by court officers);
18 U.S.C. § 646 (court officers failing to deposit registry moneys);
18 U.S.C. § 647 (receiving loans from registry moneys from court officer).

This is not a comprehensive listing but sets forth some of the more significant provisions with which judicial employees should be familiar.

B. A judicial employee should be faithful to professional standards and maintain competence in the judicial employee's profession.

C. A judicial employee should be patient, dignified, respectful, and courteous to all persons with whom the judicial employee deals in an official capacity, including the general public, and should require similar conduct of personnel subject to the judicial employee's direction and control. A judicial employee should diligently discharge the responsibilities of the office in a prompt, efficient, nondiscriminatory, fair, and professional manner. A judicial employee should never influence or attempt to influence the assignment of cases, or perform any discretionary or ministerial function of the court in a manner that improperly favors any litigant or attorney, nor should a judicial employee imply that he or she is in a position to do so.

D. A judicial employee should avoid making public comment on the merits of a pending or impending action and should require similar restraint by personnel subject to the judicial employee's direction and control. This proscription does not extend to public statements made in the course of official duties or to the explanation of court procedures. A judicial employee should never disclose any confidential information received in the course of official duties except as required in the performance of such duties, nor should a judicial employee employ such information for personal gain. A former judicial employee should observe the same restrictions on disclosure of confidential information that apply to a current judicial employee, except as modified by the appointing authority.

E. A judicial employee should not engage in nepotism prohibited by law.

Note: See also 5 U.S.C. § 3110 (employment of relatives); 28 U.S.C. § 458 (employment of judges' relatives).

F. Conflicts of Interest.

Exhibit J pg. 5 of 11

Case 5:02-cv-00691-QMP   Document 3   Filed 08/01/02   Page 127 of 145   Page ID #:127

DCAD: General Info, Distr.   Court Clerks Manual Chapter 1                 Page 16 of 21

(1) A judicial employee should avoid conflicts of interest in the performance of official duties. A conflict of interest arises when a judicial employee knows that he or she (or the spouse, minor child residing in the judicial employee's household, or other close relative of the judicial employee) might be so personally or financially affected by a matter that a reasonable person with knowledge of the relevant facts would question the judicial employee's ability properly to perform official duties in an impartial manner.

(2) Certain judicial employees, because of their relationship to a judge or the nature of their duties, are subject to the following additional restrictions:

(a) A staff attorney or law clerk should not perform any official duties in any matter with respect to which such staff attorney or law clerk knows that:

　　(i) he or she has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

　　(ii) he or she served as lawyer in the matter in controversy, or a lawyer with whom he or she previously practiced law had served (during such association) as a lawyer concerning the matter, or he, she, or such lawyer has been a material witness;

　　(iii) he or she, individually or as a fiduciary, or the spouse or minor child residing in his or her household, has a financial interest in the subject matter in controversy or in a party to the proceeding;

　　(iv) he or she, a spouse, or a person related to either within the third degree of relationship, or the spouse of such person (A) is a party to the proceeding, or an officer, director, or trustee of a party; (B) is acting as a lawyer in the proceeding; (C) has an interest that could be substantially affected by the outcome of the proceeding; or (D) is likely to be a material witness in the proceeding;

　　(v) he or she has served in governmental employment and in such capacity participated as counsel, advisor, or material witness concerning the proceeding or has expressed an opinion concerning the merits of the particular case in controversy.

(b) A secretary to a judge, or a courtroom deputy or court reporter whose *assignment with a particular judge is reasonably perceived as being comparable to a member of the judge's personal staff*, should not perform any official duties in any matter with respect to which such secretary, courtroom deputy, or court reporter knows that he or she, a spouse, or a person related to either within the third degree of relationship, or the spouse of such person (i) is a party to the proceeding, or an officer, director, or trustee of a party; (ii) is acting as a lawyer in the proceeding; (iii) has an interest that could be substantially affected by the outcome of the proceeding; or (iv) is likely to be a material witness in the proceeding; provided, however, that when the foregoing restriction presents undue hardship, the judge may authorize the secretary, courtroom deputy, or

Exhibit J pg. 6 of 11

court reporter to participate in the matter if no reasonable alternative exists and adequate safeguards are in place to ensure that official duties are properly performed. In the event the secretary, courtroom deputy, or court reporter possesses any of the foregoing characteristics and so advises the judge, the judge should also consider whether the Code of Conduct for United States Judges may require the judge to recuse.

(c) A probation or pretrial services officer should not perform any official duties in any matter with respect to which the probation or pretrial services officer knows that:

(i) he or she has a personal bias or prejudice concerning a party;

(ii) he or she is related within the third degree of relationship to a party to the proceeding, or to an officer, director, or trustee of a party, or to a lawyer in the proceeding;

(iii) he or she, or a relative within the third degree of relationship, has an interest that could be substantially affected by the outcome of the proceeding.

(3) When a judicial employee knows that a conflict of interest may be presented, the judicial employee should promptly inform his or her appointing authority. The appointing authority, after determining that a conflict or the appearance of a conflict of interest exists, should take appropriate steps to restrict the judicial employee's performance of official duties in such matter so as to avoid a conflict or the appearance of a conflict of interest. A judicial employee should observe any restrictions imposed by his or her appointing authority in this regard.

(4) A judicial employee who is subject to canon 3F(2) should keep informed about his or her personal, financial and fiduciary interests and make a reasonable effort to keep informed about such interests of a spouse or minor child residing in the judicial employee's household.

(5) A member of a judge's personal staff should inform the appointing judge of any circumstance or activity of the staff member that might serve as a basis for disqualification of either the staff member or the judge, in a matter pending before the judge.

CANON 4: IN ENGAGING IN OUTSIDE ACTIVITIES, A JUDICIAL EMPLOYEE SHOULD AVOID THE RISK OF CONFLICT WITH OFFICIAL DUTIES, SHOULD AVOID THE APPEARANCE OF IMPROPRIETY, AND SHOULD COMPLY WITH DISCLOSURE REQUIREMENTS

A. Outside Activities. A judicial employee's activities outside of official duties should not detract from the dignity of the court, interfere with the performance of official duties, or adversely reflect on the operation and dignity of the court or office the judicial employee serves. Subject to the foregoing standards and the other provisions of this code, a judicial employee may engage in such activities as civic, charitable, religious, professional,

Exhibit J pg. 7 of 11

educational, cultural, avocational, social, fraternal, and recreational activities, and may speak, write, lecture, and teach. If such outside activities concern the law, the legal system, or the administration of justice, the judicial employee should first consult with the appointing authority to determine whether the proposed activities are consistent with the foregoing standards and the other provisions of this code.

B. Solicitation of Funds. A judicial employee may solicit funds in connection with outside activities, subject to the following limitations:

(1) A judicial employee should not use or permit the use of the prestige of the office in the solicitation of funds.

(2) A judicial employee should not solicit subordinates to contribute funds to any such activity but may provide information to them about a general fund-raising campaign. A member of a judge's personal staff should not solicit any court personnel to contribute funds to any such activity under circumstances where the staff member's close relationship to the judge could reasonably be construed to give undue weight to the solicitation.

(3) A judicial employee should not solicit or accept funds from lawyers or other persons likely to come before the judicial employee or the court or office the judicial employee serves, except as an incident to a general fund-raising activity.

C. Financial Activities.

(1) A judicial employee should refrain from outside financial and business dealings that tend to detract from the dignity of the court, interfere with the proper performance of official duties, exploit the position, or associate the judicial employee in a substantial financial manner with lawyers or other persons likely to come before the judicial employee or the court or office the judicial employee serves, provided, however, that court reporters are not prohibited from providing reporting services for compensation to the extent permitted by statute and by the court. A member of a judge's personal staff should consult with the appointing judge concerning any financial and business activities that might reasonably be interpreted as violating this code and should refrain from any activities that fail to conform to the foregoing standards or that the judge concludes may otherwise give rise to an appearance of impropriety.

(2) A judicial employee should not solicit or accept a gift from anyone seeking official action from or doing business with the court or other entity served by the judicial employee, or from anyone whose interests may be substantially affected by the performance or nonperformance of official duties; except that a judicial employee may accept a gift as permitted by the Ethics Reform Act of 1989 and the Judicial Conference regulations thereunder. A judicial employee should endeavor to prevent a member of a judicial employee's family residing in the household from soliciting or accepting any such gift except to the extent that a judicial employee would be permitted to do so by the Ethics Reform Act of 1989 and the Judicial Conference regulations thereunder.

Exhibit J pg · 8 of 11      9/7/01

Note: See 5 U.S.C. § 7353 (gifts to federal employees). See also 5 U.S.C. § 7342 (foreign gifts); 5 U.S.C. § 7351 (gifts to superiors).

(3) A judicial employee should report the value of gifts to the extent a report is required by the Ethics Reform Act, other applicable law, or the Judicial Conference of the United States.

Note: See 5 U.S.C. app. 6, §§ 101 to 111 (Ethics Reform Act financial disclosure provisions).

(4) During judicial employment, a law clerk or staff attorney may seek and obtain employment to commence after the completion of the judicial employment. However, the law clerk or staff attorney should first consult with the appointing authority and observe any restrictions imposed by the appointing authority. If any law firm, lawyer, or entity with whom a law clerk or staff attorney has been employed or is seeking or has obtained future employment appears in any matter pending before the appointing authority, the law clerk or staff attorney should promptly bring this fact to the attention of the appointing authority.

D. Practice of Law. A judicial employee should not engage in the practice of law except that a judicial employee may act pro se, may perform routine legal work incident to the management of the personal affairs of the judicial employee or a member of the judicial employee's family, and may provide pro bono legal services in civil matters, so long as such pro se, family, or pro bono legal work does not present an appearance of impropriety, does not take place while on duty or in the judicial employee's workplace, and does not interfere with the judicial employee's primary responsibility to the office in which the judicial employee serves, and further provided that:

(1) in the case of pro se legal work, such work is done without compensation (other than such compensation as may be allowed by statute or court rule in probate proceedings);

(2) in the case of family legal work, such work is done without compensation (other than such compensation as may be allowed by statute or court rule in probate proceedings) and does not involve the entry of an appearance in a federal court;

(3) in the case of pro bono legal services, such work (a) is done without compensation; (b) does not involve the entry of an appearance in any federal, state, or local court or administrative agency; (c) does not involve a matter of public controversy, an issue likely to come before the judicial employee's court, or litigation against federal, state or local government; and (d) is reviewed in advance with the appointing authority to determine whether the proposed services are consistent with the foregoing standards and the other provisions of this code.

Judicial employees may also serve as uncompensated mediators or arbitrators for nonprofit organizations, subject to the standards applicable to pro bono practice of law, as set forth above, and the other provisions of this code.

Exhibit J pg. 9 of 11

A judicial employee should ascertain any limitations imposed by the appointing judge or the court on which the appointing judge serves concerning the practice of law by a former judicial employee before the judge or the court and should observe such limitations after leaving such employment.

Note: See also 18 U.S.C. § 203 (representation in matters involving the United States); 18 U.S.C. § 205 (claims against the United States); 28 U.S.C. § 955 (restriction on clerks of court practicing law).

E. Compensation and Reimbursement. A judicial employee may receive compensation and reimbursement of expenses for outside activities provided that receipt of such compensation and reimbursement is not prohibited or restricted by this code, the Ethics Reform Act, and other applicable law, and provided that the source or amount of such payments does not influence or give the appearance of influencing the judicial employee in the performance of official duties or otherwise give the appearance of impropriety. Expense reimbursement should be limited to the actual cost of travel, food, and lodging reasonably incurred by a judicial employee and, where appropriate to the occasion, by the judicial employee's spouse or relative. Any payment in excess of such an amount is compensation.

A judicial employee should make and file reports of compensation and reimbursement for outside activities to the extent prescribed by the Ethics Reform Act, other applicable law, or the Judicial Conference of the United States.

Notwithstanding the above, a judicial employee should not receive any salary, or any supplementation of salary, as compensation for official government services from any source other than the United States, provided, however, that court reporters are not prohibited from receiving compensation for reporting services to the extent permitted by statute and by the court.

Note: See 5 U.S.C. app. 6, §§ 101 to 111 (Ethics Reform Act financial disclosure provisions); 28 U.S.C. § 753 (court reporter compensation). See also 5 U.S.C. app. 7, §§ 501 to 505 (outside earned income and employment).

CANON 5: A JUDICIAL EMPLOYEE SHOULD REFRAIN FROM INAPPROPRIATE POLITICAL ACTIVITY

A. Partisan Political Activity. A judicial employee should refrain from partisan political activity; should not act as a leader or hold any office in a partisan political organization; should not make speeches for or publicly endorse or oppose a partisan political organization or candidate; should not solicit funds for or contribute to a partisan political organization, candidate, or event; should not become a candidate for partisan political office; and should not otherwise actively engage in partisan political activities.

B. Nonpartisan Political Activity. A member of a judge's personal staff, clerk of court, chief probation officer, chief pretrial services officer, circuit executive, and district court executive should refrain from nonpartisan political activity such as campaigning for or publicly endorsing or opposing a nonpartisan political candidate; soliciting funds for or contributing to a nonpartisan political candidate or event; and becoming a candidate for nonpartisan political office. Other judicial employees may engage in nonpartisan political activity only if such activity does not tend to reflect adversely on the dignity or impartiality

of the court or office and does not interfere with the proper performance of official duties. A judicial employee may not engage in such activity while on duty or in the judicial employee's workplace and may not utilize any federal resources in connection with any such activity.

Note: See also 18 U.S.C. chapter 29 (elections and political activities).

[x] Back to Listing of Chapters                                              [x] Top

*This page was last updated: July 11, 2001*

Exhibit J pg. 11 of 11



**U.S. Department of Justice**

Civil Division

MFHSDAADSkowronek
DJ # 46-12C-3994

Tel: (202) 307-1030

*Washington, D.C. 20530*

MAY 1 4 2002

**VIA FIRST CLASS MAIL**
Ms. Janet L. Fischer
17954-A S. Euclid Ave.
Chino, CA 91710

    Re:    United States ex rel. Fischer v. Administrative Office
          of The United States Courts, et al.  No. EDCV 02-334VAPSGLx (Central District
          of California)
          **(UNDER SEAL)**

Dear Ms. Fisher:

    This is a courtesy letter intended to apprise you of the status of your recently filed *qui tam* suit. As you will see from the attached Notice of Events, your complaint was seen by one of the defendants. This was an inadvertence consequent to the day-to-day operations of the clerks office, and we do not consider that the seal has been violated. To the contrary, we consider that the seal remains in place with full force and effect.

    With regard to the substance of your suit, however, it is our current assessment that your complaint fails to articulate a cognizable claim under the False Claims Act. First, a False Claims Act suit cannot be maintained against an entity of the federal government, and, as a consequence, your *qui tam* claims against the Administrative Office of the United States and its employees in their official capacities must fail. Second, you lack knowledge sufficient to gain standing to bring your parallel allegations against each defendant in his or her "personal capacity." For example, you do not provide any facts that tie the defendants to the wrongful acts alleged in the complaint, which themselves are based solely on your speculation that a series of apparent clerical errors are part of some fraudulent scheme. This is mere guesswork, and is insufficient to meet False Claims Act requirements. Third, your complaint contains numerous allegations based on other criminal and civil statutes that you cannot rely upon to bring this suit.

    We suggest that you retain private counsel so that you can discuss your allegations with him or her. In addition, please be advised that the United States intends to file promptly a suggestion that the Court dismiss this case with prejudice to the relator.

pg. 1 of 8 *Exhibit* K

Very truly yours,

Andrew Skowronek

Andrew Skowronek
Attorney
Commercial Litigation Branch
Fraud Section

Exhibit K pg. 2 of 8

-2-

1  ROBERT D. McCALLUM
   Assistant Attorney General
2  MICHAEL F. HERTZ, Director
   STEVE D. ALTMAN, Attorney
3  ANDREW SKOWRONEK, Attorney (VA#43210)
   U.S. Department of Justice
4  Civil Fraud Section
   P.O. Box 261, Ben Franklin Station
5  Washington, D.C. 20044
6  Ph:  (202) 307-1030; Fax: (202) 305-7797

7  JOHN S. GORDON
   United States Attorney
8  LEON W. WEIDMAN
9  Assistant United States Attorney
   Chief, Civil Division
10 GARY PLESSMAN
   Assistant United States Attorney
11 Chief, Civil Fraud Section
12 KRISTINE BLACKWOOD (CA#114314)
   Assistant United States Attorney
13 300 North Los Angeles Street, Room 7516
14 Los Angeles, California 90012
   Ph: (213) 894-7155; Fax: (213) 894-2380
15
16 Attorneys for Plaintiff United States of America

17           UNITED STATES DISTRICT COURT

18       FOR THE CENTRAL DISTRICT OF CALIFORNIA

19               EASTERN DIVISION

20

21 SEAL, et al.,                    )      Case No. EDCV 02-334VAPSGLx
                                    )
22        Plaintiff,                )
                                    )      NOTICE TO COURT
23     v.                           )
                                    )
24 SEAL, et al.,                    )
                                    )
25                                  )
                                    )      **FILED UNDER SEAL**
26        Defendant.                )

27

28

*Exhibit K   pg. 3 of 8*

**COPY**

ROBERT D. McCALLUM
Assistant Attorney General
MICHAEL F. HERTZ, Director
STEVE D. ALTMAN, Attorney
ANDREW SKOWRONEK, Attorney (VA#43210)
U.S. Department of Justice
Civil Fraud Section
P.O. Box 261, Ben Franklin Station
Washington, D.C. 20044
Ph: (202) 307-1030; Fax: (202) 305-7797

JOHN S. GORDON
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division
GARY PLESSMAN
Assistant United States Attorney
Chief, Civil Fraud Section
KRISTINE BLACKWOOD (CA#114314)
Assistant United States Attorney
300 North Los Angeles Street, Room 7516
Los Angeles, California 90012
Ph: (213) 894-7155; Fax: (213) 894-2380

Attorneys for Plaintiff United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. Janet I. Fischer, | Case No. EDCV 02-334VAPSGLx |
| | NOTICE OF EVENTS RELEVANT TO THE SEAL OF QUI TAM COMPLAINT |
| Plaintiff, | |
| v. | |
| Administrative Office of the United States Courts, et al., | |
| Defendant. | **FILED UNDER SEAL** |

Exhibit K pg-4of8

## NOTICE OF EVENTS RELEVANT TO THE SEAL OF QUI TAM COMPLAINT

The United States of America submits this filing to notify the Court of the following events relating to the above-captioned suit:

Relator filed this complaint under seal with the District Court on April 17, 2002. Unusually, this particular suit named the Clerk of Courts for the Eastern Division, as well as the Administrative Office of the United States Courts, as defendants in the suit. The Clerk of Courts, in the normal course of her duties, looked at the sealed complaint and thus became aware that she and her office had been named as putative defendants. Pursuant to standard practice, she or her staff then forwarded the complaint to an Assistant United States Attorney who routinely acts as defense counsel in suits directed against the federal judiciary.

The United States does not consider these unusual circumstances to constitute a violation of the *qui tam* seal provisions, and is filing this notification solely to keep the Court apprised of events relevant to the case. In addition, the United States has reminded the Assistant United States Attorney who received the complaint from the clerks office, and through him the Clerk of Courts for the Eastern Division, that the complaint remains under seal.

DATED:  MAY 1 4 2002

Respectfully submitted,

ROBERT D. McCALLUM, JR.
Assistant Attorney General
JOHN S. GORDON
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division

NOTICE TO COURT
EDCV 02-334VAPSGLx

Exhibit K pg. 5 of 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GARY PLESSMAN
Assistant United States Attorney
Chief, Civil Fraud Section
Kristine Blackwood (CA#114314)
Assistant United States Attorney
300 North Los Angeles Street, Room 7516
Los Angeles, California 90012
Tel: (213) 894-7155;
Fax:  (213) 894-2380

*Andrew Skowronek*

MICHAEL F. HERTZ
STEVE D. ALTMAN
Andrew D. Skowronek (VA#43210)
Attorneys, Department of Justice
Civil Division
Post Office Box 261
Ben Franklin Station
Washington, DC  20044
Tel:  (202) 307-1030
Fax:  (202) 305-7797

ATTORNEYS FOR THE UNITED STATES OF
AMERICA

Exhibit K pg. 6 of 8

NOTICE TO COURT
EDCV 02-334VAPSGLx

## CERTIFICATE OF SERVICE

I hereby Certify that on this 14ᵀᴴ day of May, 2002, I caused a copy of the NOTICE OF EVENTS RELEVANT TO THE SEAL OF *QUI TAM* COMPLAINT to be served by first-class mail, postage prepaid, upon:

Janet I. Fischer
17954-A S. Euclid Ave.
Chino, CA 91710

ANDREW SKOWRONEK
Attorney, Civil Division
United States Department of Justice

*Exhibit K pg. 7 of 8*

U.S. Department of Justice

Washington, D.C. 20530

Official Business

Penalty for Private Use $300

CIV 14001

Ms. Janet L. Fischer
17954-A S. Euclid Avenue
Chino, CA 91710

FIRST CLASS

U.S. OFFICIAL MAIL

PENALTY
FOR
PRIVATE
USE $300

MAY 1 4 '02

D.C.

PB METER
7230919

≡ 0 5 7 ≡

U.S. POSTAGE

Exhibit K pg. 8 of 8



FindLaw | Legal Professionals | Students | Business | Public | News          e-mail@Justice.com

Legal News and Commentary

FindLaw Newsletters          Daily Opinion Summ

Sign Up Now!

Legal Commentary | Entertainment | Sports | Newsletters | Boards          Law Firm FirmSites | Law

**Lawyer Search** [City or ZIP]   [State ▼]   [Select a Practice Area ▼]   Find

■ **Special Coverage:**   Wednesday, July 10, 2002          Print This | Email This   Fin-

**WAR ON TERRORISM**

**ENRON**

**WORLDCOM**

**Search News**

[                    ] Go!

**Legal News Home**

US Law

Business

Civil Rights

Crime

Environment

Labor

Politics

Supreme Court

Tech & IP

Tort

**Commentary (Writ)**

International

Entertainment

Sports

Weather

News Wires

Associated Press

Court TV

Reuters

**Featured Documents**

**Special Coverage**

**Message Boards**

**Associated Press**

## U.S. Probes Leaks in Lindh Case

By CHRISTOPHER NEWTON Associated Press Writer

WASHINGTON (AP) - The Justice Department is investigating whether any government officials leaked sealed documents to the media in the case of suspected American Taliban John Walker Lindh.

Last month, the court asked the government to report whether there had been leaks after a Newsweek article on the Lindh case quoted a string of internals e-mails by Justice Department officials. The e-mails suggested that Lindh might have a good argument in his motion to suppress statements he made just after his capture by U.S. forces in Afghanistan.

Federal prosecutors reported Wednesday that they directed the Justice Department's inspector general to investigate leaks. The inspector general assigned two investigators to the case, according to a court document.

"To date, they have taken signed sworn statements from numerous individuals who are within the universe of individuals who had access to the material in question and who are or may be bound by the court's sealing order," the government's court filing said.

Lindh, a 20-year-old American, was captured fighting with the Taliban in Afghanistan. U.S. District Judge T.S. Ellis III has sealed many documents that have details of Lindh's capture because of the government's argument that such documents might be instructive to terrorists.

Lindh is charged with conspiring to murder U.S. citizens, contributing services to the Taliban and al-Qaida and using weapons in crimes of violence. He could face life in prison if convicted of the most serious charges in a trial scheduled to begin with jury selection Aug. 26.

The leaks in question related to a central issue in the case - whether Lindh's recounting of his experience with the Taliban while in U.S.

Exhibit L   pg. 1 of 4

FindLaw Legal News



**More Resources**

Class Action Center
Corp. Counsel Center
LawCrawler
Legal Dictionary
Legislative Action Center
Supreme Court Center

custody can be used against him in court.

Lindh's lawyers argued last month that all his statements made while being detained by the U.S. military should be thrown out because he was not promptly brought before a magistrate as required by federal criminal law. Prosecutors said those arguments ignore the differences between a civilian arrest and the detention of an enemy soldier by the military. It would be a major victory for Lindh if they were suppressed.

"Lindh chose to communicate his story to anyone and everyone who would listen, including initially the American media," the government has argued. "And communicate he did - calmly, articulately, consistently, comprehensively."

The Justice Department is engaged in several investigations relating to leaks to the media. After requests from Congress, federal investigators are assessing how much damage leaks have done to the government's effort to fight terrorism. Investigators are also looking into a leak from the House Intelligence Committee to CNN about intercepts made by U.S. intelligence officials just before Sept. 11.

2002-07-10    15:10:15 GMT

Copyright 2002
The Associated Press All Rights Reserved
The information contained in the AP News report may not be published, broadcast, rewritten or redistributed without the prior written authority of The Associated Press.



**LEGAL NEWS:** Top Headlines · Supreme Court · Commentary · Crime · Cyberspace · International
**US FEDERAL LAW:** Constitution · Codes · Supreme Court Opinions · Circuit Opinions
**US STATE LAW:** State Constitutions · State Codes · Case Law
**RESEARCH:** Dictionary · Forms · LawCrawler · Library · Summaries of Law
**LEGAL SUBJECTS:** Constitutional · Intellectual Property · Criminal · Labor · more...
**GOVERNMENT RESOURCES:** US Federal · US State · Directories · more...
**INTERNATIONAL RESOURCES:** Country Guides · Trade · World Constitutions · more...
**COMMUNITY:** Message Boards · Newsletters · Greedy Associates Boards
**TOOLS:** Office · Calendar · Email · West WorkSpace · FirmSites

Advertising Info · Add URL · Help · Comments

Company | Privacy Policy · Disclaimer

Jobs@FindLaw · Site Map

Copyright © 1994-2001 FindLaw

Exhibit L    pg. 2 of 4

FindLaw | Legal Professionals | Students | Business | Public | News                    E-mail@Justice.co⌐

# FindLaw
### Legal News and Commentary

☆ **Looking for a Lawyer?**

| City or Zip | State ▾ | Practice Area ▾ | Se⌐ |

Legal Commentary | Entertainment | Sports | Newsletters | Boards                    Law Firm FirmSites | Law

**Lawyer Search** | City or ZIP | State ▾ | Select a Practice Area ▾ | Find

⬛ **Special Coverage:**   Wednesday, May 22, 2002                    Print This | Email This      Fin⌐

**WAR ON TERRORISM**

**ENRON**

**Search News**

**Associated Press**

**Legal News Home**

**US Law**

Business

Civil Rights

Crime

Environment

Labor

Politics

Supreme Court

Tech & IP

Tort

**Commentary (Writ)**

**International**

**Entertainment**

**Sports**

**Weather**

**News Wires**

AP, Reuters, Court TV

**Featured Documents**

**Investigations**

**Message Boards**

FindLaw Newsletters

---

**More Resources**

## FBI Agents Indicted in Stock Fraud

By TOM HAYS Associated Press Writer

NEW YORK (AP) - Two FBI agents helped an Internet stock analyst shake down publicly traded companies by sneaking him confidential information on investigations of the companies, authorities alleged Wednesday.

Lynn Wingate, an FBI agent assigned to the bureau's Albuquerque, N.M, office, Jeffrey Royer, a former Oklahoma City agent who resigned late last year, and analyst Amr "Tony" Elgindy were among five defendants charged in a securities fraud indictment unsealed in federal court in Brooklyn.

In exchange for money, the agents used FBI databases to provide their co-conspirators inside FBI information on publicly traded companies, the indictment said. In 2000 and 2001, an associate of Elgindy, Derrick Cleveland, wired Royer $30,000 while he was still an FBI agent, the papers said.

Elgindy spread negative information on the companies on his Web site and to Brooklyn subscribers of his e-mail newsletter, InsideTruth.com, while betting that that the companies' stock would go down.

The defendants "sometimes reported negative information about the targeted companies to the Securities and Exchange Commission and the FBI in order to initiate or hasten regulatory and law enforcement action, which they knew would cause the stock prices to fall sharply once such action became public," court papers said.

In one case, Royer searched the FBI's confidential National Crime Information Center database and discovered the criminal history of a top executive for a company called Nuclear Solutions, the papers said. The same day, Elgindy began sending e-mails calling the executive "a convicted felon," then shorted the company's stock, the papers added.

*Exhibit L pg. 3 c) 4*

Class Action Center
Corp. Counsel Center
LawCrawler
Legal Dictionary
Legislative Action Center
Supreme Court Center

---

Elgindy and Cleveland also extorted cheap or free shares of stock in exchange for agreeing to stop their smear campaign, authorities said. After they became the focus of a grand jury investigation, Wingate allegedly fed Royer - by then an employee of Elgindy - secret information, including descriptions of subpoenaed documents.

The charges "reveal a shocking partnership between an experienced stock manipulator and law enforcement agents, undertaken for their illicit personal financial gain," said U.S. Attorney Alan Vinegrad.

Elgindy, 34, and another associate, Troy Peters, 39, were in custody in San Diego; and Royer, 39, and Wingate, 34, in Albuquerque; and Cleveland, 37, in Oklahoma City, pending court appearances. Their defense attorneys could not be immediately reached for comment.

If convicted of racketeering conspiracy and other charges, each defendant could receive 20 years in prison.

2002-05-22    20:04:22 GMT

Copyright 2002
The Associated Press All Rights Reserved
The information contained in the AP News report may not be published, broadcast, rewritten or redistributed without the prior written authority of The Associated Press.

LEGAL NEWS: Top Headlines · Supreme Court · Commentary · Crime · Cyberspace · International
US FEDERAL LAW: Constitution · Codes · Supreme Court Opinions · Circuit Opinions
US STATE LAW: State Constitutions · State Codes · Case Law
RESEARCH: Dictionary · Forms · LawCrawler · Library · Summaries of Law
LEGAL SUBJECTS: Constitutional · Intellectual Property · Criminal · Labor · more...
GOVERNMENT RESOURCES: US Federal · US State · Directories · more...
INTERNATIONAL RESOURCES: Country Guides · Trade · World Constitutions · more...
COMMUNITY: Message Boards · Newsletters · Greedy Associates Boards
TOOLS: Office · Calendar · Email · West WorkSpace · FirmSites

FindLaw
RESOURCES

Advertising Info · Add URL · Help · Comments

Company | Privacy Policy Disclaimer

Jobs@FindLaw · Site Map

Copyright © 1994-2001 FindLaw

Exhibit L pg. 4 of 4



Central District of California U.S.D.C.

# Notices from the Clerk

**Subject:**
Notice from the Clerk

**Documents Presented for
Filing under Seal**

**Contact:**
Clerk of Court

**Last Updated:**
06/06/2002

---

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**Public Notice**

Effective June 24, 2002, in accordance with Local Rule 79-5, documents presented for filing under seal must include an application and order for sealing. Documents presented for filing under seal with out an application and order for sealing will not be filed under seal.

**SHERRI R. CARTER,
DISTRICT COURT EXECUTIVE**

---

Exhibit M   pg. 1 of 1